## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT QUILL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A.No. 07-435-SLR |
| | : | |
| CATHOLIC DIOCESE OF WILMINGTON, | : | |
| INC., a Delaware corporation; ST. | : | |
| ELIZABETH'S CATHOLIC CHURCH, a | : | |
| Delaware corporation; Rev. FRANCIS G. | : | |
| DELUCA, individually and in his official | : | |
| capacity; and Rev. MICHAEL A. | : | |
| SALTARELLI, in his official capacity, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HIS RULE 12(c) MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS, AND/OR RULE 56(a), (c) AND (d)
MOTION FOR PARTIAL SUMMARY JUDGMENT, ON THE CONSTITUTIONALITY
OF THE CHILD VICTIM'S ACT AS WRITTEN UNDER THE U.S. CONSTITUTION**

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
RAEANN WARNER, ESQ. (#4931)
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
RW@NeubergerLaw.com

Dated: October 16, 2007

JACOBS & CRUMPLAR, P.A.
ROBERT JACOBS, ESQ. (#244)
THOMAS C. CRUMPLAR, ESQ. (#942)
Two East Seventh Street, Suite 400
Wilmington, DE 19801
(302) 656-5445
Bob@JandCLaw.com
Tom@JandCLaw.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    The Legislative History of the Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.    The Governor Signs the Bill into Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Rule 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    The Legislature Clearly Expressed Its Intent to Apply the Act Retroactively . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    The Federal Test - Clear Intent . . . . . . . . . . . . . . . . . . . . . . 8

            2.    The Intent of the Legislature is Clear . . . . . . . . . . . . . . . . . . 8

        C.    The U.S. Supreme Court Has Repeatedly Held That Such Retroactive Civil Legislation Does Not Violate Due Process . . . . . . . . . . . . . . . . . . 9

        D.    Numerous Other Federal and State Courts Have Upheld Retroactive Childhood Sexual Abuse Civil Legislation From Due Process Attacks . . 12

            1.    California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                a.    Window Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*i*

2.    Minnesota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      a.    Window Provision . . . . . . . . . . . . . . . . . . . . . . . . . . 13

3.    South Dakota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4.    Vermont . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5.    Kansas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6.    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

E.    The Same Principal Has Been Applied in Agent Orange Litigation  . . . . 14

F.    Retroactive Civil Legislation Also Has Been Upheld in At Least Nine
      Other Contexts In Addition to Agent Orange Victims . . . . . . . . . . . . . 16

1.    Student Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2.    Civil Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3.    Toxic Torts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      a.    New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      b.    Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      c.    Kansas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      d.    Louisiana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4.    Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      a.    California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      b.    Connecticut . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5.    Wrongful Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6.    Products Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7.    Personal Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

8.    Medical Malpractice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9.    Paternity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

G.     The Act Does Not Violate Due Process . . . . . . . . . . . . . . . . . . . . . . . . 19

III.    THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN
UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.    The Supreme Court Has Held That Retroactive Civil Legislation Does
Not Violate Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1.    Toxic Torts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

2.    Student Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.    Rational Basis Is The Appropriate Standard of Review . . . . . . . . . . . . 22

1.    No Suspect Class is Burdened . . . . . . . . . . . . . . . . . . . . . . . . . 22

2.    No Fundamental Rights are Burdened . . . . . . . . . . . . . . . . . . . 22

C.    The Rational Basis Standard is Easily Met . . . . . . . . . . . . . . . . . . . . . . 23

IV.    THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN
UNDER THE SEPARATION OF POWERS DOCTRINE OF ARTICLE 3,
§ 1 OF THE U.S. CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*iii*

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page**

20th Century Insur. Co. v. Superior Court, 109 Cal.Rptr.2d 611 (Cal.App. 2001) . . . . . . . . . . 18

A.K.H. v. R.C.T., 822 P.2d 135 (Or. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Artisan Water Co. v. Gov't of New Castle County, 1983 WL 17986 (Del.Ch. Aug. 4, 1983) . . . 8

Ashou v. Liberty Mut. Fire Ins. Co., 41 Cal.Rptr.3d 819 (Cal.App. 2006) . . . . . . . . . . . . . . . . 18

Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc., 839 F.Supp. 275
    (D.Vt. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Bendix Corp. v. Stagg, 486 A.2d 1150 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Blount v. Windley, 95 U.S. 173 (1877) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Boyle v. County of Allegheny, Pa., 139 F.3d 386 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 7

Bracket v. Civil Service Com'n, 850 N.E.2d 533 (Mass. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 21

Brown v. E.I. DuPont De Nemours and Co., 820 A.2d 362 (Del. 2003) . . . . . . . . . . . . . . . . . 15

Burdick v. Afrimet-Indussa Inc., 138 Misc.2d 598 (N.Y.Sup. 1988) . . . . . . . . . . . . . . . . . 17,21

C.I.R. v. Bilder, 289 F.2d 291 (3d Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.I.R. v. Bilder, 369 U.S. 499 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Campanelli v. Allstate Life Ins. Co., 322 F.3d 1086 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 18

Campbell v. Holt, 115 U.S. 620 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,15,19

Chase Securities Corp. v. Donaldson, 325 U.S. 304 (1945) . . . . . . . . . . . . . 10-11,14-15,19-22

Chatmon v. U.S. Dept. of Educ., 2003 WL 21501919 (N.D.Tex. June 24, 2003) . . . . . . . . . . 22

City of Boston v. Keene Corp., 547 N.E.2d 328 (Mass. 1989) . . . . . . . . . . . . . . . . . . . 17,21,26

Curtis v. Whitney, 80 U.S. 68 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Davis v. Valley Distributing Co., 522 F.2d 827 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . 16

Delonga v. Diocese of Sioux Falls, 329 F.Supp.2d 1092 (D.S.D. 2004) . . . . . . . . . . . . . 7,13-14

*Doe v. Roe*, 677 P.2d 468 (Hawaii 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Earle v. State*, 743 A.2d 1101 (Vt. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Eden v. Oblates of St. Francis de Sales*, 2006 WL 3512482 (Del.Super. Dec. 4, 2006) . . . . . . . 1

*Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413 (Minn. 2002) . . . . . . . . . . . . 19

*H.D. v. White*, 483 N.W.2d 501 (Minn.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harding v. K.C. Wall Products Inc.*, 831 P.2d 958 (Kan. 1992) . . . . . . . . . . . . . . . . . . . . . . . 17

*Heck. v. McConnell*, 418 N.W.2d 678 (Mich.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hellinger v. Farmers Group, Inc.*, 111 Cal.Rptr.2d 268 (Cal.App. 2001) . . . . . . . . . . . . . . . . 18

*Hubbard v. Hibbard Brown & Co.*, 633 A.2d 345 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hymowitz v. Eli Lilly and Co.*, 136 Misc.2d 482 (N.Y.Sup. 1987) . . . . . . . . . . . . . . . . . . . 17,21

*Hymowitz v. Eli Lilly and Co.*, 539 N.E.2d 1069 (N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . 17,21

*I.N.S. v. CYR*, 533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740 (E.D.N.Y. 1984) . . . . . . . . 15

*In re Asbestos Litigation*, 829 F.2d 1233 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Int'l Union of Electrical, Radio and Machine Workers, AFL-CIO Local
     790 v. Robbins*, 429 U.S. 229 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,14,16,19-20

*John Doe I v. Roman Catholic Diocese of Galveston-Houston*, 2007 WL 2817999
     (S.D.Tex. Sept. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*K.E. v. Hoffman*, 452 N.W.2d 509 (Minn.App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Lent v. Doe*, 47 Cal.Rptr.2d 389 (Cal.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lieberman v. Cambridge Partners, LLC*, 432 F.3d 482 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . 8

*Liebig v. Superior Court*, 257 Cal.Rptr. 574 (Cal.App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 12

*McCann v. Walsh Construction Co.*, 123 N.Y.S.2d 509 (N.Y.App. 1953) . . . . . . . . . . . . . . . . 15

*v*

Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 6

Minn. v. Clover Leaf Creamery Co., 449 U.S. 456 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Nachtsheim v. Wartnick, 411 N.W.2d 882 (Minn.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 18

Nordlinger v. Hahn, 505 U.S. 1 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Piccirelli v. Johns-Manville Sales Corp., 128 A.D.2d 762 (N.Y.A.D. 1987) . . . . . . . . . . . . . . 17

Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 12,14,19,25

Powell v. Anderson, 660 N.W.2d 107 (Minn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pryber v. Marriott Corp., 296 N.W.2d 597 (Mich.App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 19

Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157
        (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

Romer v. Evans, 517 U.S. 620 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Sea-Land Service, Inc. v. Barry, 41 F.3d 903 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Security Homestead Ass'n v. W.R. Grace & Co., 743 F.Supp. 456 (E.D.La. 1990) . . . . . . 17,21

Serrano v. Aetna Ins. Co., 664 A.2d 279 (Conn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Shadburne-Vinton v. Dalkon Shield Claimants Trust, 60 F.3d 1071 (4th Cir. 1995) . . . . . . 18-19

Shirley v. Reif, 920 P.2d 405 (Kan. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Short v. Short, 858 A.2d 571 (N.J. Super.A.D. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sibley v. U.S. Dept. of Educ., 913 F.Supp. 1181 (N.D.Ill. 1995) . . . . . . . . . . . . . . . . . . 16,21-22

Stogner v. California, 539 U.S. 607 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Stratmeyer v. Stratmeyer, 567 N.W.2d 220 (S.D. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Territory of Alaska v. American Can Co., 358 U.S. 224 (1959) . . . . . . . . . . . . . . . . . . . . . . . . 7

Tietge v. Western Province of the Servites, Inc., 64 Cal.Rptr.2d 53 (Cal.App. 1997) . . . . . . . 12

Twomey v. Carlton House of Providence, Inc., 320 A.2d 98 (R.I. 1974) . . . . . . . . . . . . . . . . 19

U.S. v. Glockson, 998 F.2d 896 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Hargrove, 2007 WL 2811832 (W.D.Pa. Sept. 24, 2007) . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Hodges, 999 F.2d 341(8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. McLaughlin, 7 F.Supp.2d 90 (D.Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Phillips, 20 F.3d 1005 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Pollard, 326 F.3d 397 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. v. Smith, 862 F.Supp. 257 (D.Hawaii 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Vaughn v. Vulcan Materials Co., 465 S.E.2d 661 (Ga. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 19

**Constitutions, Statutes, and Rules**

U.S. Const., Art. 3, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

20 U.S.C. § 1091a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed.R.Civ.P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Civ.P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6

Fed.R.Civ.P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7

Fed.R.Civ.P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

10 Del.C. § 8131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10 Del.C. § 8131(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10 Del.C. § 8145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

10 Del.C. § 8145(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

10 Del.C. § 8145(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,22

10 Del.C. § 8145(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Civ. Proc. Code § 340.1(c) (West 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

N.Y. C.P.L.R. § 214-b (McKinney 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

LA. Rev. Stat. Ann § 9:5644 (West 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**<u>Other Authorities</u>**

5C Wright & A. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004) . . . . . . . . . . . . . 6

## NATURE AND STAGE OF THE PROCEEDING

Traditionally conservative Delaware has enacted model legislation with nationwide implications which the defendants claim is unconstitutional as written. Judicial economy and Fed.R.Civ.P. 1 dictate that this issue be decided at the onset of this complex and expensive case, and so plaintiff has filed appropriate motions to decide this constitutional issue.

This diversity action was filed on July 12, 2007 and the Complaint then was amended as of right. (D.I. 11, First Amended Complaint, hereinafter "Compl. ¶__"). Both institutional defendants have answered. (D.I. 19, Answer of the Catholic Diocese of Wilmington, hereinafter "Diocese Ans. ¶__", and D.I. 23, Answer of St. Elizabeth's Catholic Church, hereinafter "Church Ans. ¶__"). In their Affirmative Defenses, under the U.S. Constitution the Church and the Diocese have challenged the constitutionality as written of the underlying "Child's Victim Act" of 2007, 10 Del. C. § 8145 (the "Act), which in subsection (a) prospectively abolished the statute of limitations in future child abuse actions, and in subsection (b) retrospectively created a two year window within which claims may be brought for past child abuse actions which had been previously barred by the prior statute of limitations. (Church Ans. ¶¶ 201,202, Diocese Ans. ¶¶ 201,202, A66,99).

This case arises from the Act and Delaware common law regarding at least 300 acts of childhood sexual abuse.[1] It seeks monetary damages for personal injuries arising from such abuse by Rev. Francis G. DeLuca, a convicted child molester and priest employed by the defendants. DeLuca was employed recklessly despite the fact that the defendants had prior actual knowledge

---

[1] Counts VI, VII and VIII are not dependent upon the Act. Instead, they arise from Delaware common law and are based upon the recovery of repressed memories in October 2006 by the plaintiff and the timely filing of this action within two years of that discovery. See Eden v. Oblates of St. Francis de Sales, 2006 WL 3512482 *13-14 (Del. Super. Dec. 4, 2006).

that he was a child molester and that they owed a duty of care to protect plaintiff from him. (Compl. ¶ 1; A1).

This is plaintiff's Opening Brief in support of his Motion under Rule 12(c) for partial judgment on the pleadings and/or under Rule 56(a), (c) and (d) for partial summary judgment on the issue of the federal constitutionality of the Act as written.

The record found in the Appendix includes the Complaint and Answers, Senate Bill 29 which became the Act, the legislative debates and public hearings on that Bill before its unanimous enactment by both the Senate and House of Representatives of the State of Delaware, the Governor's signing statement, and the duly enacted new statute.

## SUMMARY OF THE ARGUMENT

1. The defendants' federal constitutional challenge to a civil window in the child abuse context is particularly unpersuasive because the Court can only step in and act as a superlegislature to judge the wisdom or desirability of legislative policy if a fundamental right or suspect classification is involved, which is not the case herein.

2. Since the shelter afforded by a statute of limitations is not a fundamental or a vested right, the fundamental right to due process has not been denied. Seven U.S. Supreme Court cases have held that retroactive application of a civil statute of limitations does not violate due process. Federal and state courts in five states have applied this principle to uphold retroactive statutes like Delaware's in the child abuse context. And, 31 courts also have applied this rule of retroactivity to toxic torts and nine other causes of action, all while rejecting due process challenges.

3. The fundamental right to equal protection has not been denied either because in its authoritative due process holding, the Supreme Court also held that retroactive statutes of limitations pass constitutional muster under the equal protection clause. The lower courts at least

2

eight times have applied this ruling and have rejected equal protection attacks on retroactive statutes similar to that challenged herein.

4.  The makeweight claim that the Act violates the separation of powers fails because at least two court have ruled that doctrine inapplicable.

## STATEMENT OF FACTS

**A.  Plaintiff.**  Robert Quill ("plaintiff") is presently 52 years old and he resides in Marathon, Florida.  He last was employed as a Supervisory Staff Attorney for the United States Court of Appeals for the Eleventh Circuit, in Atlanta, Georgia.  (Compl. ¶ 4; A2).

**B.  Defendants.**  Defendants admit that  Francis G. DeLuca ("DeLuca") is a Roman Catholic priest who was employed by the Diocese from 1958 until 1993.  A convicted child molester, he is presently at least 77 years old and resides in Syracuse, New York.  (Diocese & Church Ans. ¶ 7; A32,70,71).

Defendant Diocese also agrees that it was responsible at all times for licensing DeLuca to perform priestly functions as one of its employees.  Without the explicit authorization and sanction of Diocese, he could not have performed priestly functions including spiritual and personal counseling, the conduct of religious services, days of spiritual recollection, and the administration of Roman Catholic sacraments.  (Diocese Ans. ¶ 10; A33).

Additionally, Diocese admits it was responsible for the management and control of its parishes, including St. Elizabeth's and was responsible for employing priests, staff and other agents to operate those parishes.  (Diocese Ans.  ¶ 11; A33).

Diocese and Church both repeatedly concede that they had a duty to protect children, including plaintiff,  from sexual abuse by their priests.  (Diocese & Church Ans. ¶¶ 39, 40, 41, 24, 128, 156 see ¶¶ 15-17; A34,35,38,53,58,72,73,75,76,88,92).

3

Importantly, Diocese admits that prior to DeLuca ever meeting plaintiff, in 1966 the parents of another young victim reported that their son had been sexually abused by DeLuca. (Diocese & Church Ans. ¶¶ 38, 68, 69, 72;  A38,44,75).  Defendants also concede that their attorney publicly testified in 2007 that in 1966 they had knowledge of a report of sexual abuse of a minor by DeLuca.   (Diocese & Church Ans. ¶¶ 77, 78; A45,82).

Defendants do not dispute that in 1966 DeLuca then was transferred from the church where that reported abuse had occurred to the defendant Church, St. Elizabeth's, where he served as assistant and pastor until 1969.  (Diocese  Ans. ¶¶ 11, 78, 68, 69, 72, 8, 52; Church Ans. ¶¶ 8, 52; A32,33,40,41,44,45,71,78).

When DeLuca arrived at the Church, from 1966 to 1973 plaintiff was enrolled in its elementary and later high schools and he also served as an altar boy for DeLuca.  (Compl. ¶¶ 87, 89; A15,16).

Plaintiff alleges that from 1968 to 1975, between the ages of 13-19, on at least 300 occasions, DeLuca sexually abused him and injured him, eventually leading to his premature retirement on disability from federal employment with the judiciary.  (Compl. ¶¶ 96, 109-116; A16-19).

**C.  The Legislative History of the Act.**   The original Bill, S.B. 29, which became the Act, is in the record.  (A102,103).  Its purpose as revealed in its Synopsis was to "repeal[] the statute of limitations in civil suits relating to child sexual abuse cases and provide[] a two-year "window" in which victims can bring a civil action in cases previously barred by the current statute."  (A103).  Massive community support for this legislative initiative was organized through a website found at www.childvictimsvoice.com.

The full State Senate first personally heard testimony and then debated the Bill thoroughly

4

before passing it unanimously with 19 of 21 Senators present. (A132). In its deliberations the Senators took testimony from four victims whose actions previously had been barred by the statute of limitations. Then it heard from one noted constitutional law expert (Prof. Marci M. Hamilton - A106, 127-28), a Canon Law expert (Rev. Thomas Doyle - A106-15), as well as psychiatric testimony pro and con. (Carol A. Tavani, M.D. - A115-18, 124-27; Janice Chester, M.D. - A122-24). Testimony was taken on the legality of retroactively applying the Act. (Senate Attorney Jeff Clark - A116). Before its unanimous vote the Senators carefully balanced the need for the legislation, the appropriate standard of care for institutions which was set at gross negligence to protect such entities (A120-22), the risk of false claims (A110,114,121,123, 125-29), medical issues (A116-18, 123-27), and the needs of the insurance industry and non-profits. (A126).

The House Judiciary Committee then held two full days of hearings when the Bill moved to that forum. (A153).[2] Lay witnesses pro and con were heard (A155-59, 193-97), as well as testimony from victims. (A155, 187-93, 317, 319). A representative of non-profit organizations also opposed the Bill, as did the insurance industry. (Krupanski - A159-62; M. Doyle - A199-205). Proponents of religious institutions testified. (Flynn - A162-67; Reardon - A178-86; Bifferato - A317; Hynes - A319), as did the State Solicitor, Lawrence Lewis who endorsed the Bill's legality. (A318).

Testimony also was then taken before the full House of Representatives from both proponents and opponents of the bill. (A250-52, 255-63). The Dean of the Villanova Law School opposed the Bill for religious institutions. (A252-54). In response, Prof. Hamilton again

---

[2] Only day two was recorded and preserved verbatim. (A155-286). Official minutes of day one were substituted. (A315-19).

addressed the legal issues.  (A264-66).  Amendments were considered and rejected.  (A267-85).

After hearing more testimony and then carefully balancing the need for the legislation, the

interests involved and considering the legal issues, the Bill passed unanimously with all 41

Representatives voting in favor.  (A286).

      **D.  The Governor Signs the Bill Into Law.**  The Governor then signed the Bill on July

10, 2007, declared the legislation to be  "vitally important," and stated -

> Ever since we passed Megan's Law in 1998, we've been working to refine and strengthen
> Delaware's laws relating to sex offenders ... Sexual predators that victimize children are
> learning that Delaware is not going to tolerate their horrendous crimes against the children
> of our state.  I applaud the efforts of Senator Peterson and all of the co-sponsors for
> taking the lead on passing this vitally important legislation.

(Gov. Minner Press Release; A314).

<h2 style="text-align:center;"><u>ARGUMENT</u></h2>

**I.    STANDARD OF REVIEW.**

      **A.  Rule 12(c).**  Fed.R.Civ.P. 12(c) allows "any party," such as plaintiff herein, to move

for judgment on the pleadings.  The Court then views the facts in the light most favorable to the

non-moving party.  Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004).  The

motion should be granted if there are no material issues of fact and the moving party is entitled to

judgment as a matter of law.  Id.  As in our present case, Wright and Miller have explained that

Rule 12(c) may be used to address -

> the applicability or interpretation of a statutory provision.  The Rule 12(c) procedure also
> may be of value when the statute of limitations provides an effective bar against the
> plaintiff's claim and the entire controversy may be disposed of by a pretrial summary
> motion based on the parties pleadings.

5C Wright & A. Miller, Federal Practice and Procedure § 1367 at p.210-11 (3d ed. 2004)

(internal footnotes omitted).  As Rule 12(c) explains, the motion may be converted into a motion

for summary judgment under Rule 56 if matters outside the pleadings are considered.  Rose v.

6

Bartle, 871 F.2d 331, 340 (3d Cir. 1989).[3]

  **B. Rule 56.**  A motion for summary judgment shall be granted if there are no genuine

issues of material fact and the moving party is entitled to judgment as a matter of law.  Boyle v.

County of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998); Fed.R.Civ.P. 56(c).

**II. THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.**

  **A. Introduction.**  For the reasons explained below, the defendants' federal constitutional

challenge to a civil window in the child abuse context is "particularly unpersuasive." Delonga v.

Diocese of Sioux Falls, 329 F.Supp.2d 1092, 1102 (D.S.D. 2004).  "Absent a violation of [a

constitutional provision], the potential unfairness of retroactive civil legislation is not a sufficient

reason for a court to fail to give a statute its intended scope."  Landgraf v. USI Film Products,

511 U.S. 244, 267 (1994).  That is because "it is up to legislatures, not courts, to decide on the

wisdom and utility of legislation." Minn. v. Clover Leaf Creamery Co., 449 U.S. 456, 469

(1981); see Sea-Land Service, Inc. v. Barry, 41 F.3d 903, 910 (3d Cir. 1994) ("the judiciary may

not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations

made in areas that neither affect fundamental rights nor proceed along suspect lines.").  Mere

unhappiness that the defendants are being held accountable for their past misdeeds is clearly

insufficient to authorize the Court to step in and act as a superlegislature.  Landgraf, 511 U.S. at

267.

---

  [3]  Plaintiff notes that consideration of legislative history need not convert this into a summary judgment motion.  The Court can take judicial notice of the legislative history of the Act which has been included in the appendix.  See Territory of Alaska v. American Can Co., 358 U.S. 224, 226-27 (1959) (taking judicial notice of legislative history); C.I.R. v. Bilder, 289 F.2d 291, 298 (3d Cir. 1961) ("courts will take 'judicial notice' of legislative history.") (reversed on other grounds by C.I.R. v. Bilder, 369 U.S. 499 (1962)); John Doe I v. Roman Catholic Diocese of Galveston-Houston, 2007 WL 2817999, *23 n.30 (S.D.Tex. Sept. 26, 2007) (citing American Can Co. and taking judicial notice of legislative facts).

**B. The Legislature Clearly Expressed Its Intent to Apply the Act Retroactively**.

**1. The Federal Test - Clear Intent.** The Third Circuit has explained that "congressional enactments will not be construed to have retroactive effect unless their language requires this result." Lieberman v. Cambridge Partners, LLC, 432 F.3d 482, 488 (3d Cir. 2005) (internal punctuation omitted).[4] A two part test determines whether a statute should apply retroactively. Id. "At the first stage, a court must determine if Congress has expressly prescribed the statute's intended reach." Id. This intent requirement "helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." Landgraf, 511 U.S. at 268.

> Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.

Id. at 272-73. If the legislature has clearly expressed its intent, "the inquiry ends, and the court enforces the statute as written." Lieberman, 432 F.3d at 488. The second step is never reached. Id.

**2. The Intent of the Legislature is Clear.** Applying these governing principles to a state legislature, in the case at bar the Child Victim's Act clearly and unequivocally demonstrates the General Assembly's unanimous intent to apply it retroactively. Its retroactivity provision states that -

---

[4] The Delaware Supreme Court requires the same. See Hubbard v. Hibbard Brown & Co., 633 A.2d 345, 354 (Del. 1993) ("Delaware courts have recognized the general principle that statutes will not be retroactively applied unless there is a clear legislative intent to do so."); see Artisan Water Co. v. Gov't of New Castle County, 1983 WL 17986, *10 (Del.Ch. Aug. 4, 1983) (applying a statute retroactively "because of the clear legislative intent").

> For a period of two years following the effective date of this bill, victims of child sexual abuse that occurred in this State who have been barred from filing suit against their abusers by virtue of the expiration of the former civil statute of limitations, shall be permitted to file those claims in the Superior Court of this State.

10 Del.C. § 8145(b).  As the Synopsis to the Bill also demonstrated and stated, "[t]his Bill ... provides a two-year "window" in which victims can bring a civil action in cases previously barred by the current statute." (A103). Finally, as the debates found in the legislative history further demonstrate, it is clear that the General Assembly intended the Act to be retroactive since so many institutional representatives attacked that specific provision repeatedly. (A160,163,170, 183,317)  The legislature's intent to retrospectively apply the Act is clear and the governing legal test has been satisfied.  The Court should hold that the Act applies retrospectively in accord with clear legislative intent.

**C.  The U.S. Supreme Court Has Repeatedly Held That Such Retroactive Civil Legislation Does Not Violate Due Process.**  Thus the federal constitutional issue has to be faced.  Because of its retroactive application, does the Act violate some fundamental right found in the U.S. Constitution or impact some suspect class?

The defendants main claim during legislative debates (A160,163,170,183,317) and throughout the country in similar cases has been that such legislation violates fundamental Due Process.  However, such a claim fails in light of repeated U.S. Supreme Court precedent to the contrary.  First, as the Supreme Court stated 130 years ago in the civil context, "there is no constitutional inhibition against retrospective laws." Blount v. Windley, 95 U.S. 173, 180 (1877). Such laws "are often beneficial, and sometimes necessary." Id. "Where they violate no provision of the Constitution of the United States, there exists no power in this court to declare them void." Id.; see Curtis v. Whitney, 80 U.S. 68, 70 (1871) ("That a statute is not void because it is retrospective has been repeatedly held by this court.")  Since that time, the Court has regularly

9

and consistently held that retroactive civil legislation does not violate Fourteenth Amendment Due Process.

Second, in Campbell v. Holt, 115 U.S. 620 (1885), in the civil context, the Supreme Court was faced with a newly enacted provision of the Texas constitution which revived a time barred breach of contract claim, as well as other civil claims. The defendants claimed that because the previous statute of limitations had expired, this Texas law violated Due Process. The Supreme Court disagreed and held that it is well within the legislature's prerogative to retroactively revive time-barred civil claims. Id. at 627-28.

In support of its holding the Court observed that a statute of limitations defense is "a purely arbitrary creation of the law, [and] fell with the repeal of the law on which it depended." Id. at 628. Such limitations periods "are founded in public needs and public policy," and "are arbitrary enactments by the law-making power." Id. Accordingly,"[i]t violates no right of [a party], therefore, when the legislature says time shall be no bar, though such was the law when the contract was made. The authorities we have cited, especially in this court, show that *no right is destroyed when the law restores a remedy which had been lost*." Id. (emphasis added).

Third, 60 years later, again in the civil context, in Chase Securities Corp. v. Donaldson, 325 U.S. 304 (1945), the Supreme Court addressed the constitutionality of a newly enacted Minnesota securities law which abolished a civil statute of limitations and allowed a plaintiff to pursue securities claims that previously had been barred by the prior limitations period. The Court looked to its earlier opinion in Campbell where it framed its earlier holding as follows -

> where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, *restore to the plaintiff his remedy, and divest the defendant of the statutory bar.*

Chase Securities, 325 U.S. at 311-12 (emphasis added). The Court stated that Campbell "has

long stood as a statement of the law of the Fourteenth Amendment" and ultimately upheld the

newly enacted Minnesota law.  Id.

     The Chase Securities Court also analyzed and discussed the foundations of its earlier

opinion.  "Statutes of limitations find their justification in necessity and convenience rather than in

logic.  They represent expedients, rather than principles."  Id. at 314.

> They have come into the law not through the judicial process but through legislation.
> They represent a public policy about the privilege to litigate.  Their shelter has never been
> regarded as what now is called a 'fundamental' right or what used to be called a 'natural'
> right of the individual.  He may, of course, have the protection of the policy while it exists,
> but *the history of pleas of limitation shows them to be good only by legislative grace and*
> *to be subject to a relatively large degree of legislative control*.

Id. (emphasis added) (internal footnote omitted).  The Court  found that "as a matter of

constitutional law ... statutes of limitations *go to matters of remedy*, not to destruction of

fundamental rights," id. (emphasis added), and refused to place such legislatively created technical

defenses on the same footing as fundamental rights.  Id. at 315.  "[C]ertainly it cannot be said that

lifting the bar of a statute of limitations so as to restore a remedy lost through mere lapse of time

is per se an offense against the Fourteenth Amendment."  Id. at 316.  Accordingly, the

"Fourteenth Amendment does not make an act of state legislation void merely because it has some

retrospective operation."  Id. at 315.

     Fourth, 30 years later, in International Union of Electrical, Radio and Machine Workers,

AFL-CIO Local 790 v. Robbins, 429 U.S. 229 (1976), the Court addressed newly enacted

Congressional legislation which amended Title VII and revived a time-barred civil race

discrimination claim.  The Court looked to Chase Securities and quickly resolved the retroactivity

issue and upheld the law, observing that "we think that Congress might constitutionally provide

for retroactive application of the extended limitations period which it enacted."  Id. at 450-51.

     Last, since that time, the Supreme Court has continued to recognize the power of

legislatures to enact laws with retroactive effect in the civil context.  See, e.g. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 229 (1995) (noting that a statute of limitations "can be extended, without violating the Due Process Clause, after the cause of the action arose and even after the statute itself has expired."); I.N.S. v. CYR, 533 U.S. 289, 316 (2001) ("it is beyond dispute that ... Congress has the power to enact laws with retrospective effect").  This longstanding rule obviously governs the outcome of our present case and dictates that the Act does not violate the Due Process Clause.[5]

**D.  Numerous Other Federal and State Courts Have Upheld Retroactive Childhood Sexual Abuse Civil Legislation From Due Process Attacks.**  If more clarity is needed, this precedent has been applied specifically in the context of retroactive child abuse legislation similar to the Delaware statute under examination.  Both federal and state courts across the country have upheld retroactive provisions of childhood sexual abuse statutes similar to Delaware's, despite constitutional challenge.

**1.  California.**  The California state courts have repeatedly upheld various retroactive provisions of their childhood sexual abuse statutes against state and federal constitutional challenges.  See Liebig v. Superior Court, 257 Cal.Rptr. 574, 578 (Cal. App. 1989) (holding that the Legislature had the power to expressly revive time-barred civil common law causes of action); Lent v. Doe, 47 Cal.Rptr.2d 389, 392-93 (Cal. App. 1995) (upholding the Liebig decision over a constitutional challenge); Tietge v. Western Province of the Servites, Inc., 64 Cal.Rptr.2d 53, 56 (Cal. App. 1997) (holding that it is well within the legislature's "power to retroactively revive a cause of action for childhood sexual abuse time-barred under the prior

_____

[5]  A different rule applies to retrospective criminal legislation.  See, e.g. Stogner v. California, 539 U.S. 607, 616-33 (2003) (state laws which revive time-barred criminal prosecutions violate the Ex Post Facto clause).

statute of limitations").

        **a. Window Provision.** Like Delaware, in 2003 the California legislature enacted a retroactive one year civil window which revived time-barred claims for a one year period. See Cal. Civ. Proc. Code § 340.1(c) (West 2007).

        **2. Minnesota.** Similarly, the Court of Appeals of Minnesota has held that retroactive childhood sexual abuse provisions enacted by the Minnesota legislature did not violate the state or federal constitutions. K.E. v. Hoffman, 452 N.W.2d 509, 512-14 (Min.App. 1990). That court specifically held that "the legislature did not impair respondents' due process rights by enacting [the retroactive statute] which lifted the limitations bar and revived appellant's claim against them." Id. at 513. Thus, it "meets constitutional muster." Id. at 515.

        **a. Window Provision.** Also like Delaware, the Minnesota legislature has enacted several similar one year revival window provisions. See H.D. v. White, 483 N.W.2d 501, 502 (Minn.App. 1992) (discussing several of these windows).

        **3. South Dakota.** In the same way, the Supreme Court of South Dakota has held that the South Dakota childhood sexual abuse statute was to be applied retroactively in accord with legislative intent. Stratmeyer v. Stratmeyer, 567 N.W.2d 220, 222-224 (S.D. 1997). In doing so, the court noted that "the Legislature is the final arbiter of public policy, and it has clearly established South Dakota's public policy in these statutes," and that public policy was entitled to deference. Id. at 224.

    The South Dakota federal court subsequently also upheld the retroactive provisions of the South Dakota statute over due process and other federal constitutional challenges. Delonga v. Diocese of Sioux Falls, 329 F.Supp.2d at 1101-02. In doing so, that federal court noted that the U.S. Supreme Court "has not regarded the shelter afforded by a statute of limitations as a vested

fundamental right." Id. at 1101 (citing Chase Securities, supra; Plaut, supra). In light of this long established law, the district court found defendants' claims to the contrary to be "particularly unpersuasive." Id. at 1102.

      **4. Vermont**. The federal court in Vermont also has upheld the Vermont legislature's retroactive statutory provisions over due process and other federal constitutional challenges. Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc., 839 F.Supp. 275, 280-81 (D.Vt. 1993). The district court specifically looked to the Supreme Court's opinions in Chase Securities, supra, and International Union, supra, as conclusively resolving the due process issue. Id. at 280-81. Thereafter, the Supreme Court of Vermont had no problem applying the retroactivity provisions of its sexual abuse laws. See Earle v. State, 743 A.2d 1101 (Vt. 1999).

      **5. Kansas.** Finally, the Supreme Court of Kansas also has held that the legislature may retroactively revive childhood sexual abuse claims without violating due process. Shirley v. Reif, 920 P.2d 405, 412-13 (Kan. 1996). The court explained that revival was proper because "the plaintiffs' claims were only barred by a procedural statute of limitations which may be amended at any time by the legislature." Id. Thus, a plaintiff's "once-dead claim" is properly revived as long as it is filed within the parameters set by the legislature. Id.

      **6. Summary.** So federal and state courts in five states have specifically rejected as "particularly unpersuasive" Delonga, 329 F.Supp.2d at 1102, the defense attack on a civil window which revises the statute of limitations and revives claims of childhood sexual abuse. This Court should become the next jurisdiction to rule that no fundamental vested due process right is denied by Delaware's newly enacted retroactive legislation.

      **E. The Same Principle Has Been Applied in Agent Orange Litigation.** Delaware and New York also have applied this principle to enact retroactive legislation providing relief to

victims of Agent Orange.

The Delaware General Assembly has a proud tradition of helping innocent victims when the statute of limitations would otherwise fail them. For example, in 1983 the General Assembly enacted 10 Del.C. § 8131, to help Vietnam War veterans exposed to Agent Orange who were otherwise barred from bringing claims by the prior statute of limitations. The statute created a six month retroactive look back window to revive old claims. Id. at § 8131(b). This legislation was never struck down on any basis. See Bendix Corp. v. Stagg, 486 A.2d 1150, 1153 (Del. 1984) (discussing the statute); Brown v. E.I. DuPont De Nemours and Co., 820 A.2d 362, 370 (Del. 2003) (same).

The New York legislature also previously enacted a similar retroactive two year discovery window to help Agent Orange victims. N.Y. C.P.L.R. § 214-b (McKinney 2007). The Eastern District of New York later upheld that statute over both federal and state constitutional challenges. In re Agent Orange Product Liability Litigation, 597 F.Supp. 740, 811-13 (E.D.N.Y. 1984). Citing Chase Securities, supra, and Campbell, supra, that federal court held that "[s]tate statutes reviving time-barred actions are not prohibited by the due process clause of the Fourteenth Amendment." Id. at 811. Under state law, the court also noted "the state legislature's wide power to extend or revive a cause of action." Id. at 812. Indeed, "[t]his is a classic instance of the granting of legislative relief in a situation where the arbitrary application of the statute of limitations would work injustice." Id. (quoting McCann v. Walsh Construction Co., 123 N.Y.S.2d 509, 514 (N.Y. App. 1953)).

As this New York federal court so appropriately declared, this precedent also should be applied by the District of Delaware herein. It was for the General Assembly to make the policy choice to aid victims like plaintiff and to reject the claims of the insurance industry (A199-206,

259-64), and church lobbyists, who included defense counsel Mr. Reardon and Mr. Flynn. (A159-62, 162-77, 178-86, 252-54, 317). Defendants would have this Court subvert the judicial role and become a super legislature.

**F. Retroactive Civil Legislation Also Has Been Upheld in At Least Nine Other Contexts In Addition To Agent Orange Victims.** Applying the same principles stated seven times by the U.S. Supreme Court, in at least nine other civil contexts retroactive civil legislation duly enacted by Congress or state legislatures has been upheld by 30 state and federal courts across the country. Some of this retroactive legislation is addressed below.

**1. Student Loans.** Seven courts have ruled that Congress appropriately enacted a retroactive law, 20 U.S.C. § 1091a, removing the statute of limitations defense in the area of defaulted student loans. See, e.g. U.S. v. Hodges, 999 F.2d 341, 342 (8th Cir. 1993) (per curiam); U.S. v. Phillips, 20 F.3d 1005, 1007-08 (9th Cir. 1994) (per curiam); U.S. v. Glockson, 998 F.2d 896, 897-98 (11th Cir. 1993) (per curiam); U.S. v. McLaughlin, 7 F.Supp.2d 90, 91 (D.Mass. 1998); U.S. v. Smith, 862 F.Supp. 257, 260-61 (D.Hawaii 1994); Sibley v. U.S. Dept. of Educ., 913 F.Supp. 1181, 1188-89 (N.D.Ill. 1995); U.S. v. Hargrove, 2007 WL 2811832, *4 (W.D.Pa. Sept. 24, 2007).

**2. Civil Rights.** As discussed above, Congress also has enacted retroactive civil legislation reviving time-barred claims in the Title VII arena, which has been upheld over federal constitutional challenge. See International Union, supra; Davis v. Valley Distributing Co., 522 F.2d 827, 830-32 (9th Cir. 1975).

**3. Toxic Torts.** Retroactive toxic tort revival statutes also have been upheld in four states.

**a. New York.** In New York, the Toxic Tort Revival Act, revived and

provided a one year window for previously time-barred claims arising out of exposure to diethylstilbestrol, tungsten-carbide, asbestos, chlordane or polyvinylchloride.  See Piccirelli v. Johns-Manville Sales Corp., 128 A.D.2d 762 (N.Y.A.D. 1987).  That Act was upheld repeatedly by New York Courts over both state and federal constitutional challenges.  See Hymowitz v. Eli Lilly and Co., 539 N.E.2d 1069, 1079-80 (N.Y. 1989); Burdick v. Afrimet-Indussa Inc., 138 Misc.2d 598, 606-07 (N.Y.Sup. 1988); Hymowitz v. Eli Lilly and Co., 136 Misc.2d 482, 485-89 (N.Y.Sup. 1987).

   **b.  Massachusetts.**  The Supreme Judicial Court of Massachusetts also has upheld an asbestos revival statute over state and federal constitutional challenges.  City of Boston v. Keene Corp., 547 N.E.2d 328, 333-35 (Mass. 1989).  In the course of its analysis, the court noted that the legislature was entitled to "considerable deference" in seeking to address and remedy such weighty issues related to the "'fundamental welfare' of our citizens."  Id. at 334.

   **c.  Kansas.**  The Kansas Supreme Court also has upheld a revival statute for exposure to asbestos and other toxins over both state and federal constitutional challenges.  Harding v. K.C. Wall Products Inc., 831 P.2d 958, 967-69 (Kan. 1992).  The court noted that such a statute "is an expression of legislative public policy, is procedural, and may be applied retroactively when the legislature expressly makes it so."  Id. at 969.

   **d.  Louisiana.**  Lastly, the Eastern District of Louisiana has upheld Louisiana's asbestos abatement revival statute, LA Rev. Stat. Ann. § 9:5644 (West 2007), over both federal and state constitutional challenges, noting that this legislative act "falls specifically within the scope of the Louisiana Legislature to adjust time periods affecting the imposition of liability for past acts."  Security Homestead Ass'n v. W.R. Grace & Co., 743 F.Supp. 456, 459-60 (E.D.La. 1990).

### 4. Insurance.

a. **California.** California courts have upheld legislation which revived for one year previously time-barred insurance claims arising out of the 1994 Northridge earthquake. See, e.g. 20th Century Insur. Co. v. Superior Court, 109 Cal.Rptr.2d 611, 623-24, 631-33 (Cal. App. 2001); Hellinger v. Farmers Group, Inc., 111 Cal.Rptr.2d 268, 278-83 (Cal. App. 2001). The courts there have observed that "in response to 'reports of rampant mishandling of insurance claims by insurers,'" Ashou v. Liberty Mut. Fire Ins. Co., 41 Cal.Rptr.3d 819, 827 (Cal. App. 2006), "the Legislature took action to advance the public interest in protecting insureds mistreated by their insurers *at a time when the insureds were most vulnerable*." 20th Century Insur., 109 Cal.Rptr.2d at 633 (emphasis added). The Ninth Circuit later held that this legislation passed muster under both the U.S. and California constitutions. Campanelli v. Allstate Life Ins. Co., 322 F.3d 1086, 1100-01 (9th Cir. 2003).

b. **Connecticut.** Similarly, in Connecticut, a retroactive uninsured motorist statute has been upheld over various federal and state due process challenges. Serrano v. Aetna Ins. Co., 664 A.2d 279, 283-90 (Conn. 1995).

### 5. Wrongful Death.

Both New Jersey and Minnesota have enacted legislation which retroactively revived time-barred wrongful death claims, actions which survived state and federal due process scrutiny. See Short v. Short, 858 A.2d 571, 574-76 (N.J.Super.A.D. 2004); Nachtsheim v. Wartnick, 411 N.W.2d 882, 887-88 (Minn.App. 1987) (overruled on other grounds by Powell v. Anderson, 660 N.W.2d 107 (Minn. 2003)).

### 6. Products Liability.

In the products liability arena, applying Oregon law, the Fourth Circuit has upheld, under the state and federal constitutions, products liability legislation which revived time barred claims. Shadburne-Vinton v. Dalkon Shield Claimants Trust, 60 F.3d

1071, 1077 (4th Cir. 1995).

      **7.  Personal Injury.**  Legislation which retroactively revived personal injury claims has been applied and upheld in Michigan, Georgia and Rhode Island on both state and federal due process grounds.  See <u>Pryber v. Marriott Corp.</u>, 296 N.W.2d 597, 600-01 (Mich. App. 1980); <u>Vaughn v. Vulcan Materials Co.</u>, 465 S.E.2d 661, 662 (Ga. 1996); <u>Twomey v. Carlton House of Providence, Inc.</u>, 320 A.2d 98, 103 (R.I. 1974).

      **8.  Medical Malpractice.**  Minnesota has done the same in the medical malpractice context on federal constitutional grounds.  <u>Gomon v. Northland Family Physicians, Ltd.</u>, 645 N.W.2d 413, 415, 419-20 (Minn. 2002).

      **9.  Paternity.**  Last, Michigan and Hawaii have enacted retroactive paternity claim laws, which have been upheld on federal constitutional and state law grounds.  See <u>Heck. v. McConnell</u>, 418 N.W.2d 678, 679 (Mich. App. 1987) (per curiam); <u>Doe v. Roe</u>, 677 P.2d 468, 470-71 (Hawaii 1984).

      **G.  The Act Does Not Violate Due Process.**  As discussed in Argument **II.C.** above, for 130 years the Supreme Court has explicitly held seven times that retroactive civil legislation which revives previously time-barred claims does not violate Fourteenth Amendment Due Process.  See <u>Campbell</u>, 115 U.S. at 627-28; <u>Chase Securities</u>, 325 U.S. at 311-12, 314-15; <u>International Union</u>, 429 U.S. at 450-51; <u>Plaut</u>, 514 U.S. at 229.  In the same way, as discussed at length in subsections D.-F. above, federal and state courts across the country have repeatedly held that such legislation does not implicate federal due process concerns.  Courts in five states have so held in the child abuse context, and 31 courts have similarly ruled in ten other contexts.

      The Act does not interfere with vested rights to real or personal property.  See <u>Campbell</u>, 115 U.S. at 622-29.  Nor does it subject anyone to new legal liability.  See <u>Chase Securities</u>, 325

U.S. at 316. Rather, raping and sexually abusing young children has always been illegal. Indeed, defendants implicitly admit this in their Answers when they admitted that they had a duty to protect children from such child abuse. (See Diocese & Church Ans. ¶¶ 39, 40, 41, 24, 128, 156 see ¶¶ 15-17, A34,35,38,53,58,72,73,75,76,88,92). Thus, the situations affected by this statute are not such that any defendant's "conduct would have been different if the present rule had been known and the change foreseen." Id.

Instead, the state legislature used the Act to restore a remedy lost through the passage of time. As a matter of law, "it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment." Id. As the Supreme Court has explained,

> Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, *certainly it cannot be said that lifting the bar of a statute of limitations so as to restore a remedy lost through mere passage of time is per se an offense against the Fourteenth Amendment*.

Id. at 315-16; International Union, 429 U.S. at 243-44 (emphasis added).

As a result, the Act simply does not violate due process.

## III. THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

### A. The Supreme Court Has Held That Retroactive Civil Legislation Does Not Violate Equal Protection.

Neither does the statute fail because it implicates some fundamental right under the Equal Protection Clause. At least eight courts have rejected such an argument in analogous contexts based upon the same governing precedent from the U.S. Supreme Court.

Initially, in addition to its authoritative due process holding, in Chase Securities, 325 U.S. at 309, the Supreme Court held that the retroactive statute at issue also passed constitutional muster under the equal protection clause. The Court stated that the "statute on its face is a

general one, applying to all similarly situated persons or transactions." Id.  The Supreme Court

also explained that even if the statute was motivated by a particular class of cases, that "would not

establish that a general act such as we have described would deny equal protection." Id.  The

lower courts have applied this ruling.

      **1. Toxic Torts.**  In the limitations revival context, the Supreme Judicial Court of

Massachusetts held that "our analysis of the due process claim is equally dispositive of the

defendants' equal protection challenge ... under the Massachusetts Constitution." City of Boston,

547 N.E.2d at 332 n.10; see id. at 331 n.5 (noting the equal protection claim is "subsidiary" to the

due process analysis).[6]  The New York Supreme Court also explained that "[m]any of the same

concepts relevant to the due process analysis are applicable to defendants' equal protection

challenge." Hymowitz, 136 Misc.2d at 487.

      The Court of Appeals of New York has rejected similar equal protection challenges,

finding that such laws do not burden any fundamental right or any suspect class. Hymowitz, 539

N.E.2d at 1080.  Instead, that highest court found these laws to be well within the legislature's

discretionary authority to rationally address problems affecting "economics and social welfare."

Id.; see Burdick, 138 Misc.2d at 606-07; Hymowitz, 136 Misc.2d at 487-89.  The Eastern District

of Louisiana also has held the same, finding that state's asbestos revival statute violated neither

state nor federal equal protection principles. Security Homestead, 743 F.Supp. at 459.

      **2. Student Loans.**  Similar equal protection challenges to retroactive abolition of

statutes of limitations in the student loan context have been rejected as well. See, e.g. Sibley v.

---

[6]  The Massachusetts courts interpret state and federal equal protection identically.  See
Bracket v. Civil Service Com'n, 850 N.E.2d 533, 545 (Mass. 2006) ("The standard for equal
protection analysis under our Declaration of Rights is the same as under the Federal
Constitution.").  Due process analysis is "comparable" as well.  City of Boston, 547 N.E.2d at
332 n.8.

U.S. Dept. of Educ., 913 F.Supp. at 1189; Chatmon v. U.S. Dept. of Educ., 2003 WL 21501919,
*6 (N.D.Tex. June 24, 2003).

    **B.   Rational Basis Is The Appropriate Standard of Review.**  Laws which do not
"burden a fundamental right or target a suspect class" are to be upheld if they bear "a rational
relation to some legitimate end."  Ramsgate Court Townhome Ass'n v. West Chester Borough,
313 F.3d 157, 160 (3d Cir. 2002).  Because the Act bears none of the hallmarks of legislation
subject to heightened review, rational basis scrutiny applies.

        **1.   No Suspect Class is Burdened.**  First, the Act cannot be said to target any
suspect class.  It allows lawsuits by all individuals who were sexually abused as minors by adults.
See 10 Del.C. § 8145(a).  It applies to all "public" and "private" entities alike.  See 10 Del.C. §
8145(b).  It permits all persons who are falsely accused to recover attorneys fees under the same
standard.  See 10 Del.C. § 8145(c).  It approaches the widespread problem of childhood sexual
abuse with a fair and even hand.  Like the statute upheld by the Supreme Court in Chase
Securities, the "statute on its face is a general one, applying to all similarly situated persons or
transactions."  325 U.S. at 309.

        **2.   No Fundamental Rights are Burdened.**  Second, the Act also cannot be said
to burden a fundamental right.  As already discussed, the Supreme Court has held that statutes of
limitations have never "been regarded as what now is called a 'fundamental' right or what used to
be called a 'natural' right of the individual." Id. at 314.  Continuing, the Supreme Court has held
that "as a matter of constitutional law ... statutes of limitations go to matters of remedy, not to
destruction of fundamental rights," id. (emphasis added), and it refused to place such legislatively
created technical defenses on the same footing as fundamental rights.  Id. at 315.

    Moreover, that the Act removes a tort defense is insufficient to raise any fundamental right

22

concerns. As the Third Circuit has helpfully explained in the mass tort context -

> the nature of the right to assert a particular defense in a tort action is not among those
> characterized as "fundamental." It is not included in the field of human rights that touches
> on personal liberty, an area of special concern to the courts. Nothing inherent in the right
> to a tort defense lends itself to demand more scrupulous review than the other social and
> economic matters traditionally examined under the rational relationship test.

In re Asbestos Litigation, 829 F.2d 1233, 1239 (3d Cir. 1987). Accordingly, this Court should

take its lead from the Third Circuit and rule that the loss of a tort defense does not implicate any

fundamental right of the defendants. If this is the law in the mass toxic tort context it should also

be the law in the context of the mass epidemic of childhood sexual abuse which recently has been

exposed in this country. (A130, 197, 315)

     **C. The Rational Basis Standard is Easily Met.** Accordingly, rational basis scrutiny

applies, meaning that the Act "must be sustained if [it is] rationally related to a legitimate

governmental interest." Id. at 1238. The burden here is on defendants. "The party alleging an

equal protection violation has the burden of showing the irrationality of the classification drawn

by the statute." U.S. v. Pollard, 326 F.3d 397, 407 (3d Cir. 2003). They must "convince the

court that no set of facts rationally could justify the classification." Id. at 408. The defendants

simply as a matter of law cannot meet this burden.

     First, "[a]s a general rule, legislatures are presumed to have acted within their

constitutional power." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (internal punctuation omitted);

see Ramsgate, 313 F.3d at 160 ("[w]e presume such an ordinance is valid."). "Legislation enjoys

a presumption of validity, and the [party challenging the law] must negate every conceivable

justification for the classification in order to prove that the classification is wholly irrational."

U.S. v. Pollard, 326 F.3d at 407. Second, the "court may [even] hypothesize the motivations of

the legislature to find a legitimate objective promoted by the provision under attack." Id. at 408

(internal punctuation omitted).   Third, "in our review we are not limited to considering only the goal stated by the legislative body.  We are free to consider any conceivable legislative purpose so long as it reasonably could have been entertained by the legislature."  <u>Ramsgate</u>, 313 F.3d at 160 (3d Cir. 2002) (internal citation omitted).

In addition, the courts and the Third Circuit have long recognized that the legislature is entitled to deference in its policy decisions.

> [I]n a democracy the legislature may be the more appropriate branch to draw classifications based on public policy.  As a popularly elected body, the legislature is in a position to tap the thinking of its constituency and has the resources to secure data generally not available to the courts.

<u>In re Asbestos Litigation</u>, 829 F.2d at 1240.  "States exercise considerable latitude to accomplish fundamental shifts in policy by judicial action as well as by legislation."  Id. (citing cases and statutes addressing the abolition of contributory negligence and substitution of comparable negligence).  As the Third Circuit has explained -

> It is by now well established that in confronting a problem in the area of economic and social welfare, a state does not violate the Equal Protection Clause merely because the classifications drawn by its laws are imperfect.  "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"

<u>Id.</u>  Thus, a  "law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous."  <u>Romer v. Evans</u>, 517 U.S. 620, 632 (1996).

The defense equal protection claim fails because there are many rational reasons justifying the Act which are apparent from the Act itself as well as its legislative history. The Court need not even hypothesize about justifications.  In the words of the Delaware Governor, these reasons justifying the statute are "vitally important."  (Gov. Minner Press Release; A314).  They include the following:

24

1.  To give survivors of childhood sexual abuse an opportunity to seek judicial relief.  (A131, 158).

2.  To help identify and bring to public account past and present active pedophiles.  (A319, 106).

3.  To enable parents to better protect their children by identifying and exposing pedophiles in the community.  (A106).

4.  To hold accountable institutions which hid or enabled child abusers.  (A 108, 319).

5.  To strengthen Delaware law relating to sex offenders.  (A314).

6.  To provide an incentive for victims to come forward. (A106).

7.  To encourage institutions to make the necessary preventative changes to protect children from pedophiles. (A108).

8.  To punish abusers. (A319).

9.  To enable those victims of sexual abuse who have repressed or dissociated from the memories of the abuse the opportunity to seek judicial relief. (A117).

10. To prevent future sexual abuse by identifying and exposing pedophiles. (A117).

11. To learn and expose the truth about institutions that hid or enabled child abusers through discovery of their records. (A158).

Accordingly, the Act does not violate equal protection since all these reasons are rational, legitimate and within the arena of economic and social welfare legislation.

## IV.    THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN UNDER THE SEPARATION OF POWERS DOCTRINE OF ARTICLE 3, § 1 OF THE U.S. CONSTITUTION.

Finally, as a makeweight defendants may argue that the Act also violates separation of powers principles.  See U.S.Const. Art. 3, § 1.  But on its face, the Act simply does not interfere with or attempt to reopen any final judgments rendered by the judicial branch which would be the proper basis for a separation of powers argument. Cf. Plaut, 514 U.S. at 226-33 (holding that

legislatively upsetting a final judgment violates the separation of powers doctrine).

Here in a precedent directly on point, the Supreme Court of Oregon has specifically upheld the legislature's right to retroactively revive previously time barred claims for childhood sexual abuse over a state constitutional separation of powers challenge. <u>A.K.H. v. R.C.T.</u>, 822 P.2d 135, 137 (Or. 1991).

Similarly, in the asbestos context, the Supreme Judicial Court of Massachusetts has held that a revival statute does not implicate separation of powers concerns because it did not attempt to reopen any final judgments. <u>City of Boston</u>, 547 N.E.2d at 335. That court also has noted that such concerns are subsumed within due process analysis. <u>Id.</u> at 331 n.5.

Accordingly, the Act also does not violate the separation of powers doctrine because it is not addressed to rescinding a final judgment rendered by a court of competent jurisdiction.

## <u>CONCLUSION</u>

The Act as written violates no provision of the U.S. Constitution and the Court should grant judgment accordingly. The Act is appropriate social welfare legislation well within the powers of the Delaware General Assembly to address a troubling social ill.

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**RAEANN WARNER, ESQ. (#4931)**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
RW@NeubergerLaw.com

**JACOBS & CRUMPLAR, P.A.**

/s/ Robert Jacobs

26

**ROBERT JACOBS, ESQ. (#244)**
**THOMAS C. CRUMPLAR, ESQ. (#942)**
Two East Seventh Street, Suite 400
Wilmington, DE 19801
(302) 656-5445
Bob@JandCLaw.com
Dated: October 16, 2007    Tom@JandCLaw.com

27

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

October 16, 2007, I electronically filed this Pleading with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

> Anthony G. Flynn, Esquire
> Young Conaway Stargatt & Taylor LLP
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
> aflynn@ycst.com
>
> Mark Reardon, Esquire
> Elzufon Austin Reardon Tarlov & Mondell
> 300 Delaware Avenue, Suite 1700
> P.O. Box 1630
> Wilmington, DE 19899
> mreardon@elzufon.com
>
> Stephen P. Casarino, Esquire
> Casarino Christman & Shalk, P.A.
> 800 North King Street, Suite 200
> P.O. Box 1276
> Wilmington, DE 19899
> scasarino@casarino.com

> /s/ Stephen J. Neuberger
> **STEPHEN J. NEUBERGER, ESQ.**

/ Quill, Robert / Pleadings / Quill - Const as Written OB.final