# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ROBERT QUILL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A.No. 07-435-SLR** |
| | : | |
| **CATHOLIC DIOCESE OF WILMINGTON,** | : | |
| **INC., a Delaware corporation; ST.** | : | |
| **ELIZABETH'S CATHOLIC CHURCH, a** | : | |
| **Delaware corporation; Rev. FRANCIS G.** | : | |
| **DELUCA, individually and in his official** | : | |
| **capacity; and Rev. MICHAEL A.** | : | |
| **SALTARELLI, in his official capacity,** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**RAEANN WARNER, ESQ. (#4931)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
RW@NeubergerLaw.com

Dated: October 19, 2007

**JACOBS & CRUMPLAR, P.A.**
**ROBERT JACOBS, ESQ. (#244)**
**THOMAS C. CRUMPLAR, ESQ. (#942)**
Two East Seventh Street, Suite 400
Wilmington, DE 19801
(302) 656-5445
Bob@JandCLaw.com
Tom@JandCLaw.com

Attorneys for Plaintiff

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.     DIVERSITY JURISDICTION IS PROPER IN THIS CASE BROUGHT
          BY A FLORIDA CITIZEN AGAINST NUMEROUS DELAWARE
          CORPORATION AND CITIZEN DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . 2

          A.    The Requirements of Diversity Jurisdiction are Satisfied . . . . . . . . . . . . 2

                1.    There is Complete Diversity of the Parties . . . . . . . . . . . . . . . . . 3

                2.    The Amount in Controversy Exceeds $75,000 . . . . . . . . . . . . . . 4

          B.    The Purpose of Diversity Jurisdiction is To Protect Out of State
               Litigants, Such as Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          C.    The Court's Obligations When Diversity Is Properly Invoked . . . . . . . . . 5

          D.    Assuming *Arguendo* the Truth of the Defense Claim of Legislative
               Intent, the Supremacy Clause Bars a State From Overruling the U.S.
               Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          E.    In the Act, the Legislature Was Merely Specifying Whether Under
               Delaware's Split System, Such Claims Were To Be Heard By the
               Chancery or Superior Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          F.    This Court Has Been Authorized by the U.S. Constitution, Congress
               and the Supreme Court to Hear State Law Claims Under Its Diversity
               Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.    PLAINTIFF DOES NOT OPPOSE THE DISMISSAL OF SALTARELLI
          AS A OFFICIAL CAPACITY DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                            <u>Page</u>

<u>Baltimore Bank for Cooperatives v. Farmers Cheese Co-op.</u>,
     583 F.2d 104 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,10

<u>Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc.</u>,
     839 F.Supp. 275 (D.Vt. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Barrow S.S. Co. v. Kane</u>, 170 U.S. 100 (1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,6-7

<u>Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.</u>,
     295 F.Supp.2d 430 (D.Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Carlson Marketing Group, Inc. v. Royal Indem. Co.</u>,
     2007 WL 951683 (D.Minn. March 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558 (1990) . . . . . . . . . . 7

<u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795 (1999) . . . . . . . . . . . . . . . . . . . 1

<u>Colorado River Water Cons. Dist. v. U.S.</u>, 424 U.S. 800 (1975) . . . . . . . . . . . . . . . . . . . . . 5,10

<u>Cowles v. Mercer County</u>, 74 U.S. 118 (1868) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>DeLonga v. Diocese of Sioux Falls</u>, 329 F.Supp.2d 1092 (D.S.D. 2004) . . . . . . . . . . . . . . . . . 8

<u>DiRuggiero v. Rodgers</u>, 743 F.2d 1009 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5,9

<u>Dodge v. Woolsey</u>, 59 U.S. 331 (1855) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,9

<u>Edelson v. Soricelli</u>, 610 F.2d 131 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Eden v. Oblates of St. Francis de Sales</u>, 2006 WL 3512482 (Del. Super. Dec. 4, 2006) . . . . . . . 1

<u>French v. Clinchfield Coal Co.</u>, 407 F.Supp. 13 (D.Del. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Gould Electronics Inc. v. U.S.</u>, 220 F.3d 169 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart</u>
     Management, Inc., 316 F.3d 408 (3d Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.</u>,
     471 U.S. 707 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Hyde, el al. v. Stone</u>, 61 U.S. 170 (1857) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

In re LifeUSA Holding Inc., 242 F.3d 136 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994) . . . . . . . . . . . . . . . 2

Markham v. Allen, 326 U.S. 490 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,11

MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086 (3d Cir. 1995) . . . . . . . . . . . . . . . 10

Meredith v. City of Winter Haven, 320 U.S. 228 (1943)  . . . . . . . . . . . . . . . . . . . . . . 5-6,10-11

Monroe Park v. Metropolitan Life Ins. Co., 457 A.2d 734 (Del. 1983) . . . . . . . . . . . . . . . . . . . 8

Monte v. S. Del. County Auth., 321 F.2d 870 (3d Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rhoades v. U.S., 950 F.Supp. 623 (D.Del. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. v. Shyne, 2007 WL 1075035 (S.D.N.Y. April 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

W.V. Realty Inc. v. Northern Insur. Co. of N.Y., 334 F.3d 306 (3d Cir. 2003) . . . . . . . . . . . . . 1

Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381 (1998)  . . . . . . . . . . . . . . . . . . . . . . . 3

## Constitution, Statutes, and Rules

U.S. Const., Art. 3, Section 2, Clause 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const., Art. 6, Clause  2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

28 U.S.C. § 1332(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1332(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed.R.Civ.P. 8(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Civ.P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Del. Const. Art. IV, Section 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 Del.C. § 4016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10 Del.C. § 566(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10 Del.C. § 8131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10 Del.C. § 8145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

22 Del.C. § 905 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26 Del.C. § 606(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

N.Y. C.P.L.R. § 214-b (McKinney 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **Other Authorities**

13B Wright, Miller, & Cooper, Federal Practice and Procedure § 3601 (2d ed. 1984) . . . . . . . 3-4

## NATURE AND STAGE OF THE PROCEEDING

This diversity action was filed on July 12, 2007 and the Complaint then was amended as of right.  (D.I. 11, First Amended Complaint, hereinafter "Compl. ¶__").  Both institutional defendants have answered.  (D.I. 19, Answer of the Catholic Diocese of Wilmington, hereinafter "Diocese Ans. ¶__", and D.I. 23, Answer of St. Elizabeth's Catholic Church, hereinafter "Church Ans. ¶__").

This case arises from: (1) the "Child's Victim Act" of 2007, 10 Del. C. § 8145 (the "Act), which in subsection (a) prospectively abolished the statute of limitations in future child abuse actions, and in subsection (b) retrospectively created a two year window within which claims may be brought for past child abuse actions which had been previously barred by the prior statute of limitations; and (2) Delaware common, law regarding at least 300 acts of childhood sexual abuse.[1]  It seeks monetary damages for personal injuries arising from such abuse by Rev. Francis G. DeLuca, a convicted child molester and priest employed by the defendants.  DeLuca was employed recklessly despite the fact that the defendants had prior actual knowledge that he was a child molester and that they owed a duty of care to protect plaintiff from him. (Compl. ¶ 1).

This is plaintiff's Answering Brief in opposition to defendants' Motions to Dismiss.

## SUMMARY OF THE ARGUMENT

1.  Plaintiff, a Florida citizen, has properly invoked this Court's diversity jurisdiction

---

[1]  Counts VI, VII and VIII are not dependent upon the Act.  Instead, they arise from Delaware common law and are based upon the recovery of repressed memories in October 2006 by the plaintiff and the timely filing of this action within two years of that discovery.  See Eden v. Oblates of St. Francis de Sales, 2006 WL 3512482 *3-4 (Del. Super. Dec. 4, 2006).  As to the apparent defense unhappiness with plaintiff's alternative pleading of liability theories (OB at 5 n.1), plaintiff relies upon long settled law in this regard.  See, e.g. Fed.R.Civ.P. 8(e)(2); Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 805 (1999); W.V. Realty Inc. v. Northern Insur. Co. of N.Y., 334 F.3d 306, 316 (3d Cir. 2003); Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 295 F.Supp.2d 430, 438 (D.Del. 2003).

under 28 U.S.C. § 1332, in this case against Delaware citizen defendants, with a value well over $75,000.

## STATEMENT OF FACTS

Plaintiff is a Florida citizen, presently disabled, who was last employed as a supervisory staff attorney for the U.S. Court of Appeals for the Eleventh Circuit. (Compl. ¶ 11).

Defendants are Delaware citizens.  (See Diocese Ans. ¶¶ 5-7, 9; Church Ans.¶¶ 6-7).

## ARGUMENT

I.    STANDARD OF REVIEW.

Under Fed.R.Civ.P. 12(b)(6), the trial court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Standard of Review for the defense 12(b)(1) motion is the same.  As the defense brief recognizes (OB at 4), defendants have made a facial attack on the sufficiency of this Court's subject matter jurisdiction.  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).  As such, "the court must accept as true all factual allegations and draw all reasonable inferences in favor of the non-moving party." Rhoades v. U.S., 950 F.Supp. 623, 628 (D.Del. 1996).

II.    DIVERSITY JURISDICTION IS PROPER IN THIS CASE BROUGHT BY A FLORIDA CITIZEN AGAINST NUMEROUS DELAWARE CORPORATION AND CITIZEN DEFENDANTS.

A.  The Requirements of Diversity Jurisdiction are Satisfied.  The U.S. Constitution states that "[t]he judicial Power [of the United States] shall extend ... to Controversies ... between

Citizens of different States."  U.S. Const., Art. 3, Section 2, Clause 1.  This provision gives

Congress the power to vest jurisdiction in the federal courts over cases involving controversies

between citizens of different states.  13B Wright, Miller, & Cooper, Federal Practice and

Procedure § 3601, p.334 (2d ed. 1984).  Congress first did so by enacting the Judiciary Act of

1789.  Id. at p.335.  The diversity statute is presently codified at 28 U.S.C. § 1332, which states

that -

> (a)  The district courts shall have original jurisdiction of all civil actions
> where the matter in controversy exceeds the sum or value of $75,000,
> exclusive of interest and costs, and is between -
>
> (1) citizens of different States[.]

28 U.S.C. § 1332(a).  "Federal courts have diversity jurisdiction where there is complete diversity

among the parties, and the amount in controversy meets the jurisdictional minimum."  In re

LifeUSA Holding Inc., 242 F.3d 136, 142 (3d Cir. 2001); see Wisconsin Dept. of Corrections v.

Schacht, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original'

diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if

there is no plaintiff and no defendant who are citizens of the same State.").

      **1.  There is Complete Diversity of the Parties.**  Jurisdiction under § 1332(a)(1)

"requires complete diversity of the parties; that is that no plaintiff can be a citizen of the same

state as any of the defendants." Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E.

Lockhart Management, Inc., 316 F.3d 408, 410 (3d Cir. 2003).  Here, plaintiff is a Florida citizen

(Compl. ¶ 11), a fact defendants do not dispute in their Motions.  Similarly, it also is undisputed

that none of the defendants are Florida citizens.  Instead, they have Delaware citizenship.  (See

Diocese Ans. ¶¶ 5-7, 9; Church Ans.¶¶ 6-7).  Accordingly, there is complete diversity of the

parties.  Id.

**2. The Amount in Controversy Exceeds $75,000.** This case seeks damages for many years of sexual abuse of a young child, against both the priest perpetrator as well as the institutions that have openly admitted knowledge of the perpetrator's abusive past but nevertheless subsequently placed him with plaintiff and other young children in both church and school settings. (See Diocese & Church Ans. ¶¶ 38, 68, 72, 77, 78). Only one other such case has gone to a jury in this state and that jury awarded $41,000,000 for similar claims. See Whitwell v. Smith, C.A.No. 05-796-SLR (D.Del.) at D.I. 45 p.2. As such, the amount in controversy requirement is easily met.

Accordingly, the requirements of the diversity statute have been satisfied.

**B. The Purpose of Diversity Jurisdiction is To Protect Out of State Litigants, Such as Plaintiff.** As the Supreme Court explained more than 150 years ago -

> The foundation of the right of citizens of different States to sue each other in the courts of the United States, is not an unworthy jealousy of the impartiality of the state tribunals. It has a higher aim and purpose. It is to make the people think and feel, though residing in different States of the Union, that their relations to each other were protected by the strictest justice, administered in courts independent of all local control or connection with the subject-matter of the controversy between the parties to a suit.

Dodge v. Woolsey, 59 U.S. 331, 354 (1855). The purpose of diversity jurisdiction is "to secure a tribunal presumed to be more impartial than a court of the state in which one of the litigants resides." Barrow S.S. Co. v. Kane, 170 U.S. 100, 111 (1898). In the Third Circuit's words, "diversity jurisdiction has roots in apprehensions of local prejudice toward foreign suitors in state courts." DiRuggiero v. Rodgers, 743 F.2d 1009, 1018 (3d Cir. 1984); see 13B Wright, Miller, & Cooper, Federal Practice and Procedure § 3601, p.338 (diversity jurisdiction exists because of "the fear that state courts would be prejudiced against out-of-state litigants." ). As our District has explained -

> diversity jurisdiction was included in both the Constitution and statutes in order to protect

4

some individuals from the perceived bias of local courts.... [T]hose to be protected were those from out of the state, against whom bias would arise from the dislike of strangers who were suing friends and neighbors of the venire.

French v. Clinchfield Coal Co., 407 F.Supp. 13, 19 (D.Del. 1976).  As a disabled supervisory staff attorney for the Eleventh Circuit Court of Appeals in Atlanta, Georgia (Compl. ¶ 4), plaintiff is well aware of the purpose of diversity jurisdiction and has invoked his absolute right to protection under it as a Florida citizen, litigating against Delaware corporations and Delaware citizens.

      **C.  The Court's Obligations When Diversity Is Properly Invoked.**  "As a general rule, federal courts have 'virtually the unflagging obligation' to exercise the jurisdiction given them." Baltimore Bank for Cooperatives v. Farmers Cheese Co-op., 583 F.2d 104, 111 (3d Cir. 1978) (quoting Colorado River Water Cons. Dist. v. U.S., 424 U.S. 800, 817 (1975)); see Hyde, el al. v. Stone, 61 U.S. 170, 175 (1857) (the "courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them, in every case to which their jurisdiction extends.  They cannot abdicate their authority or duty in any case in favor of another jurisdiction.").  Despite "trenchant criticism" by academics, "Congress has declined to place significant limitations on its statutory diversity grant."  DiRuggiero, 743 F.2d at 1018.  As the Supreme Court has long held -

> The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. ...[I]t has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, *to decide questions of state law whenever necessary* to the rendition of a judgment.

Meredith v. City of Winter Haven, 320 U.S. 228, 234 (1943) (emphasis added).

      The Supreme Court long ago rejected the defense contention that a federal court sitting in diversity could not decide state law questions.  "The mere fact that the district court, in the

5

exercise of the jurisdiction which Congress has conferred upon it, is required to interpret state

law is not in itself a sufficient reason for withholding relief to petitioner." <u>Markham v. Allen</u>,

326 U.S. 490, 495 (1946).

> Congress having adopted the policy of opening the federal courts to suitors in all diversity
> cases involving the jurisdictional amount, *we can discern in its action no recognition of a*
> *policy which would exclude cases from the jurisdiction merely because they involve state*
> *law* or because the law is uncertain or difficult to determine.

<u>Meredith</u>, 320 U.S. at 236 (emphasis added).

**D.  Assuming *Arguendo* the Truth of the Defense Claim of Legislative Intent, the**

**Supremacy Clause Bars a State From Overruling the U.S. Constitution.**  Defendants argue

that the Delaware General Assembly expressly intended to strip the federal courts of diversity

jurisdiction and that all cases brought pursuant to the Act may only be brought in state court.

However, as a matter of law, a state statute simply cannot strip a federal court of its diversity

jurisdiction.  The Supremacy Clause of the U.S. Constitution forbids this, stating -

> This Constitution, and the Laws of the United States which shall be made in Pursuance
> thereof, and all Treaties made, or which shall be made, under the Authority of the United
> States, shall be the supreme Law of the Land; and the Judges in every State shall be
> bound thereby, any Thing in the Constitution or Laws of any State to the Contrary
> notwithstanding.

U.S. Const., Art. 6, cl. 2.

In the face of long ago efforts by states to strip federal courts of their constitutionally

mandated diversity jurisdiction, 150 years ago the Supreme Court explained that

> this court has repeatedly decided that the jurisdiction of the courts of the United States
> over controversies between citizens of different States cannot be impaired by the laws of
> the States, which prescribe the modes of redress in their courts, or which regulate the
> distribution of their judicial power.

<u>Hyde</u>, 61 U.S. at 175.  Nearly 110 years ago, the Court held that "[t]he jurisdiction so conferred

upon the national courts cannot be abridged or impaired by any statute of a state." <u>Barrow</u>, 170

6

U.S. at 111; see Cowles v. Mercer County, 74 U.S. 118, 122 (1868) ("no statute limitation of

suability can defeat a jurisdiction given by the Constitution.").  Defendants have proffered no

reason to depart from this long settled precedent.[2]

     **E.  In the Act, the Legislature Was Merely Specifying Whether Under Delaware's Split System, Such Claims Were To Be Heard By the Chancery or Superior Courts.**

Contrary to the stretched defense claim that the General Assembly sought to divest this Court of

its Constitutionally and statutorily based powers, neither the text of the Child Victim's Act nor its

legislative history reveal any intent of the Delaware General Assembly to attack federal court

diversity jurisdiction.

     Defendants urge this Court to accept their far-fetched, *ipse dixit* claim that the Child

Victim's Act is part of a nefarious plot by our conscientious Delaware legislators to undermine

the U.S. Constitution, Acts of Congress, long standing Supreme Court precedent, the federal

courts in general and diversity jurisdiction in particular.  In the face of this contention, plaintiff

respectfully suggests that the wisdom of distinguished Franciscan friar and English logician

William of Occam has applicability here.  The principle known as Occam's razor posits that "all

things being equal, the simplest solution tends to be the right one."  See Chauffeurs, Teamsters

and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 575 (1990) (Brennan, J. concurring)

(recognizing and applying the principle); U.S. v. Shyne, 2007 WL 1075035, *24 (S.D.N.Y. April

5, 2007) (same); Carlson Marketing Group, Inc. v. Royal Indem. Co., 2007 WL 951683, *14

(D.Minn. March 28, 2007) (same)

---

    [2]  Although a more detailed analysis is not needed given the utter lack of merit of the
defense position, for a more thorough discussion of Supremacy Clause principles, see
Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712-16
(1985).

Here, it is Delaware law 101 that our state courts retain the traditional split between law and equity.  See Del. Const. Art. IV, sec. 7; Monroe Park v. Metropolitan Life Ins. Co., 457 A.2d 734, 738 (Del. 1983).  As a result of having two separate and independent trial courts, when our legislature enacts a statute, often times it specifies in which court an action may be brought: the court of law - Superior Court; or the traditional court of equity - the Court of Chancery.  The legislature regularly so specifies.  See, e.g. 10 Del.C. § 566(a) (medical malpractice claims "shall be brought in the Superior Court"); 22 Del.C. § 905 (certain tax enforcement actions are to be brought "in the Superior Court"); 26 Del.C. § 606(2) (revocation of franchise actions are to be initiated "by the filing of a complaint in the Court of Chancery"); 7 Del.C. § 4016 (giving the Court of Chancery exclusive jurisdiction over all actions relating to erosion and sedimentation control).  In doing so, the General Assembly is simply letting potential litigants know which court such an action must be filed in when filing in state court.  This has nothing to do with intruding on long settled principles of federalism, principles which the State of Delaware adopted and agreed to comply with when it ratified the U.S. Constitution (including both the Supremacy and Diversity Clauses), on what is known in this state as Delaware Day - the anniversary of Delaware's ratification of the U.S. Constitution on December 7, 1787.

This Court has previously exercised diversity jurisdiction in a child sexual abuse case brought by a Virginia citizen against a Delaware citizen under Vermont law.  See Whitwell v. Smith, C.A.No. 05-796-SLR (D.Del.).  Notably however, an out-of-state plaintiff invoking the protections of federal diversity jurisdiction while pursuing a state law claim against clergy for childhood sexual abuse is not 'phenomena' limited to Delaware.  Instead, this regularly occurs as plaintiffs invoke diversity protection in federal courts across the country.  See DeLonga v. Diocese of Sioux Falls, 329 F.Supp.2d 1092, 1093  (D.S.D. 2004) (noting the court's diversity

jurisdiction); <u>Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc.</u>, 839 F.Supp. 275, 278 (D.Vt. 1993) (same).  For example, in <u>DeLonga</u>, a Florida plaintiff invoked diversity protection in his childhood sexual abuse lawsuit against the Diocese of Sioux Falls, the Archdiocese of Milwaukee and various individual priests.

Similarly in our present case, plaintiff is also a Florida citizen who has invoked the Court's diversity jurisdiction to hear his lawsuit against several Delaware corporations and a Delaware citizen.  Given that plaintiff's limited experience with the State of Delaware entails being brutally raped and sexually abused as a child by defendants' priest and teacher more than 300 times, a known child abuser whose repugnant pedophile compulsions were so well documented that even his defendant employers openly admit they had actual knowledge of this long prior to his abhorrent sexual abuse of plaintiff, it is not surprising that plaintiff's faith in defendants' home state system may have waned in some small way and he now seeks the protections of the federal court in prosecuting his claim.  See <u>DiRuggiero</u>, 743 F.2d at 1018 ("diversity jurisdiction has roots in apprehensions of local prejudice toward foreign suitors in state courts.").  Plaintiff rightfully invokes this "higher aim and purpose" of diversity protection. <u>Dodge</u>, 59 U.S. at 354.

**F.  This Court Has Been Authorized by the U.S. Constitution, Congress and the Supreme Court to Hear State Law Claims Under Its Diversity Jurisdiction.**  As discussed above, the explicit text of the U.S. Constitution, the federal diversity statute and long settled Supreme Court precedent explicitly authorizes and requires this Court to hear the state law claims raised in this case by an out of state plaintiff invoking the protections of diversity jurisdiction.

Defendants concede that they have no legal authority which directly supports their claims.

9

Indeed, they even concede that the inapplicable cases they have cited are "factually distinguishable." (OB at 7). Plaintiff agrees. Unlike the cases cited by defendants, the Child Victim's Act is not a telecommunications law dependent upon a complex regulatory scheme, the responsibility of which has been legislatively vested in an administrative agency. Cf. MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086 (3d Cir. 1995) (cited in OB at 7). This is not a medical malpractice case where the relevant state law requires that an arbitration process be exhausted prior to the filing of a lawsuit. Cf. Edelson v. Soricelli, 610 F.2d 131 (3d Cir. 1979) (cited in OB at 7). This is not a case where the parties had previously contracted among themselves that the only review of an arbitration award would be in the Court of Common Pleas. Cf. Monte v. S. Del. County Auth., 321 F.2d 870 (3d Cir. 1963) (cited in OB at 7).

Instead, defendants are left with a vague, nebulous public policy argument, unsupported by any case citations, claiming that state courts are better suited to hear this case. (OB at 7). Yet this claim cannot overcome the explicit text of the Constitution and the diversity statute.[3]

First, as explained by both the Third Circuit and Supreme Court, "federal courts have 'virtually the unflagging obligation' to exercise the jurisdiction given them." Baltimore Bank, 583 F.2d at 111 (quoting Colorado River, 424 U.S. at 817). It has long been settled that diversity is not the disfavored step-child of federal jurisdictional law simply because it may require the federal courts to apply or interpret state law.

> Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, *we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law* or because the law is uncertain or difficult to determine.

Meredith, 320 U.S. at 236 (emphasis added). "[I]t has from the first been deemed to be the duty

---

[3]    Nor can it overcome, as discussed above, the fact that federal courts, including this one, regularly hear such cases.

of the federal courts, if their jurisdiction is properly invoked, *to decide questions of state law whenever necessary* to the rendition of a judgment." Id. at 234 (emphasis added).  "The mere fact that the district court, in the exercise of the jurisdiction which Congress has conferred upon it, is required to interpret state law is not in itself a sufficient reason for withholding relief." Markham, 326 U.S. at 495.  The defense claims to the contrary are without merit.

Second, the Child Victim's Act is by no means a "novel" piece of legislation.  The State of Delaware has previously enacted similar retroactive window legislation to help injured Vietnam War veterans exposed to Agent Orange after the statute of limitations had expired.  See 10 Del.C. § 8131.  The State of New York has done the same.  See N.Y. C.P.L.R. § 214-b (McKinney 2007).

Contrary to defense claims (OB at 6), at least five states have previously enacted retroactive child abuse legislation California, Minnesota, South Dakota, Vermont and Kansas. (See D.I. 28 at 12-14).[4]  Both California and Minnesota specifically enacted window legislation (id.), perhaps drawing on Delaware's positive experience with it in the Agent Orange context. Thus, legislation revising or abolishing the statute of limitations has been enacted both by Congress and by state legislatures, in numerous contexts, such as:

| | |
|---|---|
| •    Childhood Sexual Abuse | •    Wrongful Death |
| •    Agent Orange | •    Products Liability |
| •    Student Loans | •    Personal Injury |
| •    Civil Rights | •    Medical Malpractice |
| •    Toxic Torts | •    Paternity |
| •    Insurance | •    Securities |

---

[4]  In the interest of brevity, plaintiff cites to his recently filed Opening Brief in support of a separate motion, where these issues are addressed in greater detail.

(See D.I. 28 at 10-19). This retroactive legislation have been applied and upheld by numerous courts, including the following:

- U.S. Supreme Court (repeatedly).

- U.S. Courts of Appeals for the Fourth, Eighth, Ninth and Eleventh Circuits.

- U.S. District Courts sitting in South Dakota, Vermont, Pennsylvania, New York, Massachusetts, Illinois, Louisiana, Hawaii and Texas.

- State Courts in New York, California, Minnesota, South Dakota, Vermont, Kansas, Massachusetts, Connecticut, New Jersey, Michigan, Georgia, Rhode Island and Hawaii.

(Id. at 9-26). The nature of the Act is far from "novel" and courts are very experienced in applying these laws in litigation. The defense public policy claims are without merit.

## III.    PLAINTIFF DOES NOT OPPOSE THE DISMISSAL OF SALTARELLI AS A OFFICIAL CAPACITY DEFENDANT.

As the Complaint clearly states, defendant Saltarelli is being sued solely "in his official capacity as agent or alter ego of the Diocese for purposes of collecting a money judgment against the Diocese, should its assets be titled in his name." (Compl. ¶ 9). Since the filing of this case, incorporation documents have been produced by defendant Diocese in several pending state court matters, outlining the Diocese's corporate structure and the role that the reigning Bishop plays in corporate governance. Review of that documentation satisfies plaintiff that defendant Diocese is not organized so that assets are titled in his name.

Accordingly, plaintiff does not oppose dismissal of Saltarelli as an official capacity defendant in this case.

## CONCLUSION

For the aforementioned reasons, diversity jurisdiction is proper in this case. The defense motion should be denied.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**RAEANN WARNER, ESQ. (#4931)**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
RW@NeubergerLaw.com

**JACOBS & CRUMPLAR, P.A.**

/s/ Robert Jacobs
**ROBERT JACOBS, ESQ. (#244)**
**THOMAS C. CRUMPLAR, ESQ. (#942)**
Two East Seventh Street, Suite 400
Wilmington, DE 19801
(302) 656-5445
Bob@JandCLaw.com
Dated: October 19, 2007          Tom@JandCLaw.com

13

## **CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

October 19, 2007, I electronically filed this Pleading with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

>Anthony G. Flynn, Esquire
>Young Conaway Stargatt & Taylor LLP
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, DE 19899-0391
>aflynn@ycst.com
>
>Mark Reardon, Esquire
>Elzufon Austin Reardon Tarlov & Mondell
>300 Delaware Avenue, Suite 1700
>P.O. Box 1630
>Wilmington, DE 19899
>mreardon@elzufon.com
>
>Stephen P. Casarino, Esquire
>Casarino Christman & Shalk, P.A.
>800 North King Street, Suite 200
>P.O. Box 1276
>Wilmington, DE 19899
>scasarino@casarino.com

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

/ Quill, Robert / Pleadings / Quill - Motion to Dismiss AB.final

14