# THE NEUBERGER FIRM
## ATTORNEYS AND COUNSELLORS AT LAW

TWO EAST SEVENTH STREET
SUITE 302
WILMINGTON, DELAWARE 19801-3707

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

THOMAS S. NEUBERGER, ESQUIRE
STEPHEN J. NEUBERGER, ESQUIRE
RAEANN WARNER, ESQUIRE
CHERYL A. HERTZOG, ESQUIRE*
        *(Licensed in PA and NJ only)

PHONE: (302) 655-0582
FAX: (302) 655-9329

November 13, 2007

**VIA HAND DELIVERY**

The Honorable Sue L. Robinson
Lock Box 31
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

RE:    **Quill v. Catholic Diocese of Wilmington, et al., C.A. No. 07-435 (SLR)**
        **Rule 16 teleconference at 8:30 am on Wednesday, November 14, 2007**

Dear Judge Robinson:

        The parties have conferred and attached is their proposed scheduling order with their disagreements noted and three attachments.  Mr. Flynn has indicated he will be filing a separate letter.

Respectfully yours,

/s/ Thomas S. Neuberger

Attorney for Plaintiff

cc:    Anthony G. Flynn, Esquire (via Hand Delivery)
        Mark L. Reardon, Esquire (via Hand Delivery)
        Stephen  P. Casarino, Esquire (via Hand Delivery)
        Thomas C. Crumplar, Esquire (via Hand Delivery)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ROBERT QUILL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A.No. 07-435-SLR** |
| | : | |
| **CATHOLIC DIOCESE OF WILMINGTON,** | : | |
| **INC., a Delaware corporation; ST.** | : | |
| **ELIZABETH'S CATHOLIC CHURCH, a** | : | |
| **Delaware corporation;  Rev. FRANCIS G.** | : | |
| **DELUCA, individually and in his official** | : | |
| **capacity; and Rev. MICHAEL A.** | : | **Jury Trial Demanded** |
| **SALTARELLI, in his official capacity,** | : | |
| | : | |
| **Defendants.** | : | |

## PROPOSED RULE 16 SCHEDULING ORDER

At Wilmington this _____ day of 2007, the parties having satisfied their obligations under

Fed.R.Civ.P. 26(f), and the court having conducted a pretrial scheduling conference pursuant to

Fed.R.Civ.P. 16 and D. Del. LR 16.2(a) and (b).

IT IS ORDERED that:

**1. Pre-Discovery Disclosures.** The parties have exchanged the information required by

Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

**2. Discovery.**

**(a)** Discovery will be needed on the following subjects:

**Plaintiff's Statement:**

1. Internal operations and policies.

2. Procedures for retaining records and information.

3.  Procedures for handling alleged misconduct by Priests and teachers.

4.  All internal processes and prerequisites for ordaining, training, supervising and retaining priests.

5.  All internal processes and prerequisites for hiring, training, supervising, and retaining teachers.

5.  Internal Organizational Structures and Hierarchies.

6.  Personnel and Medical Files of Francis G. DeLuca.

7.  Notice or Knowledge of Francis G. DeLuca's misconduct.

8.  Breach of Duties to Plaintiff.

9.  Records, actions, or decisions of the Defendants concerning priest misconduct.

10.  Contractual or quasi-contractual duties between defendants and plaintiffs' parents.

11.  Insurance Policies and Coverage.

12.  Elements of compensatory damages.

13.  Elements of punitive damages.

**Defendant's Statement:**

Statement of Defendant Catholic Diocese of Wilmington, Inc.:

1.  Plaintiff's background, and his personal, educational, employment and health history.

2.  Plaintiff's military record.

3.  Plaintiff's medical records and current course(s) of treatment.

4.  Plaintiff's contacts with Fr. DeLuca, including witnesses to such contacts.

5.  The alleged contacts of plaintiff's family with Fr. DeLuca, including witnesses to such contacts.

6.  The  factual basis for plaintiff's testimony to the Delaware General Assembly in support of the Child Victim's Act, including, without limitation, the purported civil suits filed against Fr. DeLuca in 1958 in Indiana and in Eastern Maryland in 1960.

7.  The factual basis for the purported agency relationship between Fr. DeLuca and the Diocese.

8.  The factual basis for the purported fiduciary relationships between and among plaintiff and his parents, Fr. DeLuca, the Diocese and Defendant St. Elizabeth's Catholic Church ("St. Elizabeth's").

9.  The alleged foreknowledge of St. Elizabeth's of the prior misconduct of Fr. DeLuca.

10.  Actions taken by St. Elizabeth's to supervise Fr. DeLuca.

11.  The alleged memory repression or traumatic amnesia suffered by plaintiff.

12.  Plaintiff's injuries, and his alleged pecuniary and non-pecuniary damages.

Statement of Defendant St. Elizabeth's Catholic Church:

1.  St. Elizabeth's adopts the Areas of Discovery enumerated by Defendant

Catholic Diocese of Wilmington, Inc.

      2.  The alleged foreknowledge of the Diocese of the prior misconduct of Fr. DeLuca.

      3.  Actions taken by the Diocese to supervise and place Fr. DeLuca.

      4.  The purported agency relationship between Fr. DeLuca and St. Elizabeth's

      5.  The extent of plaintiff's injuries and the proximate cause, if any, from the actions of St. Elizabeth's.

    **(b)** All discovery shall be commenced in time to be completed by _____.

    **Plaintiff's Statement:**  December 31, 2007 for all fact and expert discovery.

    **Defendants' Statement:**  September 1, 2008, and all expert discovery shall be commenced in time to be completed by November 15, 2008.

    **Plaintiff's Rationale**:

[Redacted]

    **( c)**  Maximum of 25 interrogatories by each party to any other party.

    **(d)** Maximum of 50  requests for admission by each party to any other party.

    **(e)** Maximum of 15 depositions by plaintiff and 15 for all the defendants, except experts.

    **(f)** With the exception of the parties, each deposition will be limited to a maximum of  7 hours unless extended by agreement of parties.

4

(g) Reports from retained experts under Rule 26(a)(2) on issues for which any party has the burden of proof due by _____ Rebuttal expert reports due by _____.

**Plaintiff's statement:** January 1, 2008 and January 15, 2008 for rebuttal.

**Defendants' statement:** October 1, 2008 and November 1, 2008 for rebuttal.

**(h)(1) Discovery Disputes.** Any discovery dispute shall be submitted to the court pursuant to Fed. R. Civ. P. 37. During the course of discovery, each party is limited to **two (2)** Rule 37 motions. The court shall make itself available, however, to resolve through a telephone conference, disputes that arise during the course of a deposition and disputes related to entry of a protective order.

**(h)(2).** [Redacted]

_____**3. Joinder of other Parties, Amendment of Pleadings, and Class Certification.** All motions to join other parties, amend the pleadings, and certify a class action shall be filed on or before _____.

**Plaintiff's statement:** December 1, 2007

**Defendants' statement:** February 1, 2008

**4. Settlement Conference.** Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

**5. Pending Motions**.

_____**Plaintiff's statement:** There are presently four sets of motions being briefed before the Court.

**(1) Plaintiff's Motion for Summary Judgment or Alternatively Judgment on the Pleadings.** This is the first case filed under the Child Victims Act of 2007. The defendants

are openly defending under a claim that the Act is unconstitutional as written. (See D.I. 23 at ¶¶ 201-202; D.I. 19 at ¶ 201). Judicial economy and efficiency dictate that this issue be addressed at the very beginning of this case. If the Act violates the federal constitution, there is no need for extensive discovery, other briefing and expense or for this case to clutter the federal court docket, nor is there any reason for the dozens of other cases which will otherwise be filed under the Act in state court. Thus plaintiffs filed their opening brief on this issue. (D. I. 28 - attached at Tab C).

The defendants have defaulted on filing an Answering Brief, which was due on October 30, 2007. The Court previously specifically declined to stay briefing on this issue. (See D.I. 39). The issue is now ripe for decision.

**(2) Defendants' Motion to Dismiss.** The defendants also contend without any precedent that there is no jurisdiction to bring this diversity action. Both their brief on this issue and plaintiff's answer have been filed. (D.I. 22, 30). At the request of the defense, the court stayed the filing of the defense reply brief on this issue. (D.I. 39).

**(3) Plaintiff's Motions for Default Judgment and Entry of Default.** Plaintiff has moved for a default judgment and entry of default against defendant DeLuca. (D.I. 31-32). The Court previously declined to stay briefing on this issue. (See D.I. 39).

**(4). Defendants' Motion to Strike.** Defendants' moved that the Court strike plaintiff's summary judgment brief discussed above. (D.I. 34). The Court has stayed briefing on this issue. (D.I. 39).

**6. Summary Judgment Motions.** All <u>other</u> summary judgment motions shall be served and filed with an opening brief on or before _____. Briefing shall be pursuant to

6

D. Del. LR 7.1.2. No summary judgment motion may be filed more than **ten (10)** days from the above date without leave of the court.

> **Plaintiff's statement:** January 15, 2008

> **Defendants' statement:** October 1, 2008

**7. Applications by Motion.** Any application to the court shall be by written motion filed with the clerk. Unless otherwise requested by the court, counsel shall not deliver copies of papers or correspondence to chambers. **Any nondispositive motion shall contain the statement required by D.Del. LR 7.1.1.**

**8. Motions in Limine.** All motions in limine shall be filed on or before **[two weeks before pretrial conference]**. All responses to said motions shall be filed on or before **[one week before pretrial conference]**.

Any Daubert motions shall be filed on or before _____.

**9. Pretrial Conference.** A pretrial conference will be held on _____ at _____m. in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

**10. Trial.** This matter is scheduled for a ____ day jury trial commencing on _____ in courtroom 6B, sixth floor, Federal Building, 844 King Street, Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of _____ hours in which to present their respective cases.

_____ **Plaintiff's statement:** As stated in Tab A plaintiff is willing to try his case in an abbreviated fashion in five trial days and not the normal ten [Redacted]. 27.5 trial hours would

7

be divided, half for plaintiff and half for defendants.

      **<u>Defendants' statement</u>:**  Defendants want a 10 day jury trial.


_____
UNITED STATES DISTRICT JUDGE




Quill, Robert / Docket / Court Orders & Rulings / Proposed Rule 16 Scheduling Order. Final

# Tab A

[Redacted]

# Tab B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT QUILL,                              :
                                           :
    Plaintiff,                         :
                                           :
v.                                         :    C.A.No. 07-435-SLR
                                           :
CATHOLIC DIOCESE OF WILMINGTON,            :
INC., a Delaware corporation; ST.          :
ELIZABETH'S CATHOLIC CHURCH, a             :
Delaware corporation;  Rev. FRANCIS G.     :
DELUCA, individually and in his official   :
capacity; and Rev. MICHAEL A.              :
SALTARELLI, in his official capacity,      :
                                           :
    Defendants.                        :


## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS
## FOR AN EXTENSION OF TIME TO PLEAD

    **A.  Introduction.**  Over the last four years, the court dockets in Delaware have revealed

the hallmark defense strategy in priest/pedophile cases such as this - unnecessary and prolonged

delay.  Plaintiff respectfully requests that the Court take control of this case at this early stage to

avoid such delay and to ensure "the just, speedy, and inexpensive determination" of this action.

Fed.R.Civ.P. 1.

    Attached at Tab A is the correspondence between the parties on the present motions,

which defendants did not attach to their motions.  It reveals that the defense wishes to file a

motion to dismiss challenging the constitutionality as written of the recently enacted Child

Victims Act of 2007.  The defense is playing for more time to write its opening brief, to the

obvious prejudice of plaintiff who wishes to go into immediate briefing under the Local Rules, as

is his right.  In the meantime defendant DeLuca, who is 77 or 78 years old, may be lost as a fact

witness due to advanced age and delay.  Plaintiff wishes to enter into a quick scheduling order to preserve the evidentiary record but the defense has refused to face the issue of quick discovery. Instead, unless the Court takes control of its docket in this case, it will be delay, delay and delay to the prejudice of plaintiff.

**B.  The Standard Defense Tactic of Unnecessary and Prolonged Delay Has Already Been Revealed and Plaintiff Will Be Prejudiced By These Efforts.**  As defense efforts in the sister cases have revealed, initial requests for short, one week extensions of time soon morph into longer requests.  That has already happened in this case where all the defendants were given extensions and also received added time when the Complaint was amended as of right in immaterial respects.  So two extensions already have in effect been granted.  In McClure v. Catholic Diocese of Wilmington, Inc., et al., C.A.No. 06C-12-235-CLS (Del.Super.), eight months have passed and still no Answer has been filed.  But at least the Superior Court allowed discovery to begin.  In Eden v. Oblates of St. Francis DeSales, et al., C.A.No. 04C-01-069-CLS (Del.Super.), it took defendants 3 ½ years to file an Answer after protracted briefing on a motion to dismiss.  The just filed Superior Court case of Whitwell v. Archmere Academy, Inc., C.A.No. 07C-08-066-RBY (Del.Super.), is quickly going down the same path.[1]

Plaintiff seeks to avoid such long, unnecessary delays in this case, to advance it on the Court's docket, and to preserve the testimony of an elderly defendant and other old defense witnesses.

Once discovery actually begins, the same delaying strategy has been front and center.  For

---

[1]  Defendants in this case are represented by the same defense counsel who represent the defendants in these sister cases.  Plaintiff's counsel are the same as well.

2

example, in the nearly four year old pending <u>Eden</u> case, after seven months of eleventh hour

defense motions for protective orders to stay long noticed depositions earlier this year, a key

party defendant fleeing the country and numerous lengthy court hearings to address these matters,

the Superior Court was finally forced to order depositions to be held under penalty of contempt.

Once the first deposition finally occurred last month, the party defendant proceeded to abusively

invoke the Fifth Amendment about 198 times, which has required even more court intervention.

If the Court quickly takes control and manages this case, long unnecessary delays can be

avoided, the constitutional issue can be briefed forthwith and decided and discovery can

simultaneously begin to preserve the record concerning elderly witnesses.

Similarly, over two years of efforts to depose another key party defendant in the <u>Eden</u>

case were consistently met with defense roadblocks and protective order motions which abused

the discovery process.  In the interim, as the Superior Court sought to wade through the

quagmire, this witness was lost to mental incompetency and a retired Delaware Supreme Court

Justice was appointed to be his guardian *ad litem*.  That witness has been forever lost as a result

of defendants' delaying efforts.  That cannot be allowed to happen with regard to defendant

DeLuca and others in the present case.

Given defendant DeLuca's advanced age and well documented troubles with the criminal

authorities in the State of New York, plaintiff reasonably fears that this key witness also may be

lost to stress and mental incompetency resulting from his advanced years.  The same concern

holds true for other defense witnesses who were in office in the 1960s when plaintiff was abused

at DeLuca's Church in Wilmington.  Defendants in the sister cases have consistently claimed that

they suffer from a prejudicial delay in defending these cases because of the passage of time, but

3

whenever a plaintiff seeks to preserve the memories and testimony of key living witnesses, they are met with defense efforts for even more delay. Defendants cannot have it both ways. Simultaneous briefing on any motion to dismiss together with a six month discovery plan will avoid these problems.

   **C. The Factual Issues In This Case Are No Surprise.** When forced to file an Answer in these cases in Delaware, the defendants basically deny everything. The defendants have not represented that they need more time because they will actually admit some asserted factual issues. As is normal they can be expected to file denials to the claims asserted.

   Defendants also concede that they have had actual notice of the claims in this case since it was filed and served upon both they and their counsel on July 12, 2007. (Diocese Motion at 1; St. Elizabeth's Motion at 2). What they fail to mention is that they also have had specific notice of plaintiff Robert Quill's actual claims since at least March 21, 2007 when he first testified at an open public legislative hearing before the Delaware General Assembly in excruciating and painful detail about the abuse he suffered. Both current defense counsel also testified and listened to his moving testimony. Plaintiff's testimony even was the subject of a front page Local story in the News Journal the next day.[2]

   Plaintiff subsequently testified at several other legislative hearings concerning what was then known as SB29 - The Child Victim's Act, presently codified, following unanimous legislative and gubernatorial approval, at 10 <u>Del.C.</u> § 8145. Present defense counsel testified at the same hearings on behalf of their Roman Catholic institutional clients. Plaintiff and his claims

---

   [2] <u>See</u> http://64.233.169.104/search?q=cache:eNJ1Qb9smhUJ:www.delawareonline.com%20/apps/pbcs.dll/article%3FAID%3D2007703220355+delawareonline.com+march+22,+2007.

also have been the subject of discussion between counsel for the parties in this case, including an early July conversation with counsel for St. Elizabeth's where he inquired when plaintiff would be filing his lawsuit under the new legislation.  (Tab A at 7).

Plaintiff's factual allegations are no surprise to defendants and they have had more than enough opportunity to prepare a response.

**D.  The Legal Issues In This Case Are No Surprise.**  In the same way, the legal issues in this case are neither surprising nor novel.  The constitutional issues raised in this case have been in the forefront of discussions since SB29 was introduced in the General Assembly on January 25, 2007,[3] and defendants have been on notice since that time.  Defense counsel testified at several public legislative hearings earlier this year concerning the constitutionality of the retroactive civil provisions of SB29.  Similarly, for at least 120 years, the U.S. Supreme Court also has upheld the constitutionality of retroactive civil legislation such as this.  See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 229 (1995); International Union of Electrical, Radio and Machine Workers, AFL-CIO Local 790 v. Robbins, 429 U.S. 229, 243-44 (1976); Chase Securities Corp. v. Donaldson, 325 U.S. 304, 315 (1945); Campbell v. Holt, 115 U.S. 620, 627-28 (1885).  The defense motions are but a poorly disguised effort to gain additional time to work on their motion to dismiss legal briefs, challenging the constitutionality of SB29.

If this was not their intent, in the communications back and forth before the present motion, the defense was repeatedly asked to stipulate that there would be no constitutional briefing raised instead of filing an Answer.  They would not so agree.  And so their present claims either miss the point or ring hollow.

---

[3]  See http://www.legis.state.de.us/lis/lis144.nsf/vwLegislation/SB+29?Opendocument.

This case does not raise some extraordinary issue for which defendants are somehow unprepared. Defendants have had eight long months to write their legal briefs on this issue. If defendants wish to challenge the constitutionality of the statute, that time is now.

**E. This Case is Ripe for a Discovery Plan.** The record on DeLuca and other Church witnesses from the 1960s needs to be preserved. As revealed by plaintiff's recent e-mail to defense counsel attaching a proposed Rule 16 Scheduling Order, this case is ripe for discovery. (Tab A at 14-21). Discovery should not be complicated and plaintiff proposed a six month discovery period, with a cut-off of February 28, 2008. (Tab A at 19). Adoption of such a discovery plan will allow for "the just, speedy, and inexpensive determination" of this action as required by Fed.R.Civ.P. 1.

If the defense wants to brief the constitutionality of the new Act as written that can be done together with simultaneous discovery.

The Court should enter an Order in the form attached.

Plaintiff waives an answering brief in support of this opposion.


Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

6

**ROBERT JACOBS, ESQUIRE (#244)**
**THOMAS C. CRUMPLAR, ESQUIRE (#942)**
**JACOBS & CRUMPLAR, P.A.**
Two East Seventh Street, Suite 400
Wilmington, DE 19801
(302) 656-5445
Bob@JandCLaw.com
Tom@JandCLaw.com

Dated: August 28, 2007          Attorneys for Plaintiff

7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ROBERT QUILL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **C.A.No. 07-435-SLR** |
| | : | |
| **CATHOLIC DIOCESE OF WILMINGTON,** | : | |
| **INC., a Delaware corporation; ST.** | : | |
| **ELIZABETH'S CATHOLIC CHURCH, a** | : | |
| **Delaware corporation;  Rev. FRANCIS G.** | : | |
| **DELUCA, individually and in his official** | : | |
| **capacity; and Rev. MICHAEL A.** | : | |
| **SALTARELLI, in his official capacity,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

Upon consideration of Defendants' Motions for An Extension of Time to Answer or

Otherwise Respond to Plaintiff's First Amended Complaint (D.I. 12, 14), and any opposition

thereto, this _____ day of _____, 2007, it is hereby ORDERED that:

1.  The defendants' motions for extensions of time are denied.

2.  The defendants shall file Answers in three (3) calendar days.

3.  If the defendants wish to file any motion to dismiss to contest the constitutionality of

S.B. 29 they shall file their opening brief at the time of the filing of their Answer, and briefing

shall proceed in accord with the Local Rules.

4.  Discovery shall begin immediately and the parties shall submit a six month discovery

plan to the Court in three (3) calendar days.

_____
**U.S.D.J.**

8

# Tab A

## Stephen J. Neuberger

**From:** Reardon, Mark [mreardon@elzufon.com]

**Sent:** Friday, August 24, 2007 11:50 AM

**To:** Thomas S. Neuberger; Stephen J. Neuberger

**Cc:** Tom Crumplar; Robert Jacobs

**Subject:** Quill

Tom and Steve,

I write as the recently retained counsel for defendant St. Elizabeth's. By my calculation, St. Elizabeth's answer is due next Tuesday. I am writing to request an extension to September 28, 2007. Apart from my recent retention, the basis for the extension is my near total preoccupation with an accounting malpractice trial looming in the Superior Court (Judge Scott). Trial is scheduled to conclude on September 21.

I have met with Fr. Dillingham at St. Elizabeth's to begin the fact finding process, but I regret that I will not be in a position to respond to the complaint within the 20 day allocation. Therefore, your consent to this extension would be very much appreciated.

Thank you for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

## Stephen J. Neuberger

**From:**    Stephen J. Neuberger
**Sent:**    Friday, August 24, 2007 4:23 PM
**To:**    'Reardon, Mark'; Thomas S. Neuberger
**Cc:**    Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Mark,

Following up on your e-mail.

This case was originally filed on July 12th and your client was served the same day.

We previously agreed to a stipulation, extending the time for your client to respond to the initial complaint until August 8th.  (D.I. 10).

On Monday, August 6th, I spoke to Tony Flynn by telephone who indicated that you had been retained to represent St. Elizabeth's and would be taking over that representation from him.

Another extension was then requested by defendants.

To address defense concerns for more time, plaintiff volunteered to file a First Amended Complaint to make several minor editorial changes and add one additional count.  No substantive changes were made.  The filing of this First Amended Complaint would give defendants the additional time to respond that they had requested. This First Amended Complaint was filed on Wednesday, August 8th.  Service was on performed electronically on Tony via CM/ECF, although I also e-mailed you a courtesy copy of the complaint.

You also represent several Roman Catholic institutional defendants in a number of these priest/pedophile cases that my office has filed in state court.  Each and every one of those cases has been plagued by extensive delays in defendants filing Answers or responsive pleadings.

For example, in McClure, after approximately 6 months of requests for extensions that were granted, my office had to petition the Superior Court for additional time to perfect service in case that defendant intended to challenge service after the plethora of extensions that were granted.  Defendants then filed a short 5 page motion to dismiss, which could have easily been filed 6 months prior.  That motion was subsequently withdrawn.  It has been 8 long months since that was was filed but still no Answer.  Then, we are all familiar with the tortured history of the Eden case - with 3 1/2 years before an Answer was filed.  As the e-mail traffic between our offices from earlier this week reveals, it appears the Whitwell state court is going down the same path.

I wish to avoid this long pattern of delay.  Thus, I am very concerned with your request.  We are in federal court where cases move expeditiously and without delay.  The system works differently here than it does in state court.

In light of this prior history, the fact that your client has had actual notice of and was served with this lawsuit on July 12th, more than six weeks ago, and that extensions have already been granted, I need additional information in considering your request.

Does your client intend to join the issues and file an Answer if Sept. 28th extension is given?  Or does your client intend to file a motion to dismiss and attack the constitutionality of SB29, the Child Victim's Act?  If so, then this appears to be yet another unnecessary delay.

-Steve

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Friday, August 24, 2007 11:50 AM
**To:** Thomas S. Neuberger; Stephen J. Neuberger

**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** Quill

Tom and Steve,

   I write as the recently retained counsel for defendant St. Elizabeth's.  By my calculation, St. Elizabeth's answer is due next Tuesday. I am writing to request an extension to September 28, 2007. Apart from my recent retention, the basis for the extension is my near total preoccupation with an accounting malpractice trial looming in the Superior Court (Judge Scott).  Trial is scheduled to conclude on September 21.

   I have met with Fr. Dillingham at St. Elizabeth's to begin the fact finding process, but I regret that I will not be in a position to respond to the complaint within the 20 day allocation. Therefore, your consent to this extension would be very much appreciated.

   Thank you for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

## Stephen J. Neuberger

**From:**     Reardon, Mark [mreardon@elzufon.com]
**Sent:**     Monday, August 27, 2007 10:53 AM
**To:**       Stephen J. Neuberger; Thomas S. Neuberger
**Cc:**       Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Steve,

I left a message at your office, but understand you may be out for at least the morning.

I am hopeful that we might speak today about my requested extension. I want to convey that my request is absolutely **not** tied to any plan to delay. Rather, my request is solely based on the facts that I was retained by St. Elizabeth's in early-August and since then have initiated only preliminary interviews, document searches and insurance evaluations.  Apart from that, my staff and I have been occupied full-time on finalizing our preparation for a looming trial in the Superior Court. That trial is scheduled to conclude on September 21, thus my requested extension for the time to answer the complaint in Quill is Sept 28.

With respect to your specific questions about St. Elizabeth's intended response to the complaint, I can tell you that our focus is on a plan to draft an answer to the complaint. Beyond that, I have not had sufficient dialogue with our client to consider any alternate strategies.

I look forward to hearing from you in hopes that a scheduling stipulation can be reached in lieu of a motion for an extension.

Thanks for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

        -----Original Message-----
        **From:** Stephen J. Neuberger [mailto:SJN@neubergerlaw.com]
        **Sent:** Friday, August 24, 2007 4:23 PM
        **To:** Reardon, Mark; Thomas S. Neuberger
        **Cc:** Tom Crumplar; Robert Jacobs
        **Subject:** RE: Quill

        Mark,

        Following up on your e-mail.

        This case was originally filed on July 12th and your client was served the same day.

        We previously agreed to a stipulation, extending the time for your client to respond to the initial complaint until August 8th.  (D.I. 10).

8/27/2007

On Monday, August 6th, I spoke to Tony Flynn by telephone who indicated that you had been retained to represent St. Elizabeth's and would be taking over that representation from him.

Another extension was then requested by defendants.

To address defense concerns for more time, plaintiff volunteered to file a First Amended Complaint to make several minor editorial changes and add one additional count. No substantive changes were made. The filing of this First Amended Complaint would give defendants the additional time to respond that they had requested. This First Amended Complaint was filed on Wednesday, August 8th. Service was on performed electronically on Tony via CM/ECF, although I also e-mailed you a courtesy copy of the complaint.

You also represent several Roman Catholic institutional defendants in a number of these priest/pedophile cases that my office has filed in state court. Each and every one of those cases has been plagued by extensive delays in defendants filing Answers or responsive pleadings.

For example, in McClure, after approximately 6 months of requests for extensions that were granted, my office had to petition the Superior Court for additional time to perfect service in case that defendant intended to challenge service after the plethora of extensions that were granted. Defendants then filed a short 5 page motion to dismiss, which could have easily been filed 6 months prior. That motion was subsequently withdrawn. It has been 8 long months since that was was filed but still no Answer. Then, we are all familiar with the tortured history of the Eden case - with 3 1/2 years before an Answer was filed. As the e-mail traffic between our offices from earlier this week reveals, it appears the Whitwell state court is going down the same path.

I wish to avoid this long pattern of delay. Thus, I am very concerned with your request. We are in federal court where cases move expeditiously and without delay. The system works differently here than it does in state court.

In light of this prior history, the fact that your client has had actual notice of and was served with this lawsuit on July 12th, more than six weeks ago, and that extensions have already been granted, I need additional information in considering your request.

Does your client intend to join the issues and file an Answer if Sept. 28th extension is given? Or does your client intend to file a motion to dismiss and attack the constitutionality of SB29, the Child Victim's Act? If so, then this appears to be yet another unnecessary delay.

-Steve

---

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Friday, August 24, 2007 11:50 AM
**To:** Thomas S. Neuberger; Stephen J. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** Quill

Tom and Steve,

I write as the recently retained counsel for defendant St. Elizabeth's. By my calculation, St. Elizabeth's answer is due next Tuesday. I am writing to request an extension to September 28, 2007. Apart from my recent retention, the basis for the extension is my near total preoccupation with an accounting malpractice trial looming in the Superior Court (Judge Scott). Trial is scheduled to conclude on September 21.

I have met with Fr. Dillingham at St. Elizabeth's to begin the fact finding process, but I regret that I will not be in a position to respond to the complaint within the 20 day allocation. Therefore, your consent to this extension would be very much appreciated.

Thank you for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

## Stephen J. Neuberger

**From:**    Stephen J. Neuberger
**Sent:**    Monday, August 27, 2007 1:04 PM
**To:**      'Reardon, Mark'
**Cc:**      Tom Crumplar; Robert Jacobs; Thomas S. Neuberger
**Subject:** RE: Quill

Mark,

Based on your e-mail response, it appears this case is heading down the same long path of delay that has plagued all of its predecessors.  I do not want to have yet another 6 month - 3 1/2 year delay before an Answer is filed by your client.  We have danced this same dance in McClure, Eden and are currently dancing it again in state court with Whitwell.  We should not have to do this yet again in federal court in Quill.

You avoided my question about whether your client intends to file an Answer or challenge the constitutionality of SB29.

The constitutional issue has come as no surprise to anyone and instead has been front and center since February 2007.  You lobbied against the bill, both in your personal and representative capacities on behalf of your Catholic institutional clients and I was told by those in attendance that you addressed constitutional issues during one of several occasions when you gave legislative testimony about SB29.  If you intend to challenge the constitutionality, the time is now.  This legal issue is no surprise.

This case also is no factual surprise.  Plaintiff Quill was front and center on these issues since the hearings in the Senate.  He testified before the General Assembly as many times as you did and you have even told me how powerful and moving his testimony was to listen to.  During an early July telephone call to me inquiring about when additional lawsuits would be filed against Salesianum and the Oblates of St. Francis DeSales, you even joked about the fact that my client Robert Quill must be happy the bill passed because now he can bring a lawsuit.

Accordingly, because an extension of time has already been granted and in light of the long unfortunate history of delay that all of these cases have experienced, plaintiff must deny St. Elizabeth's request for another extension of time to file an Answer or responsive pleading.

-Steve

---

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Monday, August 27, 2007 10:53 AM
**To:** Stephen J. Neuberger; Thomas S. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Steve,

I left a message at your office, but understand you may be out for at least the morning.

I am hopeful that we might speak today about my requested extension. I want to convey that my request is absolutely **not** tied to any plan to delay. Rather, my request is solely based on the facts that I was retained by St. Elizabeth's in early-August and since then have initiated only preliminary interviews, document searches and insurance evaluations.  Apart from that, my staff and I have been occupied full-time on finalizing our preparation for a looming trial in the Superior Court. That trial is scheduled to conclude on September 21, thus my requested extension for the time to answer the complaint in Quill is Sept 28.

With respect to your specific questions about St. Elizabeth's intended response to the complaint, I can tell you that our focus is on a plan to draft an answer to the complaint. Beyond that, I have not had sufficient dialogue with our

8/27/2007

client to consider any alternate strategies.

I look forward to hearing from you in hopes that a scheduling stipulation can be reached in lieu of a motion for an extension.

Thanks for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

     -----Original Message-----
**From:** Stephen J. Neuberger [mailto:SJN@neubergerlaw.com]
**Sent:** Friday, August 24, 2007 4:23 PM
**To:** Reardon, Mark; Thomas S. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Mark,

Following up on your e-mail.

This case was originally filed on July 12th and your client was served the same day.

We previously agreed to a stipulation, extending the time for your client to respond to the initial complaint until August 8th. (D.I. 10).

On Monday, August 6th, I spoke to Tony Flynn by telephone who indicated that you had been retained to represent St. Elizabeth's and would be taking over that representation from him.

Another extension was then requested by defendants.

To address defense concerns for more time, plaintiff volunteered to file a First Amended Complaint to make several minor editorial changes and add one additional count. No substantive changes were made. The filing of this First Amended Complaint would give defendants the additional time to respond that they had requested.   This First Amended Complaint was filed on Wednesday, August 8th.  Service was on performed electronically on Tony via CM/ECF, although I also e-mailed you a courtesy copy of the complaint.

You also represent several Roman Catholic institutional defendants in a number of these priest/pedophile cases that my office has filed in state court.  Each and every one of those cases has been plagued by extensive delays in defendants filing Answers or responsive pleadings.

For example, in McClure, after approximately 6 months of requests for extensions that were granted, my office had to petition the Superior Court for additional time to perfect service in case that defendant intended to challenge service after the plethora of extensions that were granted.  Defendants then filed a short 5 page motion to dismiss, which could have easily been filed 6 months prior.  That motion was subsequently withdrawn.  It has been 8 long months since that was was filed but still no Answer.  Then, we are all familiar with the tortured history of the Eden case - with 3 1/2 years before an Answer was filed.  As the e-mail traffic between our offices from earlier this week reveals, it appears the Whitwell state court is going down the same path.

I wish to avoid this long pattern of delay.  Thus, I am very concerned with your request.  We are in federal

court where cases move expeditiously and without delay.  The system works differently here than it does in state court.

In light of this prior history, the fact that your client has had actual notice of and was served with this lawsuit on July 12th, more than six weeks ago, and that extensions have already been granted, I need additional information in considering your request.

Does your client intend to join the issues and file an Answer if Sept. 28th extension is given?  Or does your client intend to file a motion to dismiss and attack the constitutionality of SB29, the Child Victim's Act?  If so, then this appears to be yet another unnecessary delay.

-Steve

---

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Friday, August 24, 2007 11:50 AM
**To:** Thomas S. Neuberger; Stephen J. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** Quill

Tom and Steve,

   I write as the recently retained counsel for defendant St. Elizabeth's.  By my calculation, St. Elizabeth's answer is due next Tuesday. I am writing to request an extension to September 28, 2007. Apart from my recent retention, the basis for the extension is my near total preoccupation with an accounting malpractice trial looming in the Superior Court (Judge Scott).  Trial is scheduled to conclude on September 21.

   I have met with Fr. Dillingham at St. Elizabeth's to begin the fact finding process, but I regret that I will not be in a position to respond to the complaint within the 20 day allocation. Therefore, your consent to this extension would be very much appreciated.

   Thank you for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

8/27/2007

## Stephen J. Neuberger

**From:**    Reardon, Mark [mreardon@elzufon.com]
**Sent:**    Monday, August 27, 2007 1:16 PM
**To:**      Stephen J. Neuberger
**Cc:**      Tom Crumplar; Robert Jacobs; Thomas S. Neuberger
**Subject:** RE: Quill

Steve,

Got your response. We'll file a motion noting your objection.

Again, the only basis for my requested extension is my personal trial and discovery calendar that has me
substantially detained for the next 3-4 weeks.  I was retained by St. Elizabeth's less 3 weeks ago, and for 2 of
those weeks either Fr. Dillingham or myself were away.  I hope you understood that my request was not tactical,
only personal and practical.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

      -----Original Message-----
      **From:** Stephen J. Neuberger [mailto:SJN@neubergerlaw.com]
      **Sent:** Monday, August 27, 2007 1:04 PM
      **To:** Reardon, Mark
      **Cc:** Tom Crumplar; Robert Jacobs; Thomas S. Neuberger
      **Subject:** RE: Quill

      Mark,

      Based on your e-mail response, it appears this case is heading down the same long path of delay that has
      plagued all of its predecessors.  I do not want to have yet another 6 month - 3 1/2 year delay before an
      Answer is filed by your client.  We have danced this same dance in McClure, Eden and are currently
      dancing it again in state court with Whitwell.  We should not have to do this yet again in federal court in
      Quill.

      You avoided my question about whether your client intends to file an Answer or challenge the
      constitutionality of SB29.

      The constitutional issue has come as no surprise to anyone and instead has been front and center since
      February 2007.  You lobbied against the bill, both in your personal and representative capacities on behalf
      of your Catholic institutional clients and I was told by those in attendance that you addressed constitutional
      issues during one of several occasions when you gave legislative testimony about SB29.  If you intend to
      challenge the constitutionality, the time is now.  This legal issue is no surprise.

      This case also is no factual surprise.  Plaintiff Quill was front and center on these issues since the hearings
      in the Senate.  He testified before the General Assembly as many times as you did and you have even told
      me how powerful and moving his testimony was to listen to.  During an early July telephone call to me

inquiring about when additional lawsuits would be filed against Salesianum and the Oblates of St. Francis DeSales, you even joked about the fact that my client Robert Quill must be happy the bill passed because now he can bring a lawsuit.

Accordingly, because an extension of time has already been granted and in light of the long unfortunate history of delay that all of these cases have experienced, plaintiff must deny St. Elizabeth's request for another extension of time to file an Answer or responsive pleading.

-Steve

---

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Monday, August 27, 2007 10:53 AM
**To:** Stephen J. Neuberger; Thomas S. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Steve,

I left a message at your office, but understand you may be out for at least the morning.

I am hopeful that we might speak today about my requested extension. I want to convey that my request is absolutely **not** tied to any plan to delay. Rather, my request is solely based on the facts that I was retained by St. Elizabeth's in early-August and since then have initiated only preliminary interviews, document searches and insurance evaluations. Apart from that, my staff and I have been occupied full-time on finalizing our preparation for a looming trial in the Superior Court. That trial is scheduled to conclude on September 21, thus my requested extension for the time to answer the complaint in Quill is Sept 28.

With respect to your specific questions about St. Elizabeth's intended response to the complaint, I can tell you that our focus is on a plan to draft any answer to the complaint. Beyond that, I have not had sufficient dialogue with our client to consider any alternate strategies.

I look forward to hearing from you in hopes that a scheduling stipulation can be reached in lieu of a motion for an extension.

Thanks for your consideration.

Mark

Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

-----Original Message-----
**From:** Stephen J. Neuberger [mailto:SJN@neubergerlaw.com]
**Sent:** Friday, August 24, 2007 4:23 PM
**To:** Reardon, Mark; Thomas S. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Mark,

Following up on your e-mail.

8/27/2007

This case was originally filed on July 12th and your client was served the same day.

We previously agreed to a stipulation, extending the time for your client to respond to the initial complaint until August 8th.  (D.I. 10).

On Monday, August 6th, I spoke to Tony Flynn by telephone who indicated that you had been retained to represent St. Elizabeth's and would be taking over that representation from him.

Another extension was then requested by defendants.

To address defense concerns for more time, plaintiff volunteered to file a First Amended Complaint to make several minor editorial changes and add one additional count.  No substantive changes were made.  The filing of this First Amended Complaint would give defendants the additional time to respond that they had requested.   This First Amended Complaint was filed on Wednesday, August 8th.  Service was on performed electronically on Tony via CM/ECF, although I also e-mailed you a courtesy copy of the complaint.

You also represent several Roman Catholic institutional defendants in a number of these priest/pedophile cases that my office has filed in state court.  Each and every one of those cases has been plagued by extensive delays in defendants filing Answers or responsive pleadings.

For example, in McClure, after approximately 6 months of requests for extensions that were granted, my office had to petition the Superior Court for additional time to perfect service in case that defendant intended to challenge service after the plethora of extensions that were granted. Defendants then filed a short 5 page motion to dismiss, which could have easily been filed 6 months prior.  That motion was subsequently withdrawn.  It has been 8 long months since that was was filed but still no Answer.  Then, we are all familiar with the tortured history of the Eden case - with 3 1/2 years before an Answer was filed.  As the e-mail traffic between our offices from earlier this week reveals, it appears the Whitwell state court is going down the same path.

I wish to avoid this long pattern of delay.  Thus, I am very concerned with your request.  We are in federal court where cases move expeditiously and without delay.  The system works differently here than it does in state court.

In light of this prior history, the fact that your client has had actual notice of and was served with this lawsuit on July 12th, more than six weeks ago, and that extensions have already been granted, I need additional information in considering your request.

Does your client intend to join the issues and file an Answer if Sept. 28th extension is given?  Or does your client intend to file a motion to dismiss and attack the constitutionality of SB29, the Child Victim's Act?  If so, then this appears to be yet another unnecessary delay.

-Steve

---

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Friday, August 24, 2007 11:50 AM
**To:** Thomas S. Neuberger; Stephen J. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** Quill

Tom and Steve,

   I write as the recently retained counsel for defendant St. Elizabeth's.  By my calculation, St. Elizabeth's answer is due next Tuesday. I am writing to request an extension to September 28, 2007. Apart from my recent retention, the basis for the extension is my near total preoccupation with an accounting malpractice trial looming in the Superior Court (Judge Scott).  Trial is scheduled to conclude on September 21.

   I have met with Fr. Dillingham at St. Elizabeth's to begin the fact finding process, but I regret that I

will not be in a position to respond to the complaint within the 20 day allocation. Therefore, your consent to this extension would be very much appreciated.

    Thank you for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

## Stephen J. Neuberger

| | |
|---|---|
| **From:** | Stephen J. Neuberger |
| **Sent:** | Monday, August 27, 2007 1:26 PM |
| **To:** | 'Reardon, Mark' |
| **Cc:** | Tom Crumplar; Robert Jacobs; Thomas S. Neuberger; Flynn, Anthony |
| **Subject:** | RE: Quill |
| **Attachments:** | Proposed Rule 16 Scheduling Order.draft 3.pdf |

Mark,

If we can reach agreement, plaintiff proposes the attached draft Rule 16 scheduling order.  It contains a discovery cut-off date of February 28, 2008, and would enable this case to flow and move along smoothly on the federal docket without delay.

-Steve

---

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Monday, August 27, 2007 1:16 PM
**To:** Stephen J. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs; Thomas S. Neuberger
**Subject:** RE: Quill

Steve,

Got your response. We'll file a motion noting your objection.

Again, the only basis for my requested extension is my personal trial and discovery calendar that has me substantially detained for the next 3-4 weeks.  I was retained by St. Elizabeth's less 3 weeks ago, and for 2 of those weeks either Fr. Dillingham or myself were away.  I hope you understood that my request was not tactical, only personal and practical.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

-----Original Message-----
**From:** Stephen J. Neuberger [mailto:SJN@neubergerlaw.com]
**Sent:** Monday, August 27, 2007 1:04 PM
**To:** Reardon, Mark
**Cc:** Tom Crumplar; Robert Jacobs; Thomas S. Neuberger
**Subject:** RE: Quill

Mark,

Based on your e-mail response, it appears this case is heading down the same long path of delay that has plagued all of its predecessors.  I do not want to have yet another 6 month - 3 1/2 year delay before an

8/27/2007

14

Answer is filed by your client. We have danced this same dance in McClure, Eden and are currently dancing it again in state court with Whitwell. We should not have to do this yet again in federal court in Quill.

You avoided my question about whether your client intends to file an Answer or challenge the constitutionality of SB29.

The constitutional issue has come as no surprise to anyone and instead has been front and center since February 2007. You lobbied against the bill, both in your personal and representative capacities on behalf of your Catholic institutional clients and I was told by those in attendance that you addressed constitutional issues during one of several occasions when you gave legislative testimony about SB29. If you intend to challenge the constitutionality, the time is now. This legal issue is no surprise.

This case also is no factual surprise. Plaintiff Quill was front and center on these issues since the hearings in the Senate. He testified before the General Assembly as many times as you did and you have even told me how powerful and moving his testimony was to listen to. During an early July telephone call to me inquiring about when additional lawsuits would be filed against Salesianum and the Oblates of St. Francis DeSales, you even joked about the fact that my client Robert Quill must be happy the bill passed because now he can bring a lawsuit.

Accordingly, because an extension of time has already been granted and in light of the long unfortunate history of delay that all of these cases have experienced, plaintiff must deny St. Elizabeth's request for another extension of time to file an Answer or responsive pleading.

-Steve

---

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Monday, August 27, 2007 10:53 AM
**To:** Stephen J. Neuberger; Thomas S. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Steve,

I left a message at your office, but understand you may be out for at least the morning.

I am hopeful that we might speak today about my requested extension. I want to convey that my request is absolutely **not** tied to any plan to delay. Rather, my request is solely based on the facts that I was retained by St. Elizabeth's in early-August and since then have initiated only preliminary interviews, document searches and insurance evaluations. Apart from that, my staff and I have been occupied full-time on finalizing our preparation for a looming trial in the Superior Court. That trial is scheduled to conclude on September 21, thus my requested extension for the time to answer the complaint in Quill is Sept 28.

With respect to your specific questions about St. Elizabeth's intended response to the complaint, I can tell you that our focus is on a plan to draft an answer to the complaint. Beyond that, I have not had sufficient dialogue with our client to consider any alternate strategies.

I look forward to hearing from you in hopes that a scheduling stipulation can be reached in lieu of a motion for an extension.

Thanks for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700

P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

-----Original Message-----
**From:** Stephen J. Neuberger [mailto:SJN@neubergerlaw.com]
**Sent:** Friday, August 24, 2007 4:23 PM
**To:** Reardon, Mark; Thomas S. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** RE: Quill

Mark,

Following up on your e-mail.

This case was originally filed on July 12th and your client was served the same day.

We previously agreed to a stipulation, extending the time for your client to respond to the initial complaint until August 8th. (D.I. 10).

On Monday, August 6th, I spoke to Tony Flynn by telephone who indicated that you had been retained to represent St. Elizabeth's and would be taking over that representation from him.

Another extension was then requested by defendants.

To address defense concerns for more time, plaintiff volunteered to file a First Amended Complaint to make several minor editorial changes and add one additional count. No substantive changes were made. The filing of this First Amended Complaint would give defendants the additional time to respond that they had requested. This First Amended Complaint was filed on Wednesday, August 8th. Service was on performed electronically on Tony via CM/ECF, although I also e-mailed you a courtesy copy of the complaint.

You also represent several Roman Catholic institutional defendants in a number of these priest/pedophile cases that my office has filed in state court. Each and every one of those cases has been plagued by extensive delays in defendants filing Answers or responsive pleadings.

For example, in McClure, after approximately 6 months of requests for extensions that were granted, my office had to petition the Superior Court for additional time to perfect service in case that defendant intended to challenge service after the plethora of extensions that were granted. Defendants then filed a short 5 page motion to dismiss, which could have easily been filed 6 months prior. That motion was subsequently withdrawn. It has been 8 long months since that was was filed but still no Answer. Then, we are all familiar with the tortured history of the Eden case - with 3 1/2 years before an Answer was filed. As the e-mail traffic between our offices from earlier this week reveals, it appears the Whitwell state court is going down the same path.

I wish to avoid this long pattern of delay. Thus, I am very concerned with your request. We are in federal court where cases move expeditiously and without delay. The system works differently here than it does in state court.

In light of this prior history, the fact that your client has had actual notice of and was served with this lawsuit on July 12th, more than six weeks ago, and that extensions have already been granted, I need additional information in considering your request.

Does your client intend to join the issues and file an Answer if Sept. 28th extension is given? Or does your client intend to file a motion to dismiss and attack the constitutionality of SB29, the Child Victim's Act? If so, then this appears to be yet another unnecessary delay.

-Steve

**From:** Reardon, Mark [mailto:mreardon@elzufon.com]
**Sent:** Friday, August 24, 2007 11:50 AM
**To:** Thomas S. Neuberger; Stephen J. Neuberger
**Cc:** Tom Crumplar; Robert Jacobs
**Subject:** Quill

Tom and Steve,

    I write as the recently retained counsel for defendant St. Elizabeth's.  By my calculation, St. Elizabeth's answer is due next Tuesday. I am writing to request an extension to September 28, 2007. Apart from my recent retention, the basis for the extension is my near total preoccupation with an accounting malpractice trial looming in the Superior Court (Judge Scott).  Trial is scheduled to conclude on September 21.

    I have met with Fr. Dillingham at St. Elizabeth's to begin the fact finding process, but I regret that I will not be in a position to respond to the complaint within the 20 day allocation. Therefore, your consent to this extension would be very much appreciated.

    Thank you for your consideration.

Mark


Mark L. Reardon
Elzufon Austin Reardon Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
Tele:302.428.3181
Fax:302.428.3180

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT QUILL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A.No. 07-435-SLR |
| | : | |
| CATHOLIC DIOCESE OF WILMINGTON, | : | |
| INC., a Delaware corporation; ST. | : | |
| ELIZABETH'S CATHOLIC CHURCH, a | : | |
| Delaware corporation;  Rev. FRANCIS G. | : | |
| DELUCA, individually and in his official | : | |
| capacity; and Rev. MICHAEL A. | : | Jury Trial Demanded |
| SALTARELLI, in his official capacity, | : | |
| | : | |
| Defendants. | : | |

## PROPOSED RULE 16 SCHEDULING ORDER

At Wilmington this _____ day of 2007, the parties having satisfied their obligations under

Fed.R. Civ. P. 26(f), and the court having conducted a pretrial scheduling conference pursuant to

Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b).

IT IS ORDERED that:

1. **Pre-Discovery Disclosures**. The parties will exchange by September 7, 2007 the

information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2. **Discovery**.

(a) Discovery will be needed on the following subjects:

Plaintiff's Statement:

1.  Internal operations and policies.

2.  Procedures for retaining records and information.

3.  Procedures for handling alleged misconduct by Priests.

4.  All internal processes and prerequisites for ordaining, training,

supervising and retaining priests.

5.  All internal processes and prerequisites for hiring, training, supervising,

and retaining teachers.

5.  Internal Organizational Structures and Hierarchies.

6.  Personnel and Medical Files of Francis G. DeLuca.

7.  Notice or Knowledge of Francis G. DeLuca's misconduct.

8.  Breach of Duties to Plaintiff.

9.  Records, actions, or decisions of the Defendants concerning priest

misconduct.

10.  Contractual or quasi-contractual duties between defendants and

plaintiffs' parents.

11.  Insurance Policies and Coverage.

12.  Elements of compensatory damages.

13.  Elements of punitive damages.

Defendant's Statement:

(b) All discovery shall be commenced in time to be completed by February 28,

2008.

(c) Maximum of  50  interrogatories by each party to any other party.

2

19

(d) Maximum of __50__ requests for admission by each party to any other party.

(e) Maximum of __15__ depositions by plaintiff and __15__ depositions by defendant.

(f) With the exception of the parties, each deposition will be limited to a maximum of __7__ hours unless extended by agreement of parties.

(g) Reports from retained experts under Rule 26(a)(2) on issues for which any party has the burden of proof due by January 11, 2008.   Rebuttal expert reports due by February 8, 2008.

(h) **Discovery Disputes**. Any discovery dispute shall be submitted to the court pursuant to Fed. R. Civ. P. 37. During the course of discovery, each party is limited to **two (2)** Rule 37 motions. The court shall make itself available, however, to resolve through a telephone conference, disputes that arise during the course of a deposition and disputes related to entry of a protective order.

3. **Joinder of other Parties, Amendment of Pleadings, and Class Certification.** All motions to join other parties, amend the pleadings, and certify a class action shall be filed on or before December 1, 2007.

4. **Settlement Conference.** Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

5. **Summary Judgment Motions**. All summary judgment motions shall be served and filed with an opening brief on or before March 31, 2008. Briefing shall be pursuant to D. Del. LR 7.1.2. No summary judgment motion may be filed more than **ten (10)** days from the above date without leave of the court.

6. **Applications by Motion**. Any application to the court shall be by written motion filed

3

with the clerk. Unless otherwise requested by the court, counsel shall not deliver copies of papers or correspondence to chambers. **Any nondispositive motion shall contain the statement required by D.Del. LR 7.1.1.**

7. **Motions in Limine**. All motions in limine shall be filed on or before **[two weeks before pretrial conference]**. All responses to said motions shall be filed on or before **[one week before pretrial conference]**.

8. **Pretrial Conference**. A pretrial conference will be held on _____ at _____ m. in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

9. **Trial**. This matter is scheduled for a 10 day jury trial commencing on in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

_____
UNITED STATES DISTRICT JUDGE

Quill, Robert / Docket / Court Orders & Rulings / Proposed Rule 16 Scheduling Order. draft 3.wpd

4

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

August 28, 2007, I electronically filed this **Pleading** with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

> Anthony G. Flynn, Esq.
> Young Conaway Stargatt & Taylor, LLP
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
>
> Mark L. Reardon, Esq.
> Ezlufon Austin Reardon Tarlov & Mondell, P.A.
> 300 Delaware Avenue, Suite 1700
> P.O. Box 1630
> Wilmington, DE 19899-1630

I also certify that I served this **Pleading** by U.S. Mail and e-mail on the following

individual:

> Stephen P. Casarino, Esquire
> Casarino Christman & Shalk, P.A.
> 800 North King Street, Suite 200
> P.O. Box 1276
> Wilmington, DE 19899
> scasarino@casarino.com

> /s/ Stephen J. Neuberger
> **STEPHEN J. NEUBERGER, ESQ.**

Quill / Pleadings / Resp in Opp to Motion for Time Ext.final

# Tab C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT QUILL, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | C.A. No. 07-435-SLR |
| | : | |
| CATHOLIC DIOCESE OF WILMINGTON, | : | |
| INC., a Delaware corporation; ST. | : | |
| ELIZABETH'S CATHOLIC CHURCH, a | : | |
| Delaware corporation;  Rev. FRANCIS G. | : | |
| DELUCA, individually and in his official | : | |
| capacity; and Rev. MICHAEL A. | : | |
| SALTARELLI, in his official capacity, | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HIS RULE 12(c) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, AND/OR RULE 56(a), (c) AND (d) MOTION FOR PARTIAL SUMMARY JUDGMENT, ON THE CONSTITUTIONALITY OF THE CHILD VICTIM'S ACT AS WRITTEN UNDER THE U.S. CONSTITUTION**

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**RAEANN WARNER, ESQ. (#4931)**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
RW@NeubergerLaw.com

**JACOBS & CRUMPLAR, P.A.**
**ROBERT JACOBS, ESQ. (#244)**
**THOMAS C. CRUMPLAR, ESQ. (#942)**
Two East Seventh Street, Suite 400
Wilmington, DE 19801
(302) 656-5445
Bob@JandCLaw.com
Tom@JandCLaw.com

Dated: October 16, 2007

Attorneys for Plaintiff

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    The Legislative History of the Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.    The Governor Signs the Bill into Law . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Rule 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN
        UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH
        AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    The Legislature Clearly Expressed Its Intent to Apply the Act
            Retroactively . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    The Federal Test - Clear Intent . . . . . . . . . . . . . . . . . . . . . 8

            2.    The Intent of the Legislature is Clear . . . . . . . . . . . . . . . . . 8

        C.    The U.S. Supreme Court Has Repeatedly Held That Such Retroactive
            Civil Legislation Does Not Violate Due Process . . . . . . . . . . . . . . . . 9

        D.    Numerous Other Federal and State Courts Have Upheld Retroactive
            Childhood Sexual Abuse Civil Legislation From Due Process Attacks . . 12

            1.    California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                a.    Window Provision . . . . . . . . . . . . . . . . . . . . . . . . . 13

*i*

2.    Minnesota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      a.    Window Provision . . . . . . . . . . . . . . . . . . . . . . . . 13

3.    South Dakota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4.    Vermont . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5.    Kansas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6.    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

E.    The Same Principal Has Been Applied in Agent Orange Litigation . . . . 14

F.    Retroactive Civil Legislation Also Has Been Upheld in At Least Nine
      Other Contexts In Addition to Agent Orange Victims . . . . . . . . . . . . . . 16

1.    Student Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2.    Civil Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3.    Toxic Torts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      a.    New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      b.    Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      c.    Kansas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      d.    Louisiana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4.    Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      a.    California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      b.    Connecticut . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5.    Wrongful Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6.    Products Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7.    Personal Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

8.    Medical Malpractice . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9.    Paternity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

G.      The Act Does Not Violate Due Process . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.    THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN
        UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
        AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.      The Supreme Court Has Held That Retroactive Civil Legislation Does
                Not Violate Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                1.      Toxic Torts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

                2.      Student Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        B.      Rational Basis Is The Appropriate Standard of Review . . . . . . . . . . . . 22

                1.      No Suspect Class is Burdened . . . . . . . . . . . . . . . . . . . . . . . . . 22

                2.      No Fundamental Rights are Burdened . . . . . . . . . . . . . . . . . . . 22

        C.      The Rational Basis Standard is Easily Met . . . . . . . . . . . . . . . . . . . . . . 23

IV.     THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN
        UNDER THE SEPARATION OF POWERS DOCTRINE OF ARTICLE 3,
        § 1 OF THE U.S. CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page**

20th Century Insur. Co. v. Superior Court, 109 Cal.Rptr.2d 611 (Cal.App. 2001) . . . . . . . . . 18

A.K.H. v. R.C.T., 822 P.2d 135 (Or. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Artisan Water Co. v. Gov't of New Castle County, 1983 WL 17986 (Del.Ch. Aug. 4, 1983) . . . 8

Ashou v. Liberty Mut. Fire Ins. Co., 41 Cal.Rptr.3d 819 (Cal.App. 2006) . . . . . . . . . . . . . . . 18

Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc., 839 F.Supp. 275
    (D.Vt. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Bendix Corp. v. Stagg, 486 A.2d 1150 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Blount v. Windley, 95 U.S. 173 (1877) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Boyle v. County of Allegheny, Pa., 139 F.3d 386 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 7

Bracket v. Civil Service Com'n, 850 N.E.2d 533 (Mass. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 21

Brown v. E.I. DuPont De Nemours and Co., 820 A.2d 362 (Del. 2003) . . . . . . . . . . . . . . . . 15

Burdick v. Afrimet-Indussa Inc., 138 Misc.2d 598 (N.Y.Sup. 1988) . . . . . . . . . . . . . . . . . 17,21

C.I.R. v. Bilder, 289 F.2d 291 (3d Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.I.R. v. Bilder, 369 U.S. 499 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Campanelli v. Allstate Life Ins. Co., 322 F.3d 1086 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 18

Campbell v. Holt, 115 U.S. 620 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,15,19

Chase Securities Corp. v. Donaldson, 325 U.S. 304 (1945) . . . . . . . . . . . . . 10-11,14-15,19-22

Chatmon v. U.S. Dept. of Educ., 2003 WL 21501919 (N.D.Tex. June 24, 2003) . . . . . . . . . . 22

City of Boston v. Keene Corp., 547 N.E.2d 328 (Mass. 1989) . . . . . . . . . . . . . . . . . . . . 17,21,26

Curtis v. Whitney, 80 U.S. 68 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Davis v. Valley Distributing Co., 522 F.2d 827 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . 16

Delonga v. Diocese of Sioux Falls, 329 F.Supp.2d 1092 (D.S.D. 2004) . . . . . . . . . . . . . . 7,13-14

Doe v. Roe, 677 P.2d 468 (Hawaii 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Earle v. State, 743 A.2d 1101 (Vt. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Eden v. Oblates of St. Francis de Sales, 2006 WL 3512482 (Del.Super. Dec. 4, 2006) . . . . . . . . 1

Gomon v. Northland Family Physicians, Ltd., 645 N.W.2d 413 (Minn. 2002) . . . . . . . . . . . . 19

H.D. v. White, 483 N.W.2d 501 (Minn.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Harding v. K.C. Wall Products Inc., 831 P.2d 958 (Kan. 1992) . . . . . . . . . . . . . . . . . . . . . . . 17

Heck. v. McConnell, 418 N.W.2d 678 (Mich.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hellinger v. Farmers Group, Inc., 111 Cal.Rptr.2d 268 (Cal.App. 2001) . . . . . . . . . . . . . . . 18

Hubbard v. Hibbard Brown & Co., 633 A.2d 345 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . 8

Hymowitz v. Eli Lilly and Co., 136 Misc.2d 482 (N.Y.Sup. 1987) . . . . . . . . . . . . . . . . . . . 17,21

Hymowitz v. Eli Lilly and Co., 539 N.E.2d 1069 (N.Y. 1989) . . . . . . . . . . . . . . . . . . . . 17,21

I.N.S. v. CYR, 533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Agent Orange Product Liability Litigation, 597 F.Supp. 740 (E.D.N.Y. 1984) . . . . . . . . 15

In re Asbestos Litigation, 829 F.2d 1233 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 23-24

Int'l Union of Electrical, Radio and Machine Workers, AFL-CIO Local
    790 v. Robbins, 429 U.S. 229 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,14,16,19-20

John Doe I v. Roman Catholic Diocese of Galveston-Houston, 2007 WL 2817999
    (S.D.Tex. Sept. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

K.E. v. Hoffman, 452 N.W.2d 509 (Minn.App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Landgraf v. USI Film Products, 511 U.S. 244 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Lent v. Doe, 47 Cal.Rptr.2d 389 (Cal.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lieberman v. Cambridge Partners, LLC, 432 F.3d 482 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . 8

Liebig v. Superior Court, 257 Cal.Rptr. 574 (Cal.App. 1989) . . . . . . . . . . . . . . . . . . . . . . . 12

McCann v. Walsh Construction Co., 123 N.Y.S.2d 509 (N.Y.App. 1953) . . . . . . . . . . . . . . . 15

Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 6

Minn. v. Clover Leaf Creamery Co., 449 U.S. 456 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Nachtsheim v. Wartnick, 411 N.W.2d 882 (Minn.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Nordlinger v. Hahn, 505 U.S. 1 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Piccirelli v. Johns-Manville Sales Corp., 128 A.D.2d 762 (N.Y.A.D. 1987) . . . . . . . . . . . . . . 17

Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995) . . . . . . . . . . . . . . . . . . . . . . . 12,14,19,25

Powell v. Anderson, 660 N.W.2d 107 (Minn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pryber v. Marriott Corp., 296 N.W.2d 597 (Mich.App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157
    (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

Romer v. Evans, 517 U.S. 620 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Sea-Land Service, Inc. v. Barry, 41 F.3d 903 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Security Homestead Ass'n v. W.R. Grace & Co., 743 F.Supp. 456 (E.D.La. 1990) . . . . . . 17,21

Serrano v. Aetna Ins. Co., 664 A.2d 279 (Conn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Shadburne-Vinton v. Dalkon Shield Claimants Trust, 60 F.3d 1071 (4th Cir. 1995) . . . . . . 18-19

Shirley v. Reif, 920 P.2d 405 (Kan. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Short v. Short, 858 A.2d 571 (N.J. Super.A.D. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sibley v. U.S. Dept. of Educ., 913 F.Supp. 1181 (N.D.Ill. 1995) . . . . . . . . . . . . . . . . . . . 16,21-22

Stogner v. California, 539 U.S. 607 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Stratmeyer v. Stratmeyer, 567 N.W.2d 220 (S.D. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Territory of Alaska v. American Can Co., 358 U.S. 224 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tietge v. Western Province of the Servites, Inc., 64 Cal.Rptr.2d 53 (Cal.App. 1997) . . . . . . . 12

Twomey v. Carlton House of Providence, Inc., 320 A.2d 98 (R.I. 1974) . . . . . . . . . . . . . . . . 19

U.S. v. Glockson, 998 F.2d 896 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Hargrove, 2007 WL 2811832 (W.D.Pa. Sept. 24, 2007) . . . . . . . . . . . . . . . . . . . 16

U.S. v. Hodges, 999 F.2d 341(8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. McLaughlin, 7 F.Supp.2d 90 (D.Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Phillips, 20 F.3d 1005 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Pollard, 326 F.3d 397 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. v. Smith, 862 F.Supp. 257 (D.Hawaii 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Vaughn v. Vulcan Materials Co., 465 S.E.2d 661 (Ga. 1996) . . . . . . . . . . . . . . . . . . . . . 19

**Constitutions, Statutes, and Rules**

U.S. Const., Art. 3, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _passim_

20 U.S.C. § 1091a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed.R.Civ.P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Civ.P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6

Fed.R.Civ.P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7

Fed.R.Civ.P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

10 Del.C. § 8131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10 Del.C. § 8131(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10 Del.C. § 8145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _passim_

10 Del.C. § 8145(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

10 Del.C. § 8145(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,22

10 Del.C. § 8145(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Civ. Proc. Code § 340.1(c) (West 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

N.Y. C.P.L.R. § 214-b (McKinney 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

LA. Rev. Stat. Ann § 9:5644 (West 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**<u>Other Authorities</u>**

5C Wright & A. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004) . . . . . . . . . . . . . 6

# NATURE AND STAGE OF THE PROCEEDING

Traditionally conservative Delaware has enacted model legislation with nationwide implications which the defendants claim is unconstitutional as written.  Judicial economy and Fed.R.Civ.P. 1 dictate that this issue be decided at the onset of this complex and expensive case, and so plaintiff has filed appropriate motions to decide this constitutional issue.

This diversity action was filed on July 12, 2007 and the Complaint then was amended as of right.  (D.I. 11, First Amended Complaint, hereinafter "Compl. ¶__").  Both institutional defendants have answered.  (D.I. 19, Answer of the Catholic Diocese of Wilmington, hereinafter "Diocese Ans. ¶__", and D.I. 23, Answer of St. Elizabeth's Catholic Church, hereinafter "Church Ans. ¶__").  In their Affirmative Defenses, under the U.S. Constitution the Church and the Diocese have challenged the constitutionality as written of the underlying "Child's Victim Act" of 2007, 10 Del. C. § 8145 (the "Act"), which in subsection (a) prospectively abolished the statute of limitations in future child abuse actions, and in subsection (b) retrospectively created a two year window within which claims may be brought for past child abuse actions which had been previously barred by the prior statute of limitations. (Church Ans. ¶¶ 201,202, Diocese Ans. ¶¶ 201,202, A66,99).

This case arises from the Act and Delaware common law regarding at least 300 acts of childhood sexual abuse.[1]  It seeks monetary damages for personal injuries arising from such abuse by Rev. Francis G. DeLuca, a convicted child molester and priest employed by the defendants. DeLuca was employed recklessly despite the fact that the defendants had prior actual knowledge

---

[1]  Counts VI, VII and VIII are not dependent upon the Act.  Instead, they arise from Delaware common law and are based upon the recovery of repressed memories in October 2006 by the plaintiff and the timely filing of this action within two years of that discovery.  See Eden v. Oblates of St. Francis de Sales, 2006 WL 3512482 *13-14 (Del. Super. Dec. 4, 2006).

that he was a child molester and that they owed a duty of care to protect plaintiff from him. (Compl. ¶ 1; A1).

This is plaintiff's Opening Brief in support of his Motion under Rule 12(c) for partial judgment on the pleadings and/or under Rule 56(a), (c) and (d) for partial summary judgment on the issue of the federal constitutionality of the Act as written.

The record found in the Appendix includes the Complaint and Answers, Senate Bill 29 which became the Act, the legislative debates and public hearings on that Bill before its unanimous enactment by both the Senate and House of Representatives of the State of Delaware, the Governor's signing statement, and the duly enacted new statute.

## SUMMARY OF THE ARGUMENT

1. The defendants' federal constitutional challenge to a civil window in the child abuse context is particularly unpersuasive because the Court can only step in and act as a superlegislature to judge the wisdom or desirability of legislative policy if a fundamental right or suspect classification is involved, which is not the case herein.

2. Since the shelter afforded by a statute of limitations is not a fundamental or a vested right, the fundamental right to due process has not been denied. Seven U.S. Supreme Court cases have held that retroactive application of a civil statute of limitations does not violate due process. Federal and state courts in five states have applied this principle to uphold retroactive statutes like Delaware's in the child abuse context. And, 31 courts also have applied this rule of retroactivity to toxic torts and nine other causes of action, all while rejecting due process challenges.

3. The fundamental right to equal protection has not been denied either because in its authoritative due process holding, the Supreme Court also held that retroactive statutes of limitations pass constitutional muster under the equal protection clause. The lower courts at least

eight times have applied this ruling and have rejected equal protection attacks on retroactive statutes similar to that challenged herein.

4.  The makeweight claim that the Act violates the separation of powers fails because at least two court have ruled that doctrine inapplicable.

## STATEMENT OF FACTS

**A.  Plaintiff.**  Robert Quill ("plaintiff") is presently 52 years old and he resides in Marathon, Florida.  He last was employed as a Supervisory Staff Attorney for the United States Court of Appeals for the Eleventh Circuit, in Atlanta, Georgia.  (Compl. ¶ 4; A2).

**B.  Defendants.**  Defendants admit that  Francis G. DeLuca ("DeLuca") is a Roman Catholic priest who was employed by the Diocese from 1958 until 1993.  A convicted child molester, he is presently at least 77 years old and resides in Syracuse, New York.  (Diocese & Church Ans. ¶ 7; A32,70,71).

Defendant Diocese also agrees that it was responsible at all times for licensing DeLuca to perform priestly functions as one of its employees.  Without the explicit authorization and sanction of Diocese, he could not have performed priestly functions including spiritual and personal counseling, the conduct of religious services, days of spiritual recollection, and the administration of Roman Catholic sacraments.  (Diocese Ans. ¶ 10; A33).

Additionally, Diocese admits it was responsible for the management and control of its parishes, including St. Elizabeth's and was responsible for employing priests, staff and other agents to operate those parishes.  (Diocese Ans.  ¶ 11; A33).

Diocese and Church both repeatedly concede that they had a duty to protect children, including plaintiff,  from sexual abuse by their priests.  (Diocese & Church Ans. ¶¶ 39, 40, 41, 24, 128, 156 see ¶¶ 15-17; A34,35,38,53,58,72,73,75,76,88,92).

3

Importantly, Diocese admits that prior to DeLuca ever meeting plaintiff, in 1966 the parents of another young victim reported that their son had been sexually abused by DeLuca. (Diocese & Church Ans. ¶¶ 38, 68, 69, 72;  A38,44,75).  Defendants also concede that their attorney publicly testified in 2007 that in 1966 they had knowledge of a report of sexual abuse of a minor by DeLuca.   (Diocese & Church Ans. ¶¶ 77, 78; A45,82).

Defendants do not dispute that in 1966 DeLuca then was transferred from the church where that reported abuse had occurred to the defendant Church, St. Elizabeth's, where he served as assistant and pastor until 1969.  (Diocese  Ans. ¶¶ 11, 78, 68, 69, 72, 8, 52; Church Ans. ¶¶ 8, 52; A32,33,40,41,44,45,71,78).

When DeLuca arrived at the Church, from 1966 to 1973 plaintiff was enrolled in its elementary and later high schools and he also served as an altar boy for DeLuca.  (Compl. ¶¶ 87, 89; A15,16).

Plaintiff alleges that from 1968 to 1975, between the ages of 13-19, on at least 300 occasions, DeLuca sexually abused him and injured him, eventually leading to his premature retirement on disability from federal employment with the judiciary.  (Compl. ¶¶ 96, 109-116; A16-19).

**C.  The Legislative History of the Act.**   The original Bill, S.B. 29, which became the Act, is in the record.  (A102,103).  Its purpose as revealed in its Synopsis was to "repeal[] the statute of limitations in civil suits relating to child sexual abuse cases and provide[] a two-year "window" in which victims can bring a civil action in cases previously barred by the current statute."  (A103).  Massive community support for this legislative initiative was organized through a website found at www.childvictimsvoice.com.

The full State Senate first personally heard testimony and then debated the Bill thoroughly

4

before passing it unanimously with 19 of 21 Senators present. (A132). In its deliberations the Senators took testimony from four victims whose actions previously had been barred by the statute of limitations. Then it heard from one noted constitutional law expert (Prof. Marci M. Hamilton - A106, 127-28), a Canon Law expert (Rev. Thomas Doyle - A106-15), as well as psychiatric testimony pro and con. (Carol A. Tavani, M.D. - A115-18, 124-27; Janice Chester, M.D. - A122-24). Testimony was taken on the legality of retroactively applying the Act. (Senate Attorney Jeff Clark - A116). Before its unanimous vote the Senators carefully balanced the need for the legislation, the appropriate standard of care for institutions which was set at gross negligence to protect such entities (A120-22), the risk of false claims (A110,114,121,123, 125-29), medical issues (A116-18, 123-27), and the needs of the insurance industry and non-profits. (A126).

The House Judiciary Committee then held two full days of hearings when the Bill moved to that forum. (A153).[2] Lay witnesses pro and con were heard (A155-59, 193-97), as well as testimony from victims. (A155, 187-93, 317, 319). A representative of non-profit organizations also opposed the Bill, as did the insurance industry. (Krupanski - A159-62; M. Doyle - A199-205). Proponents of religious institutions testified. (Flynn - A162-67; Reardon - A178-86; Bifferato - A317; Hynes - A319), as did the State Solicitor, Lawrence Lewis who endorsed the Bill's legality. (A318).

Testimony also was then taken before the full House of Representatives from both proponents and opponents of the bill. (A250-52, 255-63). The Dean of the Villanova Law School opposed the Bill for religious institutions. (A252-54). In response, Prof. Hamilton again

---

[2] Only day two was recorded and preserved verbatim. (A155-286). Official minutes of day one were substituted. (A315-19).

5

addressed the legal issues.  (A264-66).  Amendments were considered and rejected. (A267-85).

After hearing more testimony and then carefully balancing the need for the legislation, the

interests involved and considering the legal issues, the Bill passed unanimously with all 41

Representatives voting in favor.  (A286).

    **D.  The Governor Signs the Bill Into Law.**  The Governor then signed the Bill on July

10, 2007, declared the legislation to be  "vitally important," and stated -

> Ever since we passed Megan's Law in 1998, we've been working to refine and strengthen
> Delaware's laws relating to sex offenders ... Sexual predators that victimize children are
> learning that Delaware is not going to tolerate their horrendous crimes against the children
> of our state.  I applaud the efforts of Senator Peterson and all of the co-sponsors for
> taking the lead on passing this vitally important legislation.

(Gov. Minner Press Release; A314).

## ARGUMENT

## I.    STANDARD OF REVIEW.

    **A.  Rule 12(c).**  Fed.R.Civ.P. 12(c) allows "any party," such as plaintiff herein, to move

for judgment on the pleadings.  The Court then views the facts in the light most favorable to the

non-moving party.  Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004).  The

motion should be granted if there are no material issues of fact and the moving party is entitled to

judgment as a matter of law.  Id.  As in our present case, Wright and Miller have explained that

Rule 12(c) may be used to address -

> the applicability or interpretation of a statutory provision.  The Rule 12(c) procedure also
> may be of value when the statute of limitations provides an effective bar against the
> plaintiff's claim and the entire controversy may be disposed of by a pretrial summary
> motion based on the parties pleadings.

5C Wright & A. Miller, Federal Practice and Procedure § 1367 at p.210-11 (3d ed. 2004)

(internal footnotes omitted).  As Rule 12(c) explains, the motion may be converted into a motion

for summary judgment under Rule 56 if matters outside the pleadings are considered.  Rose v.

Bartle, 871 F.2d 331, 340 (3d Cir. 1989).[3]

  **B. Rule 56.** A motion for summary judgment shall be granted if there are no genuine

issues of material fact and the moving party is entitled to judgment as a matter of law. Boyle v.

County of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998); Fed.R.Civ.P. 56(c).

## II. THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

  **A. Introduction.** For the reasons explained below, the defendants' federal constitutional

challenge to a civil window in the child abuse context is "particularly unpersuasive." Delonga v.

Diocese of Sioux Falls, 329 F.Supp.2d 1092, 1102 (D.S.D. 2004). "Absent a violation of [a

constitutional provision], the potential unfairness of retroactive civil legislation is not a sufficient

reason for a court to fail to give a statute its intended scope." Landgraf v. USI Film Products,

511 U.S. 244, 267 (1994). That is because "it is up to legislatures, not courts, to decide on the

wisdom and utility of legislation." Minn. v. Clover Leaf Creamery Co., 449 U.S. 456, 469

(1981); see Sea-Land Service, Inc. v. Barry, 41 F.3d 903, 910 (3d Cir. 1994) ("the judiciary may

not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations

made in areas that neither affect fundamental rights nor proceed along suspect lines."). Mere

unhappiness that the defendants are being held accountable for their past misdeeds is clearly

insufficient to authorize the Court to step in and act as a superlegislature. Landgraf, 511 U.S. at

267.

---

  [3] Plaintiff notes that consideration of legislative history need not convert this into a summary judgment motion. The Court can take judicial notice of the legislative history of the Act which has been included in the appendix. See Territory of Alaska v. American Can Co., 358 U.S. 224, 226-27 (1959) (taking judicial notice of legislative history); C.I.R. v. Bilder, 289 F.2d 291, 298 (3d Cir. 1961) ("courts will take 'judicial notice' of legislative history.") (reversed on other grounds by C.I.R. v. Bilder, 369 U.S. 499 (1962)); John Doe I v. Roman Catholic Diocese of Galveston-Houston, 2007 WL 2817999, *23 n.30 (S.D.Tex. Sept. 26, 2007) (citing American Can Co. and taking judicial notice of legislative facts).

**B.  The Legislature Clearly Expressed Its Intent to Apply the Act Retroactively**.

>  **1.  The Federal Test - Clear Intent.**  The Third Circuit has explained that

"congressional enactments will not be construed to have retroactive effect unless their language

requires this result."  Lieberman v. Cambridge Partners, LLC, 432 F.3d 482, 488 (3d Cir. 2005)

(internal punctuation omitted).[4]  A two part test determines whether a statute should apply

retroactively.  Id.  "At the first stage, a court must determine if Congress has expressly prescribed

the statute's intended reach."  Id.  This intent requirement "helps ensure that Congress itself has

determined that the benefits of retroactivity outweigh the potential for disruption or unfairness."

Landgraf, 511 U.S. at 268.

> Requiring clear intent assures that Congress itself has affirmatively considered the
> potential unfairness of retroactive application and determined that it is an acceptable price
> to pay for the countervailing benefits. Such a requirement allocates to Congress
> responsibility for fundamental policy judgments concerning the proper temporal reach of
> statutes, and has the additional virtue of giving legislators a predictable background rule
> against which to legislate.

Id. at 272-73.  If the legislature has clearly expressed its intent, "the inquiry ends, and the court

enforces the statute as written."  Lieberman, 432 F.3d at 488.  The second step is never reached.

Id.

>  **2.  The Intent of the Legislature is Clear.**  Applying these governing principles

to a state legislature, in the case at bar the Child Victim's Act clearly and unequivocally

demonstrates the General Assembly's unanimous intent to apply it retroactively.  Its retroactivity

provision states that -

---

[4]  The Delaware Supreme Court requires the same.  See Hubbard v. Hibbard Brown &
Co., 633 A.2d 345, 354 (Del. 1993) ("Delaware courts have recognized the general principle that
statutes will not be retroactively applied unless there is a clear legislative intent to do so."); see
Artisan Water Co. v. Gov't of New Castle County, 1983 WL 17986, *10 (Del.Ch. Aug. 4, 1983)
(applying a statute retroactively "because of the clear legislative intent").

> For a period of two years following the effective date of this bill, victims of child sexual abuse that occurred in this State who have been barred from filing suit against their abusers by virtue of the expiration of the former civil statute of limitations, shall be permitted to file those claims in the Superior Court of this State.

10 Del.C. § 8145(b).  As the Synopsis to the Bill also demonstrated and stated, "[t]his Bill ... provides a two-year "window" in which victims can bring a civil action in cases previously barred by the current statute." (A103).  Finally, as the debates found in the legislative history further demonstrate, it is clear that the General Assembly intended the Act to be retroactive since so many institutional representatives attacked that specific provision repeatedly. (A160,163,170, 183,317)  The legislature's intent to retrospectively apply the Act is clear and the governing legal test has been satisfied.  The Court should hold that the Act applies retrospectively in accord with clear legislative intent.

  **C.  The U.S. Supreme Court Has Repeatedly Held That Such Retroactive Civil Legislation Does Not Violate Due Process.**  Thus the federal constitutional issue has to be faced.  Because of its retroactive application, does the Act violate some fundamental right found in the U.S. Constitution or impact some suspect class?

  The defendants main claim during legislative debates (A160,163,170,183,317) and throughout the country in similar cases has been that such legislation violates fundamental Due Process.  However, such a claim fails in light of repeated U.S. Supreme Court precedent to the contrary.  First, as the Supreme Court stated 130 years ago in the civil context, "there is no constitutional inhibition against retrospective laws."  Blount v. Windley, 95 U.S. 173, 180 (1877).  Such laws "are often beneficial, and sometimes necessary."  Id.  "Where they violate no provision of the Constitution of the United States, there exists no power in this court to declare them void."  Id.; see Curtis v. Whitney, 80 U.S. 68, 70 (1871) ("That a statute is not void because it is retrospective has been repeatedly held by this court.")  Since that time, the Court has regularly

9

and consistently held that retroactive civil legislation does not violate Fourteenth Amendment Due Process.

Second, in Campbell v. Holt, 115 U.S. 620 (1885), in the civil context, the Supreme Court was faced with a newly enacted provision of the Texas constitution which revived a time barred breach of contract claim, as well as other civil claims. The defendants claimed that because the previous statute of limitations had expired, this Texas law violated Due Process. The Supreme Court disagreed and held that it is well within the legislature's prerogative to retroactively revive time-barred civil claims. Id. at 627-28.

In support of its holding the Court observed that a statute of limitations defense is "a purely arbitrary creation of the law, [and] fell with the repeal of the law on which it depended." Id. at 628. Such limitations periods "are founded in public needs and public policy," and "are arbitrary enactments by the law-making power." Id. Accordingly,"[i]t violates no right of [a party], therefore, when the legislature says time shall be no bar, though such was the law when the contract was made. The authorities we have cited, especially in this court, show that *no right is destroyed when the law restores a remedy which had been lost*." Id. (emphasis added).

Third, 60 years later, again in the civil context, in Chase Securities Corp. v. Donaldson, 325 U.S. 304 (1945), the Supreme Court addressed the constitutionality of a newly enacted Minnesota securities law which abolished a civil statute of limitations and allowed a plaintiff to pursue securities claims that previously had been barred by the prior limitations period. The Court looked to its earlier opinion in Campbell where it framed its earlier holding as follows -

> where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, *restore to the plaintiff his remedy, and divest the defendant of the statutory bar.*

Chase Securities, 325 U.S. at 311-12 (emphasis added). The Court stated that Campbell "has

10

long stood as a statement of the law of the Fourteenth Amendment" and ultimately upheld the

newly enacted Minnesota law.  Id.

     The Chase Securities Court also analyzed and discussed the foundations of its earlier

opinion.  "Statutes of limitations find their justification in necessity and convenience rather than in

logic.  They represent expedients, rather than principles."  Id. at 314.

> They have come into the law not through the judicial process but through legislation.
> They represent a public policy about the privilege to litigate.  Their shelter has never been
> regarded as what now is called a 'fundamental' right or what used to be called a 'natural'
> right of the individual.  He may, of course, have the protection of the policy while it exists,
> but *the history of pleas of limitation shows them to be good only by legislative grace and
> to be subject to a relatively large degree of legislative control*.

Id. (emphasis added) (internal footnote omitted).  The Court  found that "as a matter of

constitutional law ... statutes of limitations *go to matters of remedy*, not to destruction of

fundamental rights," id. (emphasis added), and refused to place such legislatively created technical

defenses on the same footing as fundamental rights.  Id. at 315.  "[C]ertainly it cannot be said that

lifting the bar of a statute of limitations so as to restore a remedy lost through mere lapse of time

is per se an offense against the Fourteenth Amendment."  Id. at 316.  Accordingly, the

"Fourteenth Amendment does not make an act of state legislation void merely because it has some

retrospective operation."  Id. at 315.

     Fourth, 30 years later, in International Union of Electrical, Radio and Machine Workers,

AFL-CIO Local 790 v. Robbins, 429 U.S. 229 (1976), the Court addressed newly enacted

Congressional legislation which amended Title VII and revived a time-barred civil race

discrimination claim.  The Court looked to Chase Securities and quickly resolved the retroactivity

issue and upheld the law, observing that "we think that Congress might constitutionally provide

for retroactive application of the extended limitations period which it enacted."  Id. at 450-51.

     Last, since that time, the Supreme Court has continued to recognize the power of

legislatures to enact laws with retroactive effect in the civil context.  See, e.g. Plaut v. Spendthrift
Farm, Inc., 514 U.S. 211, 229 (1995) (noting that a statute of limitations "can be extended,
without violating the Due Process Clause, after the cause of the action arose and even after the
statute itself has expired."); I.N.S. v. CYR, 533 U.S. 289, 316 (2001) ("it is beyond dispute that
... Congress has the power to enact laws with retrospective effect").  This longstanding rule
obviously governs the outcome of our present case and dictates that the Act does not violate the
Due Process Clause.[5]

**D.  Numerous Other Federal and State Courts Have Upheld Retroactive Childhood
Sexual Abuse Civil Legislation From Due Process Attacks.**  If more clarity is needed, this
precedent has been applied specifically in the context of retroactive child abuse legislation similar
to the Delaware statute under examination.  Both federal and state courts across the country have
upheld retroactive provisions of childhood sexual abuse statutes similar to Delaware's, despite
constitutional challenge.

   **1.  California.**  The California state courts have repeatedly upheld various
retroactive provisions of their childhood sexual abuse statutes against state and federal
constitutional challenges.  See Liebig v. Superior Court, 257 Cal.Rptr. 574, 578 (Cal. App. 1989)
(holding that the Legislature had the power to expressly revive time-barred civil common law
causes of action); Lent v. Doe, 47 Cal.Rptr.2d 389, 392-93 (Cal. App. 1995) (upholding the
Liebig decision over a constitutional challenge); Tietge v. Western Province of the Servites, Inc.,
64 Cal.Rptr.2d 53, 56 (Cal. App. 1997) (holding that it is well within the legislature's "power to
retroactively revive a cause of action for childhood sexual abuse time-barred under the prior

---

   [5]  A different rule applies to retrospective criminal legislation.  See, e.g. Stogner v.
California, 539 U.S. 607, 616-33 (2003) (state laws which revive time-barred criminal
prosecutions violate the Ex Post Facto clause).

statute of limitations").

        **a. Window Provision.** Like Delaware, in 2003 the California legislature enacted a retroactive one year civil window which revived time-barred claims for a one year period. See Cal. Civ. Proc. Code § 340.1(c) (West 2007).

        **2. Minnesota.** Similarly, the Court of Appeals of Minnesota has held that retroactive childhood sexual abuse provisions enacted by the Minnesota legislature did not violate the state or federal constitutions. K.E. v. Hoffman, 452 N.W.2d 509, 512-14 (Min.App. 1990). That court specifically held that "the legislature did not impair respondents' due process rights by enacting [the retroactive statute] which lifted the limitations bar and revived appellant's claim against them." Id. at 513. Thus, it "meets constitutional muster." Id. at 515.

        **a. Window Provision.** Also like Delaware, the Minnesota legislature has enacted several similar one year revival window provisions. See H.D. v. White, 483 N.W.2d 501, 502 (Minn.App. 1992) (discussing several of these windows).

        **3. South Dakota.** In the same way, the Supreme Court of South Dakota has held that the South Dakota childhood sexual abuse statute was to be applied retroactively in accord with legislative intent. Stratmeyer v. Stratmeyer, 567 N.W.2d 220, 222-224 (S.D. 1997). In doing so, the court noted that "the Legislature is the final arbiter of public policy, and it has clearly established South Dakota's public policy in these statutes," and that public policy was entitled to deference. Id. at 224.

The South Dakota federal court subsequently also upheld the retroactive provisions of the South Dakota statute over due process and other federal constitutional challenges. Delonga v. Diocese of Sioux Falls, 329 F.Supp.2d at 1101-02. In doing so, that federal court noted that the U.S. Supreme Court "has not regarded the shelter afforded by a statute of limitations as a vested

13

fundamental right." Id. at 1101 (citing <u>Chase Securities</u>, <u>supra</u>; <u>Plaut</u>, <u>supra</u>). In light of this long established law, the district court found defendants' claims to the contrary to be "particularly unpersuasive." <u>Id.</u> at 1102.

      **4. Vermont**. The federal court in Vermont also has upheld the Vermont legislature's retroactive statutory provisions over due process and other federal constitutional challenges. <u>Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc.</u>, 839 F.Supp. 275, 280-81 (D.Vt. 1993). The district court specifically looked to the Supreme Court's opinions in <u>Chase Securities</u>, <u>supra</u>, and <u>International Union</u>, <u>supra</u>, as conclusively resolving the due process issue. <u>Id.</u> at 280-81. Thereafter, the Supreme Court of Vermont had no problem applying the retroactivity provisions of its sexual abuse laws. <u>See</u> <u>Earle v. State</u>, 743 A.2d 1101 (Vt. 1999).

      **5. Kansas.** Finally, the Supreme Court of Kansas also has held that the legislature may retroactively revive childhood sexual abuse claims without violating due process. <u>Shirley v. Reif</u>, 920 P.2d 405, 412-13 (Kan. 1996). The court explained that revival was proper because "the plaintiffs' claims were only barred by a procedural statute of limitations which may be amended at any time by the legislature." <u>Id.</u> Thus, a plaintiff's "once-dead claim" is properly revived as long as it is filed within the parameters set by the legislature. <u>Id.</u>

      **6. Summary.** So federal and state courts in five states have specifically rejected as "particularly unpersuasive" <u>Delonga</u>, 329 F.Supp.2d at 1102, the defense attack on a civil window which revises the statute of limitations and revives claims of childhood sexual abuse. This Court should become the next jurisdiction to rule that no fundamental vested due process right is denied by Delaware's newly enacted retroactive legislation.

      **E. The Same Principle Has Been Applied in Agent Orange Litigation.** Delaware and New York also have applied this principle to enact retroactive legislation providing relief to

14

victims of Agent Orange.

The Delaware General Assembly has a proud tradition of helping innocent victims when the statute of limitations would otherwise fail them. For example, in 1983 the General Assembly enacted 10 Del.C. § 8131, to help Vietnam War veterans exposed to Agent Orange who were otherwise barred from bringing claims by the prior statute of limitations. The statute created a six month retroactive look back window to revive old claims. Id. at § 8131(b). This legislation was never struck down on any basis. See Bendix Corp. v. Stagg, 486 A.2d 1150, 1153 (Del. 1984) (discussing the statute); Brown v. E.I. DuPont De Nemours and Co., 820 A.2d 362, 370 (Del. 2003) (same).

The New York legislature also previously enacted a similar retroactive two year discovery window to help Agent Orange victims. N.Y. C.P.L.R. § 214-b (McKinney 2007). The Eastern District of New York later upheld that statute over both federal and state constitutional challenges. In re Agent Orange Product Liability Litigation, 597 F.Supp. 740, 811-13 (E.D.N.Y. 1984). Citing Chase Securities, supra, and Campbell, supra, that federal court held that "[s]tate statutes reviving time-barred actions are not prohibited by the due process clause of the Fourteenth Amendment." Id. at 811. Under state law, the court also noted "the state legislature's wide power to extend or revive a cause of action." Id. at 812. Indeed, "[t]his is a classic instance of the granting of legislative relief in a situation where the arbitrary application of the statute of limitations would work injustice." Id. (quoting McCann v. Walsh Construction Co., 123 N.Y.S.2d 509, 514 (N.Y. App. 1953)).

As this New York federal court so appropriately declared, this precedent also should be applied by the District of Delaware herein. It was for the General Assembly to make the policy choice to aid victims like plaintiff and to reject the claims of the insurance industry (A199-206,

15

259-64), and church lobbyists, who included defense counsel Mr. Reardon and Mr. Flynn. (A159-62, 162-77, 178-86, 252-54, 317).  Defendants would have this Court subvert the judicial role and become a super legislature.

**F.  Retroactive Civil Legislation Also Has Been Upheld in At Least Nine Other Contexts In Addition To Agent Orange Victims.**  Applying the same principles stated seven times by the U.S. Supreme Court, in at least nine other civil contexts retroactive civil legislation duly enacted by Congress or state legislatures has been upheld by 30 state and federal courts across the country.  Some of this retroactive legislation is addressed below.

       **1.  Student Loans.**  Seven courts have ruled that Congress appropriately enacted a retroactive law, 20 U.S.C. § 1091a, removing the statute of limitations defense in the area of defaulted student loans.  See, e.g. U.S. v. Hodges, 999 F.2d 341, 342 (8th Cir. 1993) (per curiam); U.S. v. Phillips, 20 F.3d 1005, 1007-08 (9th Cir. 1994) (per curiam); U.S. v. Glockson, 998 F.2d 896, 897-98 (11th Cir. 1993) (per curiam); U.S. v. McLaughlin, 7 F.Supp.2d 90, 91 (D.Mass. 1998); U.S. v. Smith, 862 F.Supp. 257, 260-61 (D.Hawaii 1994); Sibley v. U.S. Dept. of Educ., 913 F.Supp. 1181, 1188-89 (N.D.Ill. 1995); U.S. v. Hargrove, 2007 WL 2811832, *4 (W.D.Pa. Sept. 24, 2007).

       **2.  Civil Rights.**  As discussed above, Congress also has enacted retroactive civil legislation reviving time-barred claims in the Title VII arena, which has been upheld over federal constitutional challenge.  See International Union, supra; Davis v. Valley Distributing Co., 522 F.2d 827, 830-32 (9th Cir. 1975).

       **3.  Toxic Torts.**  Retroactive toxic tort revival statutes also have been upheld in four states.

       **a.  New York.**  In New York, the Toxic Tort Revival Act, revived and

provided a one year window for previously time-barred claims arising out of exposure to diethylstilbestrol, tungsten-carbide, asbestos, chlordane or polyvinylchloride.  See Piccirelli v. Johns-Manville Sales Corp., 128 A.D.2d 762 (N.Y.A.D. 1987).  That Act was upheld repeatedly by New York Courts over both state and federal constitutional challenges.  See Hymowitz v. Eli Lilly and Co., 539 N.E.2d 1069, 1079-80 (N.Y. 1989); Burdick v. Afrimet-Indussa Inc., 138 Misc.2d 598, 606-07 (N.Y.Sup. 1988); Hymowitz v. Eli Lilly and Co., 136 Misc.2d 482, 485-89 (N.Y.Sup. 1987).

       **b.  Massachusetts.**  The Supreme Judicial Court of Massachusetts also has upheld an asbestos revival statute over state and federal constitutional challenges.  City of Boston v. Keene Corp., 547 N.E.2d 328, 333-35 (Mass. 1989).  In the course of its analysis, the court noted that the legislature was entitled to "considerable deference" in seeking to address and remedy such weighty issues related to the "'fundamental welfare' of our citizens."  Id. at 334.

       **c.  Kansas.**  The Kansas Supreme Court also has upheld a revival statute for exposure to asbestos and other toxins over both state and federal constitutional challenges.  Harding v. K.C. Wall Products Inc., 831 P.2d 958, 967-69 (Kan. 1992).  The court noted that such a statute "is an expression of legislative public policy, is procedural, and may be applied retroactively when the legislature expressly makes it so."  Id. at 969.

       **d.  Louisiana.**  Lastly, the Eastern District of Louisiana has upheld Louisiana's asbestos abatement revival statute, LA Rev. Stat. Ann. § 9:5644 (West 2007), over both federal and state constitutional challenges, noting that this legislative act "falls specifically within the scope of the Louisiana Legislature to adjust time periods affecting the imposition of liability for past acts."  Security Homestead Ass'n v. W.R. Grace & Co., 743 F.Supp. 456, 459-60 (E.D.La. 1990).

**4. Insurance.**

      **a. California.** California courts have upheld legislation which revived for one year previously time-barred insurance claims arising out of the 1994 Northridge earthquake. <u>See, e.g.</u> <u>20th Century Insur. Co. v. Superior Court</u>, 109 Cal.Rptr.2d 611, 623-24, 631-33 (Cal. App. 2001); <u>Hellinger v. Farmers Group, Inc.</u>, 111 Cal.Rptr.2d 268, 278-83 (Cal. App. 2001). The courts there have observed that "in response to 'reports of rampant mishandling of insurance claims by insurers,'" <u>Ashou v. Liberty Mut. Fire Ins. Co.</u>, 41 Cal.Rptr.3d 819, 827 (Cal. App. 2006), "the Legislature took action to advance the public interest in protecting insureds mistreated by their insurers *at a time when the insureds were most vulnerable*." <u>20th Century Insur.</u>, 109 Cal.Rptr.2d at 633 (emphasis added). The Ninth Circuit later held that this legislation passed muster under both the U.S. and California constitutions. <u>Campanelli v. Allstate Life Ins. Co.</u>, 322 F.3d 1086, 1100-01 (9th Cir. 2003).

      **b. Connecticut.** Similarly, in Connecticut, a retroactive uninsured motorist statute has been upheld over various federal and state due process challenges. <u>Serrano v. Aetna Ins. Co.</u>, 664 A.2d 279, 283-90 (Conn. 1995).

      **5. Wrongful Death.** Both New Jersey and Minnesota have enacted legislation which retroactively revived time-barred wrongful death claims, actions which survived state and federal due process scrutiny. <u>See</u> <u>Short v. Short</u>, 858 A.2d 571, 574-76 (N.J.Super.A.D. 2004); <u>Nachtsheim v. Wartnick</u>, 411 N.W.2d 882, 887-88 (Minn.App. 1987) (overruled on other grounds by <u>Powell v. Anderson</u>, 660 N.W.2d 107 (Minn. 2003)).

      **6. Products Liability.** In the products liability arena, applying Oregon law, the Fourth Circuit has upheld, under the state and federal constitutions, products liability legislation which revived time barred claims. <u>Shadburne-Vinton v. Dalkon Shield Claimants Trust</u>, 60 F.3d

1071, 1077 (4th Cir. 1995).

       **7. Personal Injury.**  Legislation which retroactively revived personal injury claims has been applied and upheld in Michigan, Georgia and Rhode Island on both state and federal due process grounds.  See Pryber v. Marriott Corp., 296 N.W.2d 597, 600-01 (Mich. App. 1980); Vaughn v. Vulcan Materials Co., 465 S.E.2d 661, 662 (Ga. 1996); Twomey v. Carlton House of Providence, Inc., 320 A.2d 98, 103 (R.I. 1974).

       **8. Medical Malpractice.**  Minnesota has done the same in the medical malpractice context on federal constitutional grounds.  Gomon v. Northland Family Physicians, Ltd., 645 N.W.2d 413, 415, 419-20 (Minn. 2002).

       **9. Paternity.**  Last, Michigan and Hawaii have enacted retroactive paternity claim laws, which have been upheld on federal constitutional and state law grounds.  See Heck. v. McConnell, 418 N.W.2d 678, 679 (Mich. App. 1987) (per curiam); Doe v. Roe, 677 P.2d 468, 470-71 (Hawaii 1984).

      **G. The Act Does Not Violate Due Process.**  As discussed in Argument **II.C.** above, for 130 years the Supreme Court has explicitly held seven times that retroactive civil legislation which revives previously time-barred claims does not violate Fourteenth Amendment Due Process.  See Campbell, 115 U.S. at 627-28; Chase Securities, 325 U.S. at 311-12, 314-15; International Union, 429 U.S. at 450-51; Plaut, 514 U.S. at 229.  In the same way, as discussed at length in subsections D.-F. above, federal and state courts across the country have repeatedly held that such legislation does not implicate federal due process concerns.  Courts in five states have so held in the child abuse context, and 31 courts have similarly ruled in ten other contexts.

      The Act does not interfere with vested rights to real or personal property.  See Campbell, 115 U.S. at 622-29.  Nor does it subject anyone to new legal liability.  See Chase Securities, 325

U.S. at 316.  Rather, raping and sexually abusing young children has always been illegal.  Indeed,

defendants implicitly admit this in their Answers when they admitted that they had a duty to

protect children from such child abuse. (See Diocese & Church Ans. ¶¶ 39, 40, 41, 24, 128, 156

see ¶¶ 15-17, A34,35,38,53,58,72,73,75,76,88,92).  Thus, the situations affected by this statute

are not such that any defendant's "conduct would have been different if the present rule had been

known and the change foreseen."  Id.

Instead, the state legislature used the Act to restore a remedy lost through the passage of

time.  As a matter of law, "it cannot be said that lifting the bar of a statute of limitation so as to

restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth

Amendment."  Id.  As the Supreme Court has explained,

> Assuming that statutes of limitation, like other types of legislation, could be so
> manipulated that their retroactive effects would offend the Constitution, *certainly it
> cannot be said that lifting the bar of a statute of limitations so as to restore a remedy lost
> through mere passage of time is per se an offense against the Fourteenth Amendment*.

Id. at 315-16; International Union, 429 U.S. at 243-44 (emphasis added).

As a result, the Act simply does not violate due process.

## III.    THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

### A.  The Supreme Court Has Held That Retroactive Civil Legislation Does Not

**Violate Equal Protection.**  Neither does the statute fail because it implicates some fundamental

right under the Equal Protection Clause.  At least eight courts have rejected such an argument in

analogous contexts based upon the same governing precedent from the U.S. Supreme Court.

Initially, in addition to its authoritative due process holding, in Chase Securities, 325 U.S.

at 309, the Supreme Court held that the retroactive statute at issue also passed constitutional

muster under the equal protection clause.  The Court stated that the "statute on its face is a

general one, applying to all similarly situated persons or transactions." Id.  The Supreme Court

also explained that even if the statute was motivated by a particular class of cases, that "would not

establish that a general act such as we have described would deny equal protection." Id.  The

lower courts have applied this ruling.

      **1. Toxic Torts.**  In the limitations revival context, the Supreme Judicial Court of

Massachusetts held that "our analysis of the due process claim is equally dispositive of the

defendants' equal protection challenge ... under the Massachusetts Constitution." City of Boston,

547 N.E.2d at 332 n.10; see id. at 331 n.5 (noting the equal protection claim is "subsidiary" to the

due process analysis).[6]  The New York Supreme Court also explained that "[m]any of the same

concepts relevant to the due process analysis are applicable to defendants' equal protection

challenge." Hymowitz, 136 Misc.2d at 487.

      The Court of Appeals of New York has rejected similar equal protection challenges,

finding that such laws do not burden any fundamental right or any suspect class.  Hymowitz, 539

N.E.2d at 1080.  Instead, that highest court found these laws to be well within the legislature's

discretionary authority to rationally address problems affecting "economics and social welfare."

Id.; see Burdick, 138 Misc.2d at 606-07; Hymowitz, 136 Misc.2d at 487-89.  The Eastern District

of Louisiana also has held the same, finding that state's asbestos revival statute violated neither

state nor federal equal protection principles.  Security Homestead, 743 F.Supp. at 459.

      **2. Student Loans.**  Similar equal protection challenges to retroactive abolition of

statutes of limitations in the student loan context have been rejected as well.  See, e.g. Sibley v.

---

    [6] The Massachusetts courts interpret state and federal equal protection identically.  See
Bracket v. Civil Service Com'n, 850 N.E.2d 533, 545 (Mass. 2006) ("The standard for equal
protection analysis under our Declaration of Rights is the same as under the Federal
Constitution.").  Due process analysis is "comparable" as well.  City of Boston, 547 N.E.2d at
332 n.8.

U.S. Dept. of Educ., 913 F.Supp. at 1189; Chatmon v. U.S. Dept. of Educ., 2003 WL 21501919,

*6 (N.D.Tex. June 24, 2003).

   **B.  Rational Basis Is The Appropriate Standard of Review.**  Laws which do not

"burden a fundamental right or target a suspect class" are to be upheld if they bear "a rational

relation to some legitimate end."  Ramsgate Court Townhome Ass'n v. West Chester Borough,

313 F.3d 157, 160 (3d Cir. 2002).  Because the Act bears none of the hallmarks of legislation

subject to heightened review, rational basis scrutiny applies.

       **1.  No Suspect Class is Burdened.**  First, the Act cannot be said to target any

suspect class.  It allows lawsuits by all individuals who were sexually abused as minors by adults.

See 10 Del.C. § 8145(a).  It applies to all "public" and "private" entities alike.  See 10 Del.C. §

8145(b).  It permits all persons who are falsely accused to recover attorneys fees under the same

standard.  See 10 Del.C. § 8145(c).  It approaches the widespread problem of childhood sexual

abuse with a fair and even hand.  Like the statute upheld by the Supreme Court in Chase

Securities, the "statute on its face is a general one, applying to all similarly situated persons or

transactions."  325 U.S. at 309.

       **2.  No Fundamental Rights are Burdened.**  Second, the Act also cannot be said

to burden a fundamental right.  As already discussed, the Supreme Court has held that statutes of

limitations have never "been regarded as what now is called a 'fundamental' right or what used to

be called a 'natural' right of the individual." Id. at 314.  Continuing, the Supreme Court has held

that "as a matter of constitutional law ... statutes of limitations go to matters of remedy, not to

destruction of fundamental rights," id. (emphasis added), and it refused to place such legislatively

created technical defenses on the same footing as fundamental rights.  Id. at 315.

   Moreover, that the Act removes a tort defense is insufficient to raise any fundamental right

22

concerns. As the Third Circuit has helpfully explained in the mass tort context -

> the nature of the right to assert a particular defense in a tort action is not among those characterized as "fundamental." It is not included in the field of human rights that touches on personal liberty, an area of special concern to the courts. Nothing inherent in the right to a tort defense lends itself to demand more scrupulous review than the other social and economic matters traditionally examined under the rational relationship test.

In re Asbestos Litigation, 829 F.2d 1233, 1239 (3d Cir. 1987). Accordingly, this Court should take its lead from the Third Circuit and rule that the loss of a tort defense does not implicate any fundamental right of the defendants. If this is the law in the mass toxic tort context it should also be the law in the context of the mass epidemic of childhood sexual abuse which recently has been exposed in this country. (A130, 197, 315)

**C. The Rational Basis Standard is Easily Met.** Accordingly, rational basis scrutiny applies, meaning that the Act "must be sustained if [it is] rationally related to a legitimate governmental interest." Id. at 1238. The burden here is on defendants. "The party alleging an equal protection violation has the burden of showing the irrationality of the classification drawn by the statute." U.S. v. Pollard, 326 F.3d 397, 407 (3d Cir. 2003). They must "convince the court that no set of facts rationally could justify the classification." Id. at 408. The defendants simply as a matter of law cannot meet this burden.

First, "[a]s a general rule, legislatures are presumed to have acted within their constitutional power." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (internal punctuation omitted); see Ramsgate, 313 F.3d at 160 ("[w]e presume such an ordinance is valid."). "Legislation enjoys a presumption of validity, and the [party challenging the law] must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." U.S. v. Pollard, 326 F.3d at 407. Second, the "court may [even] hypothesize the motivations of the legislature to find a legitimate objective promoted by the provision under attack." Id. at 408

(internal punctuation omitted).   Third, "in our review we are not limited to considering only the

goal stated by the legislative body.  We are free to consider any conceivable legislative purpose so

long as it reasonably could have been entertained by the legislature."  Ramsgate, 313 F.3d at 160

(3d Cir. 2002) (internal citation omitted).

    In addition, the courts and the Third Circuit have long recognized that the legislature is

entitled to deference in its policy decisions.

> [I]n a democracy the legislature may be the more appropriate branch to draw
> classifications based on public policy.  As a popularly elected body, the legislature is in a
> position to tap the thinking of its constituency and has the resources to secure data
> generally not available to the courts.

In re Asbestos Litigation, 829 F.2d at 1240.  "States exercise considerable latitude to accomplish

fundamental shifts in policy by judicial action as well as by legislation."  Id. (citing cases and

statutes addressing the abolition of contributory negligence and substitution of comparable

negligence).  As the Third Circuit has explained -

> It is by now well established that in confronting a problem in the area of economic and
> social welfare, a state does not violate the Equal Protection Clause merely because the
> classifications drawn by its laws are imperfect.  "If the classification has some 'reasonable
> basis,' it does not offend the Constitution simply because the classification 'is not made
> with mathematical nicety or because in practice it results in some inequality.'"

Id.  Thus, a  "law will be sustained if it can be said to advance a legitimate government interest,

even if the law seems unwise or works to the disadvantage of a particular group, or if the

rationale for it seems tenuous."  Romer v. Evans, 517 U.S. 620, 632 (1996).

    The defense equal protection claim fails because there are many rational reasons justifying

the Act which are apparent from the Act itself as well as its legislative history. The Court need not

even hypothesize about justifications.  In the words of the Delaware Governor, these reasons

justifying the statute are "vitally important."  (Gov. Minner Press Release; A314).  They include

the following:

1.  To give survivors of childhood sexual abuse an opportunity to seek judicial relief.  (A131, 158).

2.  To help identify and bring to public account past and present active pedophiles.  (A319, 106).

3.  To enable parents to better protect their children by identifying and exposing pedophiles in the community.  (A106).

4.  To hold accountable institutions which hid or enabled child abusers.  (A 108, 319).

5.  To strengthen Delaware law relating to sex offenders.  (A314).

6.  To provide an incentive for victims to come forward. (A106).

7.  To encourage institutions to make the necessary preventative changes to protect children from pedophiles. (A108).

8.  To punish abusers. (A319).

9.  To enable those victims of sexual abuse who have repressed or dissociated from the memories of the abuse the opportunity to seek judicial relief. (A117).

10.  To prevent future sexual abuse by identifying and exposing pedophiles. (A117).

11.  To learn and expose the truth about institutions that hid or enabled child abusers through discovery of their records. (A158).

Accordingly, the Act does not violate equal protection since all these reasons are rational, legitimate and within the arena of economic and social welfare legislation.

## IV.  THE CHILD VICTIM'S ACT IS CONSTITUTIONAL AS WRITTEN UNDER THE SEPARATION OF POWERS DOCTRINE OF ARTICLE 3, § 1 OF THE U.S. CONSTITUTION.

Finally, as a makeweight defendants may argue that the Act also violates separation of powers principles.  See U.S.Const. Art. 3, § 1.  But on its face, the Act simply does not interfere with or attempt to reopen any final judgments rendered by the judicial branch which would be the proper basis for a separation of powers argument. Cf. Plaut, 514 U.S. at 226-33 (holding that

legislatively upsetting a final judgment violates the separation of powers doctrine).

Here in a precedent directly on point, the Supreme Court of Oregon has specifically upheld the legislature's right to retroactively revive previously time barred claims for childhood sexual abuse over a state constitutional separation of powers challenge. <u>A.K.H. v. R.C.T.</u>, 822 P.2d 135, 137 (Or. 1991).

Similarly, in the asbestos context, the Supreme Judicial Court of Massachusetts has held that a revival statute does not implicate separation of powers concerns because it did not attempt to reopen any final judgments. <u>City of Boston</u>, 547 N.E.2d at 335. That court also has noted that such concerns are subsumed within due process analysis. <u>Id.</u> at 331 n.5.

Accordingly, the Act also does not violate the separation of powers doctrine because it is not addressed to rescinding a final judgment rendered by a court of competent jurisdiction.

<u>CONCLUSION</u>

The Act as written violates no provision of the U.S. Constitution and the Court should grant judgment accordingly. The Act is appropriate social welfare legislation well within the powers of the Delaware General Assembly to address a troubling social ill.

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**RAEANN WARNER, ESQ. (#4931)**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
RW@NeubergerLaw.com

**JACOBS & CRUMPLAR, P.A.**

/s/ Robert Jacobs

26

**ROBERT JACOBS, ESQ. (#244)**
**THOMAS C. CRUMPLAR, ESQ. (#942)**
Two East Seventh Street, Suite 400
Wilmington, DE 19801
(302) 656-5445
Bob@JandCLaw.com
Dated: October 16, 2007          Tom@JandCLaw.com

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

October 16, 2007, I electronically filed this Pleading with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

> Anthony G. Flynn, Esquire
> Young Conaway Stargatt & Taylor LLP
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
> aflynn@ycst.com
>
> Mark Reardon, Esquire
> Elzufon Austin Reardon Tarlov & Mondell
> 300 Delaware Avenue, Suite 1700
> P.O. Box 1630
> Wilmington, DE 19899
> mreardon@elzufon.com
>
> Stephen P. Casarino, Esquire
> Casarino Christman & Shalk, P.A.
> 800 North King Street, Suite 200
> P.O. Box 1276
> Wilmington, DE 19899
> scasarino@casarino.com

> /s/ Stephen J. Neuberger
> **STEPHEN J. NEUBERGER, ESQ.**

/ Quill, Robert / Pleadings / Quill - Const as Written OB.final