# THE NEUBERGER FIRM

## ATTORNEYS AND COUNSELLORS AT LAW

TWO EAST SEVENTH STREET
SUITE 302
WILMINGTON, DELAWARE 19801-3707

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

THOMAS S. NEUBERGER, ESQUIRE
STEPHEN J. NEUBERGER, ESQUIRE
RAEANN WARNER, ESQUIRE
CHERYL A. HERTZOG, ESQUIRE*
            *(Licensed in PA and NJ only)

PHONE: (302) 655-0582
FAX: (302) 655-9329

February 4, 2008                                    **VIA CM/ECF**

The Honorable Sue L. Robinson
Lock Box 31
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

**RE:    Response In Opposition to Defendant DeLuca's Request to Seal His Deposition
          Quill v. Catholic Diocese of Wilmington, et al., C.A. No. 07-435 (SLR)**

Dear Judge Robinson:

        Rather than file his long overdue Rule 26 disclosures or even his similarly long overdue responses to plaintiff's first request for production of documents (see Tab A), defendant DeLuca has instead requested that the Court indefinitely seal his deposition testimony.[1]  This is plaintiff's response in opposition to the defense plea.

        **A.  DeLuca Has Failed to Demonstrate 'Good Cause.'**  The defense request to seal deposition testimony is governed by Fed.R.Civ.P. 26(c)'s "good cause" standard.  See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (noting that requests for protective orders and orders of confidentiality are both governed by the 'good cause' standard).

        The Third Circuit's most recent treatment of this issue was in Shingara v. Skiles, 420 F.3d 301 (3d Cir. 2005).  There, following the request of the defendant in that case, the district court sealed the deposition and discovery record to prevent the Philadelphia Daily News from gaining access to and writing newspaper stories about the case.  Id. at 304.  Following a thorough and comprehensive analysis, the Third Circuit struck down the sealing order, finding the evidence of good cause to be "nonexistent."  Id. at 308.

_____

        [1]  As review of the sister cases in state court reveals, such a request has become the defense standard operating procedure in these cases.

The Honorable Sue L. Robinson
February 4, 2008
Page 2


The burden of proving "good cause" is on the party seeking confidentiality. Id. at 306. "[T]here is good cause when a party shows that disclosure will result in a clearly defined, specific and serious injury." Id.[2] "[B]road allegations of harm are not sufficient to establish good cause." Shingara, 420 F.3d at 306.[3]

Like the defendant in Shingara, DeLuca also has utterly failed to meet his heavy burden. He has not shown (or even argued) that disclosure of his deposition testimony "will result in a clearly defined, specific and serious injury." Shingara, 420 F.3d at 306. DeLuca merely presents the Court with a vague, nebulous ipse dixit claim that somehow he could be prejudiced unless his deposition is sealed. Yet "the concern that the disclosure of discovery materials to the media could unduly prejudice [a defendant] is exactly the type of broad, unsubstantiated allegation of harm that does not support a showing of good cause." Id. at 307 (emphasis in original).

The types of information typically governed by confidentiality orders are trade secrets, financial records and the personnel records of third persons, not parties to the litigation. See Maloney v. Gordon, 2004 WL 1043202, *2 (D.Del. May 4, 2004). Admissions of child rape by a an admitted child rapist simply do not qualify.[4] Moreover even if they did, "[t]he equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir. 2001). Here, DeLuca cannot now claim that his testimony about years of raping an innocent young boy will be embarrassing to him and that he should be spared that embarrassment. As a matter of law, the doctrine of unclean hands mandates that such embarrassment of DeLuca's own making cannot serve as a weight in the equitable scale in favor of sealing his long delayed deposition about his years of despicable sexual abuse of an innocent young child. Id.

Additionally, even assuming arguendo that DeLuca had made a proper showing, consideration of the factors identified by the Third Circuit also dictates rejection of his efforts at secrecy. See Shingara, 420 F.3d at 306. First, "a court always must consider the public interest

---

[2] Accord Pansy, 23 F.3d at 786 ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.").

[3] Accord Pansy, 23 F.3d at 786 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not support a good cause showing).

[4] DeLuca admitted in his Answer that he sexually abused plaintiff. (D.I. 49 at ¶ 94). Ten days later, he flip-flopped and amended his Answer to deny ever sexually abusing plaintiff. (D.I. 50 at ¶ 94).

The Honorable Sue L. Robinson
February 4, 2008
Page 3

when deciding whether to impose a protective order." Id. at 308.  This case involves matters of
paramount public interest - the rape and sexual abuse of innocent young children by a convicted
child molester who raped young Delaware children for nearly 50 years.   "[T]here can be no
dispute that the prosecution of [a child molester] and the issue of child abuse are matters of public
concern."  Morgan By and Through Chambon v. Celender, 780 F.Supp. 307, 310 (W.D.Pa.
1992).  Plaintiff need not belabor this point.

       Relatedly, such information also is clearly important to public health and safety.  Next, this
information is being sought for proper purposes - the prosecution of this lawsuit.  Furthermore,
no third party privacy interests are being violated.  Lastly, as noted, due to his unclean hands,
DeLuca has no legitimate interest in avoiding the embarrassment of his own misconduct.

       Accordingly, for the aforementioned reasons, DeLuca has failed to meet his heavy burden
of demonstrating "good cause" to impose secrecy and seal his long delayed deposition.

       However, out of an abundance of caution, plaintiff will below discuss the long established
common law and First Amendment overlay which colors this area of the law and must be
considered in any decision to close out the public.

       **B.  The Common Law Right of Access.**[5]

              **1.  Introduction.**  "The existence of a common law right of access to judicial
proceedings and to inspect judicial records is beyond dispute."  Publicker Indus., Co. v. Cohen,
733 F.2d 1059, 1066 (3d Cir. 1984).  This right of access applies in both the criminal and civil
contexts.  Republic of the Philippines v. Westinghouse Elec. Co., 949 F.2d 653, 659-60 (3d Cir.
1991).  Indeed this right "antedates the Constitution," U.S. v. Criden, 648 F.2d 814, 819 (3d Cir.
1981), and is "firmly entrenched."  Bank of America National Trust and Savings Assoc. v. Hotel
Rittenhouse Assoc., 800 F.2d 339, 344 (3d Cir. 1986); see Republic of the Phillippines, 949 F.2d
at 659 (noting that the "common law right of access to judicial proceedings and judicial records is
firmly accepted in this circuit").

              **2.  The Presumption In Favor of Access.**  There is a "presumption in favor of
access to public records and documents, including judicial records and documents."  Bank of
America, 800 F.2d at 343 (internal punctuation omitted).  The public "right to access" is
grounded in "the public's right to know, which encompasses public documents generally, and the

_____

       [5]  In the interest of brevity, plaintiff will only address the common law right of access, and
not the equally long established First Amendment right which requires "a much higher showing"
before the public may be excluded.  See In re Cendant Corp., 260 F.3d 183, 198 n. 13 (3d Cir.
2001); Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1067-75 (3d Cir. 1984).

The Honorable Sue L. Robinson
February 4, 2008
Page 4

public's right to open courts, which has particular applicability to judicial records." U.S. v. Criden, 648 F.2d at 819.  As the Third Circuit has recognized, the "public's right of access to civil trials and records is as well established as that of criminal proceedings and records." Publicker, 733 F.2d at 1066.  The Third Circuit has cautioned against permitting "the expediency of the moment to overturn centuries of tradition of open access to court documents and orders." Bank of America, 800 F.2d at 345.

      **3.  The Interests Served by Public Access.**  The common law public right of access serves numerous functions.  It "acts as a valuable source of information in *civil cases that have a 'public' character*." Republic of the Philippines, 949 F.2d at 664 (emphasis added).  In such cases, the public has the right to know of matters "that could have criminal, not merely civil, implications." Id.  It "discourages parties from denying the existence of certain documents in subsequent litigation, thus encouraging greater integrity from attorneys and their clients." Id.  It "promotes public health and safety *by not allowing secrets hidden in court records to be shielded from public view.*" Id. (emphasis added).

      Furthermore, allowing public access to the court system, "reinforces the democratic ideals of our society," Republic of the Philippines, 949 F.2d at 664, and promotes "public respect for the judicial process." Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606 (1982).  It

> promotes informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system and the public perception of fairness which can be achieved only by permitting full public view of the proceedings.

Bank of America, 800 F.2d at 345 (internal punctuation omitted).  In the same way, public confidence in the judicial system is instilled.

> As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud.

Republic of the Philippines, 949 F.2d at 660.

      **4.  What the Public Right of Access Encompasses.**  In addition to the public's long recognized right to attend court proceedings themselves, see Richmond Newspapers Inc. v. Virginia, 448 U.S. 555, 580 n.17 (1980), this right extends far beyond merely attending trials.  "It includes [access to] transcripts, evidence, pleadings, and other materials submitted by litigants." U.S. v. Martin, 746 F.2d 964, 968 (3d Cir. 1984) (internal punctuation omitted).  Moreover, "[t]he common law right of access is not limited to evidence, but rather encompasses *all judicial records and documents.*" Id. (internal punctuation omitted) (emphasis added).  The right of access encompasses "all civil trials and records." Bank of America, 800 F.2d at 343.

The Honorable Sue L. Robinson
February 4, 2008
Page 5

     **5. The Presumption Against Confidentiality.** The Third Circuit has repeatedly expressed concern at the regularity with which confidentiality orders are approved by the district courts without explicitly weighing the public's interest in disclosure. See Pansy, 23 F.3d at 785; Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 n.11 (3d Cir. 1995); Shingara, 420 F.3d at 308.

> Disturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders or the countervailing public interests which are sacrificed by the orders.

Glenmede, 56 F.3d at 483 n.11.

> A troubling tendency accompanies the increasing frequency and scope of confidentiality agreements that are ordered by the court. These agreements often involve materials and information that is never even presented to the court. These agreements are reached by private parties and often involve materials and information that is never even presented to the court. With the signature of a federal judge, however, they are converted into a powerful means of maintaining and enforcing secrecy. Once signed, a confidentiality order, which has converted a private agreement into an order of the court, requires the court to use its contempt power to enforce the private agreement. Because they often involve information not in the control of the court *and may implicate public concerns*, confidentiality orders, when not subject to proper supervision, have a *great potential for abuse*. For this reason, judges should review such agreements carefully and skeptically before signing them.

Pansy, 23 F.3d at 785 n.14 (internal punctuation omitted) (emphasis added). Our Circuit "has made it clear that our 'strong presumption' of openness does not permit the routine closing of judicial records to the public." Miller v. Indiana Hospital, 16 F.3d 549, 551 (3d Cir. 1994).

     **6. The Balancing of Interests.** In light of the "strong presumption of access," Bank of America, 800 F.2d at 346, a confidentiality order may only be granted for "good cause shown." Shingara, 420 F.3d at 305 (citing Fed.R.Civ.P. 26(c)). This standard is discussed in section "A" above.

     **7. Even in Cases Involving Purely Private Parties, the Common Law Requires Public Access.** Importantly, the courts routinely find that the public right of access continues to be paramount even if the case involves solely private parties. See e.g. Bank of America National Trust and Savings Assoc. v. Hotel Rittenhouse Assoc., 800 F.2d 339, (3d Cir. 1986); Glenmede Trust Co. v. Thompson, 56 F.3d 476 (3d Cir. 1995); Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993); Littlejohn v. BIC Corp., 851 F.2d 673 (3d Cir. 1988); In re Cendant Corp., 260 F.3d 183 (3d Cir. 2001); Publicker Indus., Co. v.

The Honorable Sue L. Robinson
February 4, 2008
Page 6

<u>Cohen</u>, 733 F.2d 1059 (3d Cir. 1984).  The public right of access is in no way dependent upon the parties being private and not public.  <u>See, e.g.</u> <u>Pansy</u>, 23 F.3d at 788 (noting that when a case "involves issues ... of a public nature, and involves matters of legitimate public concern, that should be a factor heavily weighing against entering ... an order of confidentiality").

      **8.  The Findings Necessary to Exclude the Public From Presumptive Access.** However, the presumption of public access is not absolute.  <u>In re Cendant Corp.</u>, 260 F.3d at 194. "The party seeking to seal any part of a judicial record bears the *heavy burden* of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  <u>Miller</u>, 16 F.3d at 551 (emphasis added) "Absent a showing that a defined and serious injury will result from open proceedings, a protective order should not issue."  <u>Glenmede</u>, 56 F.3d at 485.  "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient."  <u>In re Cendant Corp.</u>, 260 F.3d at 194.

      "A party who seeks to seal an *entire* record faces an even heavier burden."  <u>Miller</u>, 16 F.3d at 551 (emphasis in original).  In such instances, in addition to specific findings, "compelling countervailing interests" must be found.  <u>In re Cendant Corp.</u>, 260 F.3d at 194.  Before sealing an entire record, a district court must "articulate[ ] the compelling countervailing interests to be protected, ma[k]e specific findings on the record concerning the effects of disclosure, and provide[ ] an opportunity for interested third parties to be heard," such as the media or interested members of the public.  <u>Miller</u>, 16 F.3d at 551.

      **C.  Conclusion.**  For the aforementioned reasons, the defense request to seal DeLuca's deposition should be denied.

Respectfully Submitted,

/s/ Stephen J. Neuberger

Attorney for Plaintiff

attachment

cc:     All counsel (via CM/ECF)
        Mr. Robert Quill (via E-Mail)

# Tab A

**Stephen J. Neuberger**

| | |
|---|---|
| **From:** | Stephen J. Neuberger |
| **Sent:** | Friday, February 01, 2008 9:55 AM |
| **To:** | 'scasarino@casarino.com' |
| **Cc:** | Thomas S. Neuberger; 'Thomas Crumplar'; Raeann Warner |
| **Subject:** | RE: Quill - Overdue Document Production |

Steve,

You have not responded to my e-mail of last Thursday, January 24, 2008 about your client's overdue response to plaintiff's first request for production of documents.

Also, we still have not received your client's long overdue Rule 26 disclosures.  In the Court's October 22, 2007 Order, Judge Robinson ordered that this information be immediately exchanged.  More than three months have now passed and we have not received this information from your client.

Your client's deposition is scheduled for Tuesday and Wednesday of next week.  His long delay in responding to his discovery obligations is interfering with my preparation.

When will I have all of this necessary and required, yet long overdue information?

-Steve

---

**From:** Stephen J. Neuberger
**Sent:** Thursday, January 24, 2008 6:51 PM
**To:** Sterphen P. Casarino Esq. (scasarino@casarino.com)
**Cc:** Thomas S. Neuberger; 'Thomas Crumplar'; Raeann Warner
**Subject:** Quill - Overdue Document Production

Steve,

Plaintiff served his first request for production on November 6th.  The Notice of Service was filed on December 14th (D.I. 55).  At the latest, these were due on January 14, 2008.  That was 10 days ago but we have not heard anything from you.

When can we expect to receive the duly requested documents?  At the latest, I need them by next Tuesday, January 29th to allow time for review and incorporation into your client's deposition beginning on February 5th.

Please let me know.

-Steve

***********************************
Stephen J. Neuberger, Esq.
The Neuberger Firm
Attorneys and Counsellors at Law
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582
Fax: 302-655-9329
E-Mail: SJN@NeubergerLaw.com