## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT QUILL,                                    )
                                                 )
        Plaintiff,                          )
                                                 )        C.A. No.: 07-435 SLR
   v.                                      )
                                                 )
CATHOLIC DIOCESE OF WILMINGTON,                  )
INC., a Delaware corporation;                    )
ST. ELIZABETH'S CATHOLIC CHURCH,                 )
a Delaware corporation;                          )
Rev. FRANCIS G. DELUCA, individually and         )
in his capacity; and                             )
Rev. MICHAEL A. SALTERELLI, in his               )
official capacity,                               )
                                                 )
        Defendants.                         )

## <u>DEFENDANT DELUCA'S MOTION TO PERMANENTLY SEAL DISCOVERY</u>

On February 4, 2008, the court issued an order sealing the deposition testimony of Fr. DeLuca for 30 days. If the parties could not agree to a confidentiality agreement, the court would choose which proposal to accept. Unfortunately, neither side has produced a "proposal" because they disagree on whether the deposition can be sealed.

At the conference before the court on February 20, 2008, plaintiff's counsel asked the court to consider unsealing so that he could share the deposition with attorneys and physicians treating other victims. The attorney for Fr. DeLuca indicated there was no problem with releasing portions of the deposition with regard to other cases, however wanted the court to continue to keep the deposition under seal so that it would not be released to the press. (Exhibit A)

It is the defendant's position that there is good cause for the deposition to be permanently

sealed and not released to the public. Actually, the defendant would request that all discovery currently under seal remain under seal. It is the defendant's position that the deposition transcript may be used by plaintiff's counsel with regard to other claims providing the deposition not be released for any other purpose.

BACKGROUND

This lawsuit alleges claims of molestation by Fr. DeLuca to plaintiff Quill when Quill was a minor. Prior to the deposition, a conference was held with the court concerning the depositions of the parties. With the approval of counsel, the court ordered that the deposition of Fr. DeLuca had to go forward on February 5 and 6, 2008 and the deposition of Mr. Quill had to be held on February 27 and 28, 2008. Prior to the deposition of defendant, the court issued its confidentiality order which would have been in effect until both depositions were taken. Based upon representations from plaintiff's attorney that plaintiff's medical testimony would be sensitive, the parties had agreed previously to seal the plaintiff's medical records even before they were received.

Plaintiff subsequently settled the case with the Diocese of Wilmington and St. Elizabeth's. The settlement did not involve Fr. DeLuca who was specifically excluded from settlement negotiations. The terms of the settlement are confidential. Plaintiff wants to dismiss the case against Fr. DeLuca but asked the court to issue an order as to whether the deposition should be sealed or unsealed. The defendant is willing to have the case against him dismissed providing the deposition remain sealed except for the limited purposes stated above. Should the court unseal the deposition, Fr. DeLuca wants to proceed with the litigation. The reason is because certain allegations were made by Quill in the Complaint and in his testimony before the Delaware Legislature which the defendant believes are inconsistent with Mr. Quill's medical

records and with the testimony of Fr. DeLuca. Further, Fr. DeLuca has raised affirmative

defenses relating to the constitutionality of the legislation involved in this case. A ruling would

effect the future cases that may be brought against him.

**I.    Discovery matters are private, not part of the public record and there is no**

**constitutional right to obtain information revealed in pretrial discovery.**

In *Seattle Times Company v. Rhinehart*, 467 US 20, 104 S. Ct. 2199, the Supreme Court

held there was no constitutional right to obtain information contained in pretrial discovery. The

court made it clear that discovery is broad in scope and permits a party to obtain information that

may or may not be relevant to the actual proceedings. Deposition testimony is not part of the

judicial record until introduced into evidence.

"Moreover, pretrial depositions and interrogatories are not public components of a civil
trial. Such proceedings were not opened to the public at common law, [citing case] and, in
general, they are conducted in private as a matter of modern practice. [citing authority] Much of
the information that surfaces during pretrial discovery may be unrelated, or only tangentially
related to the underlying cause of action. Therefore, restraints placed on discovered, but not yet
admitted, information are not a restriction on a traditionally public source of information."

The court noted that under liberal discovery rules, the purpose of discovery is to assist in

the preparation for trial and the settlement of disputed cases. The trial court has the authority to

issue protective orders. "Rule 26(c) confers broad discretion on the trial court to decide when a

protective order is appropriate and what degree of protection is required." However, the court

noted that discovery has potential for abuse and may "seriously implicate privacy interests of

litigants and third parties." The court also noted that discovery could produce information if

publically released, "could be damaging to reputation and privacy."

In *Gannett, Inc. v. DePasquale*, 443 US 368, 99 S Ct. 2898, Justice Burger commented:

"Similarly, during the last 40 years in which the pretrial processes have been enormously
expanded, it has never occurred to anyone, so far as I am aware, that a pretrial deposition or

pretrial interrogatories were other than wholly private to the litigants. A pretrial deposition does not become part of a 'trial' until and unless the contents of the deposition are offered in evidence."

In reviewing the _Seattle Times_ case, the third circuit in _Cipollone v. Liggett Group, Inc._, 785 F2d 1108 (3rd Circ. 1986) concluded that the first amendment considerations are irrelevant to protective orders and the only issue is whether the party seeking the protective order has good cause. In _Anderson v. Cryovac, Inc._, 805 F2d 1 (1st Circ. 1986) the court saw only three criteria that had to be considered: whether there has been a showing of good cause; the restriction was limited to discovery only; and, the order does not restrict dissemination obtained from other sources.

In _Hutchinson v. Luddy_, 581 A2d 578 (Pa Super 1990) the court noted that a newspaper is entitled to access the pleadings in the case. However, discovery matters are private and not public. The court held that discovery matters would be sealed and that the newspaper's right to know would not be effected. "...the trial will remain open to the public, and at that time all relevant and admissible evidence will not only be admitted but will be available for consumption". However, discovery matters were considered private and remained sealed.

The media serve a different purpose than a trial. The trial seeks the truth and relies only on relevant evidence. The media, of course, can report on anything it desires. By releasing a deposition which contains matters which may not be relevant to the litigation, the press creates its own factual scenario. The defendant has no recourse. For that reason, a private deposition which goes into many aspects of the case, many of which may never be heard by a jury, should not be released to the press as a matter of course because it is not part of the public components of a civil trial.

**II.    DeLuca has met the standards for sealing his deposition as set forth by the Third Circuit Court of Appeals.**

The Third Circuit has indicated that there are at least seven factors that the court should consider in deciding whether to seal discovery. *Shingara v. Skiles*, 420 F3rd 301 (3rd Circ. 2005); *Glenmede Trust Company v. Thompson*, 53F3rd 476 (3rd Circ. 1995); *Pansy v. Borough of Troudsburg*, 23F3rd 772 (3rd Circ. 1994). Those factors as set forth in *Shingara* are:

1. Whether disclosure will violate any privacy interests; 2.Whether the information is being sought for a legitimate purpose or for any improper purpose; 3.Whether disclosure of the information will cause a party embarrassment; 4.Whether confidentiality is being sought over information important to public health and safety; 5.Whether the sharing of information among litigants will promote fairness and efficiency; 6.Whether a party benefitted from the order of confidentiality is a public entity or official; and 7.Whether the case involves issues important to the public.

It is submitted, that a review of the factors supports the sealing of the deposition.

*1.    Whether disclosure will violate any privacy issues.*

The deposition of Fr. DeLuca dealt not only with issues intimate to him and explicit sexual behavior but also dealt with privacy interests of persons who are not parties to this litigation. A disclosure of those names to the public could be potentially embarrassing to them and to their family members. Any disclosure of Fr. DeLuca's activities that occurred 35 to 45 years ago are private in nature and exposure at this time would violate his privacy interests. The court should be aware that events relating to Fr. DeLuca's activities in Syracuse, New York in 2006 and 2007 by agreement of the parties were not discussed at the deposition. Therefore, the only matters here are events that occurred years ago.

2.    *Whether the information is being sought for a legitimate purpose or for an improper purpose.*

The information is already under seal and the plaintiff has agreed to settle the cases. Therefore, there is no legitimate purpose for releasing the information at this time. Plaintiff's counsel indicated that one of the reasons he wants the information is for use in other cases. The defendant has agreed that is a legitimate purpose and the deposition can be used for other cases where the Neuberger firm represents potential plaintiffs. However, there is no other legitimate purpose in exposing the deposition after settlement has been accomplished.

3.    *Whether disclosure of the information will cause a party embarrassment.*

Fr. DeLuca was candid at his deposition as related to the events that occurred between plaintiff and others. A disclosure of that information will seriously embarrass Fr. DeLuca at this time. It has been recognized that sexual conduct, although relevant for the litigation, need not be publically disseminated. In *Stalnaker v. Kmart Corporation*, 1996 WL 397563 (D. Kan. 1996) a sexual harassment suit, the court stated that discovery activities are "potentially embarrassing and annoying, both to the deponents and to defendant. The parties shall use such discovery, therefore only for purposes of this litigation and shall not disclose it to anyone outside this litigation."

4.    *Whether confidentiality is being sought over information important to public health and safety.*

There is no issue of public health and safety involved here. The events involved in this litigation occurred decades ago. The deposition testimony does not relate to any current activity. Fr. DeLuca is retired and living on a pension in New York. Since nothing in the deposition relates to current activity of Fr. DeLuca, there can be no public health or safety reasons to release the information.

5.      *Whether the sharing of information among litigants will provide fairness and efficiency.*

Once the case is resolved, there are no further litigants. Notwithstanding, the defendant does not object to the deposition being used by plaintiff's counsel in order to confer with other parties who have claims against Fr. DeLuca or the Diocese of Wilmington. With such an agreement, there is no need to unseal the deposition. A blanket release of Fr. DeLuca's testimony to the media has no bearing on information to other litigants in the case.

6.      *Whether a party benefitting from the order of confidentiality is a public entity or official.*

Fr. DeLuca is neither a public entity nor an official. He is a private citizen no longer permitted to perform priestly duties and he is living in Syracuse, New York.

7.      *Whether the case involves issues important to the public.*

It is arguable that there may be a public interest involved. It is submitted, however, since the events discussed in the deposition occurred such a long time ago they no longer have any issues important to the public. Its release will only serve sordid curiosity. Neither DeLuca nor Quill live in Delaware.

It is significant to note that *Shingara* involved public officials and public policy, neither of which are involved here. The *Pansy* court dealt with balancing release of the information against the Pennsylvania Right to Know Act. The court must balance the need for information against the injury that might result if uncontrolled disclosure is compelled. The *Pansy* court also noted that if a case involves private litigants and concerns matters of little legitimate interest to the public, that factor should weigh in favor of maintaining confidentiality. The court also considered whether the parties relied upon an original order of confidentiality. Although the

court's original order made it clear that it was a temporary order, the fact remains that Fr. DeLuca was candid and discussed matters which could have been withheld under his 5th Amendment Rights. Fr. DeLuca was willing to waive those rights in order to discuss other incidences in Delaware. However, those rights were not waived with regard to the New York events. In *Glenmede Trust*, the court stated that in the final analysis the court should be balancing the rights of private versus public interests.

It is submitted, that there is no legitimate reason why a discovery deposition which has not been introduced into evidence involving a case which apparently has settled and will be dismissed needs to be released to the public.

### III.   Other Delaware courts have stayed depositions in similar cases.

There are two other cases involving priest abuse pending in the Superior Court of the State of Delaware. In both cases the court has ruled that the depositions be sealed.

In *Whitwell v. Archmere Academy*, C.A. No. 07C-08-006, Judge Young ordered that all deposition testimony be maintained under seal and that only those associated with the litigation shall have access to the contents. The court specifically stated that "association with" does not include news media or similarly situated organizations or individuals. (Exhibit B)

In *Eden v. Oblates of St. Francis De Salles*, C.A. No. 04C-01-069, Judge Scott issued an order stating that the deposition of the priest would go forward but under seal until otherwise ordered by the court. The seal was lifted in part to allow plaintiff's experts to review the deposition. (Exhibit C)

As stated above, the defendant will permit the use of his deposition by plaintiff in other cases. If physicians or psychologists need to review the deposition in those cases, then the deposition may be referred by them. However, the sealing with regard to the press should remain

in effect.

**IV.    Should the court decide to unseal the deposition of Fr. DeLuca, the defendant requests that all discovery currently sealed be unsealed, that the deposition of Mr. Quill be taken and that the matter proceed to trial.**

The original deposition schedule permitted both the deposition of DeLuca and Quill to be taken within the 30 days of the stay order. DeLuca, therefore anticipated that he would have the testimony of Quill on February 27 and 28. Plaintiff settled his case with the Diocese of Wilmington and St. Elizabeth's with no participation of Fr. DeLuca. He was specifically excluded from the settlement discussions.

The deposition of Fr. DeLuca deals with the relationship between Quill and DeLuca. Because the deposition is under seal and cannot be revealed at this time, the defendant can only state that this relationship continued for many years through at least 1993. Quill has made allegations in his Complaint which are inconsistent with the testimony of Fr. DeLuca. Quill has made statements before the Delaware Legislature and in his Complaint relating to injuries which are inconsistent with medical records received through discovery. Should the court unseal only the depositions of Fr. DeLuca, and not the discovery records of Mr. Quill, the media would have only a small portion of documentation dealing with the claim.

<u>Fr. DeLuca is entitled to continue with the litigation.</u>

Rule 41 permits the voluntary dismissal of an action by plaintiff upon a stipulation signed by all parties who have appeared. Once the defendant files an answer, the court cannot dismiss the litigation without his consent. *American Soccer Co., Inc. v. First Score Enterprises*, 187 F3rd 1108 (9th Circ. 1999). Rule 41 also provides that the court may dismiss an action at plaintiff's request but only upon terms that the court considers proper.

DeLuca is entitled to have the court rule on his affirmative defenses.  DeLuca has argued that the action is barred by the statute of limitations and that the Enabling Child Victim's Act violates the constitution of the State of Delaware and the United States.  Should DeLuca prevail on these affirmative defenses, then any actions against him in the future would be barred. Therefore, it is important to him that the litigation proceed.  A plaintiff cannot voluntarily dismiss a lawsuit if it prejudices a defendant's affirmative defense.  In *Riley v. A.W. Chesteron Co.*, 2006 WL 1373057 (N.D. N.Y. 2006)

CASARINO, CHRISTMAN & SHALK, P.A.

/s/ Stephen P. Casarino
STEPHEN P. CASARINO, ESQ
I.D. No. 174
800 N. King Street, Suite 200
Wilmington, DE 19899-1276
(302) 594-4500
Attorney for Defendant Rev. Francis G. Deluca

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT QUILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-435 SLR |
| | ) | |
| CATHOLIC DIOCESE OF WILMINGTON, | ) | |
| INC., a Delaware Corporation; | ) | |
| ST. ELIZABETH'S CATHOLIC CHURCH, | ) | |
| a Delaware corporation; | ) | |
| Rev. FRANCIS G. DELUCA, | ) | |
| individually and in his capacity; | ) | |
| and | ) | |
| Rev. MICHAEL A. SALTERELLI, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF MOTION

TO:    Thomas S. Neuberger, Esq.
       The Neuberger Firm, P.A.
       Two East Seventh Street
       Suite 302
       Wilmington, DE 19801


PLEASE TAKE NOTICE that the undersigned will present the attached **Defendant**

**Deluca's Motion to Permanently Seal Discovery** at a time convenient to the court.

                              /S/Stephen P. Casarino
                              Stephen P. Casarino, Esq.
                              I.D. No. 174
                              Casarino, Christman & Shalk, P.A.
                              800 N. King Street, Suite 200
                              P.O. Box 1276
                              Wilmington, DE 19899
                              (302) 594-4500
                              Attorney for Defendant
                              Rev. Francis G. Deluca

DATE:        February 29, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ROBERT QUILL,                )
                                   )
          Plaintiff,         )
                                   )     C.A. No.: 07-435 SLR
    v.                        )
                                   )     JURY TRIAL DEMANDED
CATHOLIC DIOCESE OF WILMINGTON,   )
INC., a Delaware corporation;         )
ST. ELIZABETH'S CATHOLIC CHURCH,    )
a Delaware corporation;             )
Rev. FRANCIS G. DELUCA, individually and  )
in his capacity; and             )
Rev. MICHAEL A. SALTERELLI, in his    )
official capacity,                )
                                   )
         Defendants.      )

## ORDER REGARDING CONFIDENTIALITY

Having considered the memoranda of counsel, the court concludes that good cause has

been shown for the sealing of discovery.

It is hereby ORDERED this _____ day of _____, 2008 as follows:

All depositions, requests for production of documents and all other discovery which has

been filed under seal are hereby permanently sealed.

Nothing in this order shall restrict the parties to this litigation from reviewing the sealed

material or using the sealed material to prepare for other cases.  However, the sealed material

shall not be released to third-parties including the media.

                                          _____

                                                    J.

# EXHIBIT A

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                        - - -

4

ROBERT QUILL,                    :    CIVIL ACTION
5                                  :
                Plaintiff,         :
6                                  :
        vs.                        :
7                                  :
CATHOLIC DIOCESE OF                :
8  WILMINGTON, INC., a             :
   Delaware Corporation; ST.       :
9  ELIZABETH'S CATHOLIC            :
   CHURCH, a Delaware              :
10 Corporation; Rev. FRANCIS       :
   G. DELUCA, individually and     :
11 in his official capacity;       :
   and Rev. MICHAEL A.             :
12 SALTARELLI, in his official     :
   capacity,                       :
13                                  :
                Defendants.        :    NO. 07-435 (SLR)

14

15                        - - -

16                           Wilmington, Delaware
                             Wednesday, February 20, 2008
17                           9:02 o'clock, p.m.
                             *** Telephone conference
18                        - - -

19
BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.
20
                          - - -
21

22

23
                              Valerie J. Gunning
24                            Official Court Reporter

25

*93*

2

1    APPEARANCES:

2

3            THE NEUBERGER FIRM, P.A.
             BY:  THOMAS S. NEUBERGER, ESQ. and
                  STEPHEN J. NEUBERGER, ESQ.

4

5                 Counsel for Plaintiff

6

7            YOUNG CONAWAY STARGATT & TAYLOR, LLP
             BY:  ANTHONY G. FLYNN, ESQ.

8

9                 Counsel for Defendant
                  Catholic Diocese of Wilmington

10

11

12           ELZUFON AUSTIN REARDON TARLOV & MONDELL P.A.
             BY:  MARK REARDON, ESQ.

13

14                Counsel for Defendant
                  St. Elizabeth's Catholic Church

15

16           CASARINO CHRISTMAN & SHALK
             BY:  STEPHEN P. CASARINO, ESQ.

17

18                Counsel for Defendant
                  Rev. Father DeLuca

19                    -   -   -

20

21

22

23

24

25

3

1

2

P R O C E E D I N G S

3

4          (REPORTER'S NOTE:   The following telephone

5    conference was held in chambers, beginning at 9:02 a.m.)

6

7          THE COURT:   Good morning, counsel.   This is

8    Judge Robinson, and Valerie is here as our Court Reporter,

9    so it would be helpful if you identified yourselves each

10   time you spoke in order to make the record clear.

11          I will let plaintiff's counsel start out with

12   the purpose of the call.

13          MR. T. NEUBERGER:   Your Honor, this is Tom

14   Neuberger, representing the plaintiff, Rob Quill.

15          I had asked for this telephone conference.   The

16   case has -- the case which is set for a two-week trial in

17   August has been settled and we're prepared to submit a

18   stipulation of dismissal with prejudice as to the defendants

19   Diocese of Wilmington and the St. Elizabeth's Church.

20          There is a pending matter relating to the

21   unsealing of the deposition of the defendant, DeLuca, and

22   once the Court rules, however, unsealed, sealed, partially

23   unsealed -- once the Court rules, plaintiff will then

24   dismiss the case against the remaining defendant, Father

25   DeLuca.

4

1       So the unsealing of the deposition is the last

2   thing standing in the way of the total dismissal of the

3   case, when the Court has the opportunity to address that

4   issue.

5       As I advised the Court when we had the discovery

6   conference a week or so ago, I represent eight other alleged

7   victims of Father DeLuca, children who were abused by him in

8   the 1960's, and I need the information that is sealed for

9   use in those cases.  My clients need it to tell their

10  treating physicians.  We need it for our experts.  We need

11  it to tell their families.

12      We interviewed another victim yesterday, and I

13  couldn't tell his counsel that Father DeLuca had admitted

14  abusing -- abusing his client because of the sealing.

15      So if all that information remained sealed in

16  eight other cases, we're going to be running back and forth

17  to the Court, asking for unsealing in all of those cases.

18      We know the Court is very busy, and

19  timeliness -- the timeliness of unsealing is not absolutely

20  urgent from our point of view, consistent with the Court's

21  other obligations.

22      I would suggest that the Court consider a

23  limited unsealing for the purpose of these eight or more

24  other individuals that I could at least share the deposition

25  with those attorneys or any physician treating physicians,

1   experts we would be using in those cases and the immediate

2   family members.  That would deal with any timeliness issues

3   while the Court looks to the ultimate question of what is to

4   be done with this judicial record.

5           Mr. Casarino had asked that it be sealed and we

6   submitted a five-page letter memo reciting the case law and

7   taking the position that there was nothing in the deposition

8   that would merit unsealing, especially in light of the fact

9   that he waived any Fifth Amendment issues at our two

10  conferences with the Court, and we did not inquire as to the

11  one victim that he still wanted to assert the Fifth

12  Amendment on.

13          So we think it's all briefed and before the

14  Court for a resolution.

15          The only other matter is, since we're going to

16  dismiss it, it would seem to us that the deposition of our

17  client, which is -- which was noticed by Mr. Casarino just

18  one or two days ago for February 21st is an unnecessary

19  intrusion into my client's well-being.  It would rip open

20  the wounds of his victimization, and there's no need for it

21  in this case.

22          So I would ask that Mr. Casarino either withdraw

23  his notice of deposition for February 27th or the Court

24  entertain a motion for protective order that no deposition

25  be held until the Court rules on the sealing issues and

6

1    after we dismiss our case, which would moot the need for

2    deposition.

3            I believe the Diocese of Wilmington and

4    St. Elizabeth's also support our position on unsealing, but

5    I will leave that to their attorneys.

6            That's all plaintiff need say at this time.

7    Thank you, your Honor.

8            THE COURT:  All right.  Thank you.  Let's start

9    with Mr. Casarino.

10           MR. CASARINO:  Good morning, your Honor.  Steve

11   Casarino.

12           This is the first I heard the case was settled

13   against Father DeLuca.  Mr. Neuberger has not spoken to me

14   about the manner in which it's going to be settled.  I would

15   think the more appropriate way of doing this would be to let

16   Mr. Neuberger and me decide, if we can between the two of

17   us, how to resolve the sealing portion of it.

18           I do not want Father DeLuca's deposition to be

19   released to the press at this time.  I understand Mr.

20   Neuberger's concern about using it in other cases and I have

21   no problem with that, but I don't want the Court to unseal

22   it.  Unless we agree to this, there is no settlement.  And

23   we have affirmative defenses that we need to have the Court

24   decide because they will be useful in these other cases that

25   are coming up.

7

1        So what I'm willing to do is to dismiss it if

2   the case remains sealed.  If the Court is inclined not to

3   seal it, I want to go forward with the deposition of

4   Mr. Quill.  That deposition is important to Father DeLuca,

5   and if the case is not resolved, we have to take it.

6        THE COURT:  Well, I had thought I heard

7   Mr. Neuberger say in the last meeting we had, in the

8   discovery conference we had, that all they want in terms of

9   settlement from Father DeLuca is not money, because he's

10  judgment-proof.  Basically, it was to be able to use this

11  information.  And whether that meant just for the other

12  cases that Neubergers are involved in or whether that was

13  for public consumption generally, I don't know.  But I just

14  want to make clear on the record that that was my

15  understanding, that this was something I thought you all had

16  been talking about.

17       Now, Mr. Casarino, it's my recollection that you

18  hadn't necessarily responded to -- I mean, unless I'm

19  missing something, I don't recall that we've had

20  full-fledged briefing on the motion to seal.  If, in fact,

21  there are no Fifth Amendment issues, I don't know what

22  it is -- I mean, it's your burden, Mr. Casarino, to convince

23  the Court that sealing a document is in the public's best

24  interest.  The Third Circuit does not like sealed documents.

25       So absent Fifth Amendment, I don't know that

1    that issue has been addressed in the sense that I've got

2    papers in front of me to help me make that decision.

3            Am I missing something or have you filed

4    something in writing?

5            MR. CASARINO:  No.  I thought the Court had

6    given us 30 days, which is not up yet.

7            THE COURT:  All right.  So you all are still

8    playing games here.

9            On the one hand, there's no rush to depose --

10   the case has been settled, except for the Father.  The only

11   issue that needs to be resolved with respect to that

12   settlement is sealing the deposition, and the deposition of

13   the plaintiff, which certainly wouldn't need to go forward

14   if the case has been settled, is scheduled for Thursday.

15           So this is what I'm going to do.

16           When is the 30 days up?  I can't remember.

17           MR. CASARINO:  Well, I believe that conference

18   was around the beginning of February.

19           THE COURT:  Well, wait a minute.  I issued an

20   order.  In fact, do I have it here?  No.  That was the last

21   order I issued.  Where was the other order I issued?

22           Now, you all know -- maybe you don't know, but

23   I've gotten a letter from The News Journal, so this is

24   not -- all right.  For 30 days, and I issued that on

25   February 4th.  So March 4th is --

```
 1              MR. CASARINO:  I guess it would be March 5th.
 2              THE COURT:  All right.  So you're thinking
 3    that -- I mean, are you going to be filing -- all right.  So
 4    March 5th.
 5              MR. CASARINO:  I need to take the deposition of
 6    Mr. Quill.  I understand Mr. Neuberger is saying if he
 7    dismisses the case, there's no reason to take it.  The case
 8    is not going to be dismissed unless Father DeLuca agrees to
 9    it.  So as far as we're concerned, the case is still going
10    forward unless we can resolve it, and I want to take -- the
11    only way it's going to resolve, I think, is for me to take
12    Mr. Quill's deposition.
13              THE COURT:  As opposed to working out the
14    sealing?
15              MR. CASARINO:  No.  I will be glad to talk to
16    Tom about that beforehand.  If we can resolve it, that's no
17    problem.  I agree.  If we can seal this deposition so that
18    it's not public, I have no reason to take Mr. Quill's
19    deposition.
20              THE COURT:  All right.  This is what we're going
21    to do, because I think you all are missing the point.  Mr.
22    Casarino, I think you are missing the point.  The point is,
23    is that -- is that there's an issue here that I have to
24    resolve, because I've got third parties asking for this
25    deposition, so it's not actually just a matter of you all
```

1  agreeing to it.

2          MR. CASARINO:  Well -- excuse me, your Honor,

3  but if the parties made a settlement and it's part of that

4  settlement, it was agreed that the depositions would be

5  sealed, wouldn't the Court comply with that?  It seems to me

6  that would be as part of the settlement.

7          This is a case right now between two citizens,

8  and they're not even citizens of Delaware, to be honest with

9  you.  But why wouldn't the parties have a say as to what --

10  how that deposition can be handled?

11          Now, if we can't agree, then I understand, the

12  Court can issue an order.

13          THE COURT:  Well, okay.  So --

14          MR. T. NEUBERGER:  Your Honor --

15          THE COURT:  Wait.  I need to cut through this.

16          MR. T. NEUBERGER:  That's okay, your Honor.

17          THE COURT:  The point is, then, that you've got

18  until March 5th to make that determination, and it seems to

19  me as though there's no sense in going forth with the

20  deposition of the plaintiff when you've got less than two

21  weeks, basically, to figure out whether the case is going to

22  be resolved or not.

23          You all should be figuring that out, and if it's

24  not going to be resolved, if you can't agree on whether this

25  is sealed or not, then by March 5th, Mr. Casarino, you've

1   got to file with me a motion and it has got to be briefed.

2   And after March 5th, if we're briefing the issue, then you

3   can go ahead and take the deposition of the plaintiff and

4   the plaintiff has got to make himself available.  But it

5   seems to me as though you've got enough on your plate and

6   that is just to figure out whether it's sealed.

7            Now, Mr. Casarino, if you are saying that absent

8   Father DeLuca having this deposition to decide whether he

9   wants this sealed or not so you've got equal kind of

10  ammunition about sealing depositions, you know, a whole

11  settlement ploy, you know, I don't know.  I don't know how I

12  feel about that.

13           MR. T. NEUBERGER:  Your Honor, this is Tom

14  Neuberger.

15           May I be heard?

16           THE COURT:  Yes, you may.

17           MR. T. NEUBERGER:  Your Honor, I have said that

18  we are going to dismiss the claim against Father DeLuca.

19  The Diocese negotiated the dismissal of a claim against

20  Father DeLuca.

21           Mr. Casarino wants the total deposition sealed,

22  and I have said that once the Court unseals the deposition,

23  or keeps it sealed, we will still dismiss the case.  We're

24  ready right now to enter a stipulation of dismissal, and

25  then we simply -- the Court simply retains jurisdiction to

1    address the issue of the sealing.  We can get this off the

2    Court's docket and free up two weeks for the trial.  Okay.

3    So we can cut through all of this.

4             Mr. Casarino has taken the position that

5    everything should be sealed, I'm supposed to read his mind,

6    he's got good cause.  We've submitted a five-page brief

7    memo.  If he wants to submit something in response, we will

8    then say whatever we need to say in reply.

9             We can circulate a dismissal order now, your

10   Honor, and just put in there that the Court retains

11   jurisdiction to resolve the issue of the use of the record.

12   And then I'm simply asking that that not be put at the top

13   of the Court's pile if the Court has other things to do, but

14   that in the meantime, prior to the Court ruling definitively

15   that we be allowed to use it in the limited capacity for our

16   other clients, other forwarding lawyers, treating doctors,

17   our experts and members of immediate family, and then the

18   Court can address all the other issues when the Court gets

19   around to it.

20             Would it be better for us to circulate that

21   stipulation of dismissal now, your Honor, and clear your

22   docket?

23             THE COURT:  Mr. Casarino?

24             MR. CASARINO:  Steve Casarino.

25             I'm not making myself clear.  We are not

1    willing -- this is Father DeLuca is not willing at this

2    point to agree to a dismissal of his case.

3              Now, he has a say in this.  He has affirmative

4    defenses that he wants to present to the Court and have a

5    ruling on it.  I want this thing to proceed.

6              Now, I'm willing to talk to Mr. Neuberger about

7    settlement, but as part of that settlement deal, this issue

8    of the sealing of the deposition has got to be resolved.

9    And if we can't resolve it, and certainly the Court makes an

10   order, but we're not willing to dismiss the case at this

11   point.

12             MR. T. NEUBERGER:  Well, then, your Honor, I

13   will submit a stipulation of dismissal to the Diocese and

14   St. Elizabeth's and present that to the church.  I will then

15   make a motion to dismiss my remaining claims against DeLuca

16   and that the Court retain jurisdiction and resolve the

17   issue.

18             I don't know what games the defendant is playing

19   here.  He admitted abusing my client.  He admitted abusing

20   eight other boys and he claims they all enjoyed it.  They

21   welcomed it.  And they wanted it.  Okay?  I don't know what

22   the game is here, but the public needs to know that.  My

23   clients need to know that.

24             There's a public interest involved here and

25   we're not going to play that game.  We will submit a

1    stipulation by the diocese, St. Elizabeth's, and then we

2    will make a motion to dismiss the remaining claim and that

3    the Court rule on the issue of the unsealing of the --

4              THE COURT:  Mr. Neuberger, do me the favor and

5    don't file another motion for me.

6              MR. T. NEUBERGER:  Okay.  All I'm saying, I'm

7    trying to clear the docket here.

8              THE COURT:  Oh, I understand that.  What I'm

9    trying to do, though, and we're going back to where I was,

10   you know, 15 minutes ago, and that is that you all, and I

11   don't know whether you've managed to ruin whatever

12   relationship you had built up through this conversation, but

13   you all, and Judge Stark is willing to get together with you

14   all, to help resolve this if you need outside help.

15             But you have until March 5th to either resolve

16   this and through that resolution include use or not use of

17   this deposition, or on March 5th.  Mr. Casarino, you may

18   file your motion, and I think it needs to be your motion, to

19   keep this information sealed.

20             And, Mr. Neuberger, if you choose to file a

21   motion to dismiss, that's fine.  But I'm just saying that

22   between now and March 5th, the deposition of the plaintiff

23   is off with the understanding, Mr. Neuberger, that once

24   March 5th comes around, if this case is still alive, then

25   your plaintiff has to make himself available at Mr.

1    Casarino's convenience here, and we'll go from there.

2            I'm giving you a breadth of time to settle this

3    reasonably if you all can, and all I need to do is e-mail

4    Judge Stark, and he will reach out to you if you think he

5    would be of some help in this regard.  So you just let me

6    know that, and I will expect to either hear that it has been

7    resolved or I will get papers on the 5th, one or the other.

8            Should I give Judge Stark a call?

9            MR. T. NEUBERGER:  Your Honor, there's no need

10   to waste Judge Stark's valuable time with this, your Honor.

11   We're going to dismiss.  We're going to make the -- Mr.

12   Casarino -- it has been relayed to me by the Diocese of

13   Wilmington during the negotiations that Mr. Casarino wants

14   the entire deposition sealed.  We will never agree to that,

15   your Honor.  The Court is going to have to, at some point in

16   time, address the issue of the standards under the Third

17   Circuit.  If he wants to come forward and identify something

18   that is consistent with the standards of the Third Circuit,

19   we will entertain that before the 5th.

20           I don't believe there is anything he can

21   identify at the deposition.  The Fifth Amendment issue was

22   resolved.  Everything else is just he admitted he victimized

23   A, B and C.

24           THE COURT:  All right.  Mr. Neuberger, I truly

25   don't need to hear this again.

1          MR. T. NEUBERGER:  That's fine.  My position has

2     been made very clear.  We don't need to involve the

3     Magistrate and I believe the Court will have to address the

4     issue of this deposition being a judicial record and the

5     uses to be made of that.

6          I feel I have fulfilled my obligations to the

7     Court.  We're trying to do this efficiently and we're trying

8     to save the Court as much time as possible.  We have one

9     remaining issue here --

10          THE COURT:  All right.

11          MR. T. NEUBERGER:  -- and it will require

12     judicial resolution.

13          THE COURT:  All right.  Mr. Neuberger, you've

14     just -- you know, it sounds now as though you're not even

15     willing to discuss this with Mr. Casarino, that you've

16     got --

17          MR. T. NEUBERGER:  I will discuss it.  Yes, your

18     Honor.

19          THE COURT:  All right.  All right.

20          MR. T. NEUBERGER:  The Third Circuit says there

21     are all kind of records -- can be confidential.  We don't

22     have DeLuca's tax returns.  We don't have things like that,

23     your Honor.

24          (Telephone conference concluded at 9:22 a.m. )

25                    -  -  -

# EXHIBIT B

**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

ROBERT B.YOUNG
JUDGE

KENT COUNTY COURT HOUSE
38 THE GREEN
DOVER,DELAWARE 19901

February 22, 2008

RE:   *Whitwell v. Archmere Academy, et. al.*
      C.A. No. 07C-08-006

Dear Counsel:

This is a defense motion to compel documents from another defendant. The Norbertines requested all communications between Smith and the Plaintiff during discovery. Smith did not respond to this request. Smith opposes the request on two grounds. First, he argues that he is not a party because a default judgment was entered against him. If Smith were not a party, then a subpoena to compel production of the documents would be necessary. Second, Smith argues that the compelled production is protected by his 5th Amendment privilege against self-incrimination.[1]

Smith is still a party to this suit. The entry of a default judgment does not change a party's status. He remains in the suit for the purpose of damages. Therefore, discovery should proceed pursuant to Superior Court Rule 34. Smith must answer discovery requests within 30 days. A subpoena should not be necessary.

Even if the production is considered compelled, it is not testimonial. According to Smith's attorney during arguments, the documents in question are only documents received by Smith and written by the Plaintiff. While the compelled production of documents can be testimonial,[2] that is not the case here. The production is, at times, testimonial be cause "[c]ompliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena."[3] Also, the producing party would be admitting the

---

[1] This privilege is discussed in the memorandum regarding Plaintiff's Motion to Compel. It will only be discussed here to the extent the rules differ.

[2] *U.S. v. Doe*, 465 U.S. 605, 612 (1984).

[3] *Id* at 613.

*Whitwell v. Archmere Academy, et al.*
*C.A. No: 07C-08-006 (RBY)*

authenticity of the documents.[4]

These elements are not at issue here. Smith would be admitting only possession in producing the documents. Since the Plaintiff is the author of any documents in question, Smith would be admitting only that he possesses the documents. That is no more than confirmation that the documents created by Plaintiff were sent by Plaintiff to Defendant Smith, nothing more. Indeed, this sort of compulsion appears far more benign and decidedly less testimonial than other compelled deliveries, which have been held not testimonial and, therefore, not violative of any 5th Amendment rights. Accordingly, the Motion to Compel is granted. Because the documents are not testimonial, Smith's 5th Amendment privilege against self-incrimination is not violated.

Very truly yours,

*/s/ Robert B. Young*

RBY/sal
oc:    Prothonotary
cc:    Counsel

---

[4] *Id* at 608.

2

# EXHIBIT C

**SO ORDERED**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

**SO ORDERED**

| | | |
|---|---|---|
| ERIC EDEN, | : | |
| Plaintiff, | : | |
| | : | C.A. No.04C-01-069 CLS |
| v. | : | |
| | : | |
| OBLATES OF ST. FRANCIS de SALES; | : | |
| OBLATES OF ST. FRANCIS de SALES, | : | |
| INCORPORATED, a Delaware | : | |
| corporation; SALESIANUM SCHOOL, | : | |
| INC., a Delaware corporation; | : | |
| CATHOLIC DIOCESE OF WILMINGTON, | : | |
| INC., a Delaware corporation; | : | |
| Rev. JAMES W. O'NEILL O.S.F.S.; | : | |
| Rev. ROBERT D. KENNEY O.S.F.S.; | : | |
| Rev. JOSEPH G. MORRISSEY O.S.F.S.; | : | Trial By Jury Of 12 |
| Rev. MICHAEL A. SALTARELLI; and | : | Demanded |
| Rev. LOUIS S. FIORELLI O.S.F.S.; | : | |
| | : | Non-arbitration case |
| Defendants. | : | |

<u>**ORDER**</u>

On December 14, 2007, at the request of counsel for Defendant, James W. O'Neill, a tele-conference was convened to discuss matters arising out of this Court's December 14, 2007 Memorandum Opinion. After hearing from all counsel;

**IT IS HEREBY ORDERED,** this _____ day of _____, 2007:

- Defendant, O'Neill's request of a stay of his deposition is denied;

- O'Neill's deposition, which will go forward on December 18th and 19th, 2007, shall remain under seal until otherwise ordered by this Court.

_____
The Honorable Calvin L. Scott, Jr.

S:\Tort\EDENeric\Pleadings\121407_Order_re_Oneills depo dates_TCC.doc



**DENIED IN PART** Filed: Jan 24 2008  3:43PM EST
Transaction ID 18250956
Case No. 04C-01-069 CLS

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| **ERIC EDEN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A. No. 04C-01-069 CLS** |
| | : | |
| **OBLATES OF ST. FRANCIS de SALES;** | : | |
| **OBLATES OF ST. FRANCIS de SALES,** | : | |
| **INCORPORATED, a Delaware corporation;** | : | |
| **SALESIANUM SCHOOL, INC., a Delaware** | : | |
| **corporation; CATHOLIC DIOCESE OF** | : | |
| **WILMINGTON, INC., a Delaware corporation;** | : | |
| **Rev. JAMES W. O'NEILL O.S.F.S.; Rev.** | : | |
| **ROBERT D. KENNEY O.S.F.S.; Rev. JOSEPH** | : | |
| **G. MORRISSEY O.S.F.S.; and Rev. LOUIS S.** | : | |
| **FIORELLI O.S.F.S.** | : | |
| | : | |
| **Defendants.** | : | |

**DENIED IN PART**

### ORDER

The Court having considered "Plaintiff's Motion to Increase the Number of Necessary

Third Parties to Whom Plaintiff May Show the December 18 and 19, 2007 Deposition of

Defendant James W. O'Neill", the opposition of defendant O'Neill thereto and the position

statements of the other parties, and the court having held a sealed hearing in chambers on January

9, 2008, at the request of counsel for defendant O'Neill,

This ___ day of January, 2008 it is hereby **ORDERED** that the motion is granted in part

and denied in part.

1. The sealing and gag Order are lifted in part to allow the following necessary third

parties to confidentially review the deposition: (1) Plaintiff's expert Carol A. Tavani, M.D.; (2)

-1-

Plaintiff's treating psychiatrist David T. Springer, M.D.; (3) Plaintiff's treating psychologist Frederick Kozma, Ph.D.; and (4) Plaintiff's family physician Bernard King, M.D..

    2.  Upon submission by plaintiff of the name of any similar trial preparation expert or treating health care provider to the Court, the Court will authorize a similar release of the deposition.

_____
The Honorable Calvin L. Scott Jr.

## **CERTIFICATE OF SERVICE**

I, Stephen P. Casarino, Esq., hereby certify that I have served via U.S. District Court e-filing on this 29th day of February 2008, a true and correct copy of the attached Defendant DeLuca's Motion to Permanently Seal Discovery to:

Thomas S. Neuberger, Esq.
The Neuberger Firm, P.A.
Two East Seventh Street
Suite 302
Wilmington, DE 19801

 /s/ Stephen P. Casarino
STEPHEN P. CASARINO, ESQ
I.D. No. 174
CASARINO, CHRISTMAN & SHALK, P.A.
800 N. King Street, Suite 200
Wilmington, DE 19899-1276
(302) 594-4500
Attorney for the Defendant DeLuca